IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL-GOLDEN
TRIANGLE, BAPTIST MEMORIAL HOSPITAL-ST.
JOSEPH HOSPITAL, AND BAPTIST MEMORIAL
HOSPITAL-DESOTO HOSPITAL
350 N. HUMPHREY'S BLVD.
MEMPHIS, TN 38120

CIVIL ACTION NO.1:06CV01413
Hon. Colleen Kollar-Kotelly

Plaintiffs,

VS.

MICHAEL O. LEAVITT, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF THE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

Defendant.
_____/
_____/

**AMENDED COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE
AGENCY DECISION ON MEDICARE REIMBURSEMENT**

### I.   JURISDICTION AND VENUE

1.    This is a civil action brought to obtain judicial review of a final agency decision rendered by the Medicare Provider Reimbursement Review Board ("PRRB"). This action is timely filed pursuant to 42 U.S.C. §1395oo(f)(1).

2.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 1395 et seq.) hereinafter referred to as the "Medicare Act" or the "Act," which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

3.  This Court has jurisdiction under 42 U.S.C.§ 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. § 1331(federal question). Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f) and § 28 U.S.C. § 1391(e). This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §§ 2201-2202.

## II.  PARTIES

4.  Plaintiff Baptist Memorial Hospital –Golden Triangle is an acute care inpatient hospital located in Columbia, Mississippi and is organized as a nonprofit corporation exempt from federal income taxation as a charitable organization. During the relevant period, Plaintiff Baptist Memorial Hospital –Golden Triangle was certified as a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u).

5.  During the relevant period, Plaintiff Baptist Memorial Hospital – St. Joseph Hospital was an acute care inpatient hospital located in Memphis, Tennessee and was organized as a nonprofit corporation exempt from federal income taxation as a charitable organization. During the relevant period, Plaintiff Baptist Memorial Hospital – St. Joseph Hospital was certified as a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u).

6.  Plaintiff Baptist Memorial Hospital – DeSoto is an acute care inpatient hospital located in South Haven, Mississippi and is organized as a nonprofit corporation exempt from federal income taxation as a charitable organization. During the relevant period, Plaintiff Baptist Memorial Hospital–DeSoto was certified as a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u).

7.  The Plaintiffs are collectively referred to in this Complaint as the "Hospitals."

8.  The Defendant, Michael O. Leavitt, Secretary of the Department of Health and Human Services (hereinafter referred to as the "Secretary"), or his predecessors in office, is the

federal officer responsible for the administration of the Medicare Program pursuant to the Medicare Act. The Secretary has delegated administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS").

### III.  MEDICARE PAYMENT

9. The Medicare Act establishes a system of health insurance for the aged and the disabled. Under the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his or her behalf for, *inter alia,* inpatient and outpatient hospital services provided to him or her by a hospital participating in the Medicare Program as a "provider of services."

10. CMS, through fiscal intermediaries, pays providers participating in the Medicare Program for covered services rendered to Medicare beneficiaries. 42 U.S.C. § 1395h. The amount of payment owing to a provider for services furnished to Medicare beneficiaries is determined by the fiscal intermediary acting as an agent of the Defendant Secretary. 42 U.S.C. §1395h. The fiscal intermediary that acted on behalf of the Secretary with respect to the Hospitals was Blue Cross Blue Shield Association and its subcontractor, Riverbend Government Benefits Administrator, collectively referred to herein as the "Intermediary."

### IV.  APPEAL OF MEDICARE PAYMENT

11. A provider may appeal the Secretary's final determination of total program reimbursement to the Provider Reimbursement Review Board ("PRRB") pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(2) if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act. The PRRB has jurisdiction over appeals from Secretary's determinations if the provider is dissatisfied

with the Secretary's final determination, the amount in controversy is equal to $10,000 or more, and the provider requests a hearing within 180 days after notice of the Secretary's determination. 42 U.S.C. §1395oo(a).

12. In exercising its authority to conduct hearings, the PRRB must comply with all the provisions of the Medicare Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator of the CMS. 42 C.F.R. 405.1867.

13. The PRRB has issued a set of *Instructions* dated March of 2002 which are posted on the internet. (http://www.cms.hhs.gov/PRRBReview/02_PRRB_Instructions.asp#TopOfPage.)

14. Although the *Instructions* were not promulgated in accordance with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 500 et seq., the *Instructions* reflect the procedure and practice before the PRRB.

15. The Medicare regulations provide as follows that a provider has the right to add one or more issues to a pending individual appeal

> "Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof." (42 C.F.R. § 405.1841(a)).

16. The Board *Instructions* reflect the right of a provider to add an issue to an individual appeal as follows:

> In an individual appeal, you may add issues to the appeal prior to the commencement of the hearing. You must identify the issues in writing and simultaneously furnish any supporting documentary evidence. (See Part I, B., II., a. Hearing Request for Individual Appeals.) The issues must be from the final determination(s) that is (are) the subject of your hearing request. (See Section C.VI. "Adding of Issues to Individual Appeals and/or Transfer of Issue to Group.")

17. Two or more providers may file a group appeal regarding a common question of fact or law or regulations and if the amount in controversy is at least $50,000. 42 U.S.C. § 1395oo(b); 42 C.F.R. § 405.1837.

18. The *Instructions* provide as follows that two more providers under common ownership or control with an issue in common must file a group appeal:

> If you and other providers are under common ownership or control and have an issue in common, you must file a group appeal if the amount in controversy is $50,000 or more. These are known as Common Issue-Related Party or CIRP appeals and are "mandatory" group appeals. (*Instructions* I.B.I.d.)

19. The issue appealed as part of a group appeal may be an issue that was included among the issues the provider originally appealed in its individual appeal, or it may be added to a pending appeal and then transferred to a group appeal. In either event, the issue transferred from the individual appeal to the group appeal, and the individual appeal remains pending. There is no published authority for the proposition that the transfer of an issue to a group appeal deprives the provider of the right to add other issues to the individual appeal.

20. A decision of the PRRB shall be final unless the Secretary, on the Secretary's own motion, and within 60 days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C. §1395oo(f)(1).

21. A provider has the right to obtain judicial review of any final decision of the PRRB, including a decision of the PRRB declining to assert jurisdiction, or any reversal, affirmance, or modification by the Secretary. 42 U.S.C. §1395oo(f)(1).

### V. Medicare's Policies Regarding Payment for the Disproportionate Share Hospital Adjustment

22. Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. §1395ww(d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital or "DSH" adjustment, is available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients. *See* 42 U.S.C. §1395ww(d)(5)(F).

23.     Under 42 U.S.C. §1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for operating costs for PPS hospitals serving a "significantly disproportionate number of low-income patients," which is computed for a given cost-reporting period based on the sum of two fractions. For one of these fractions, known as the "Medicaid Low Income Proxy," it is necessary to determine the number of inpatient days that patients who "were **eligible** for medical assistance [*i.e.* Medicaid]" received services at the hospital. 42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added). In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment will be.

24.     A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment. *See* 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. §412.106. This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days:

> for which benefits are payable under [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible" Medicaid inpatient days, when computing the DSH adjustment. This is known as the Secretary's "paid days" policy.

25.     The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. *See Jewish Hosp., Inc. v. Secretary of Health and Human Services*, 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996). Each of these courts held that the final

rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

26. As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. §401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients **eligible** for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy. A copy of HCFAR 97-2 is attached hereto as Exhibit 1.

27. By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

28. The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

29. HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal intermediaries on or after" February 27, 1997. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

30.    HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth Medical Center ("Monmouth") v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001). The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

31.    The United States Court of Appeals for the District of Columbia subsequently held in *Leavitt v. Baystate Health Systems*, 414 F.3d 7 (D.C. Cir. 2005)(*cert denied*, 2006 U.S. LEXIS 2717; 74 U.S.L.W. 3559 (April 3, 2006): "the Secretary and intermediaries [have a "mandatory duty"], enforceable by mandamus, to reopen closed Cost Reports even for providers that not only failed to appeal determinations by their intermediaries, but also failed even to seek reopening of those determinations within three years, as required by the only regulation that allows for reopening at the behest of a provider, 42 C.F.R. § 405.1885(a)."

32.    In addition to the Medicaid Low Income Proxy, the DSH Adjustment is based on the supplemental security income percentage ("SSI%") as set forth in the "Medicare Proxy," 42 U.S.C. § 1395ww(d)(5)(D0(vi)(I), which provides as follows:

the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter.

33. CMS calculates the SSI% used in the Medicare Proxy, and supplies this information to the Intermediary, which then uses the SSI% in determining the DSH Adjustment.

34. The decision of the PRRB in *Baystate Hospital v. Mutual of Omaha Ins. Co. ("Baystate")*, PRRB Case No. 2006-D20 (PRRB Dec. March 17, 2006), *modified* (CMS Adm. Dec. May 11, 2006), complaint filed July 14, 2006 *sub nom Baystate Med'l Ctr. v. Leavitt et al.*, 06-cv-1263 PLF (D.D.C.), held that the SSI %e used to calculate the DSH payment probably was flawed and understated, and that the PRRB has the authority to remedy the underpayment and to order that CMS make such disclosures of information as may be necessary to achieve such remedy.

35. The PRRB *Instructions* recognize that the DSH adjustment has a variety of components,

> You must clearly and specifically identify your position in regard to the issues in dispute. For instance, if you are appealing an aspect of the disproportionate share (DSH) adjustment factor or calculation, do not define the issue as "DSH". *You must precisely identify the component of the DSH issue that is in dispute. Instructions*, P. 7 (Emphasis added.)

36. Although the DSH Adjustment contains a number of components, including the Medicaid Low Income Proxy and the Medicare Proxy, the Intermediary does not issue separate audit adjustments of the several DSH Adjustment sub-components. This Court has recognized that the Intermediary issues a single DSH Adjustment, and the provider has the right to appeal any or all of the components of the adjustment. *St. Joseph's Hospital v. Leavitt*, (D.C. Dist. 2006) U.S. Dist.

Lexis 14272. The Board also has recognize this principle. *See, e.g., Community Hospital of Monterrey Peninsula v. Blue Cross Blue Shield Association/United Government Services LLC-CA*, Dec. No. 2006-D13 (January 19, 2006) (Medicare and Medicaid Guide (CCH) ¶ 81,461) (Board asserted jurisdiction over a provider's appeal from a revised notice of program reimbursement ("Revised NPR") where the revised NPR adjusted for the component of "paid" Medicaid days and the provider appealed "unpaid" Medicaid days.) *See, also St. Rita's Medical Center v. Blue Cross and Blue Shield Association/AdminaStar Federal Ohio*, Dec. No. 2005-D41 (May 25, 2005) (Medicare and Medicaid Guide (CCH) ¶ 81,364) and *Rome Memorial Hospital v. Blue Cross Blue Shield Association/Empire Medicare Services*, PRRB Dec. No. 2005-D42 (April 6, 2005) (Medicare and Medicaid Guide (CCH) ¶ 81,365).

### VI.    THE HOSPITALS' APPEAL TO THE PRRB

37.    On April 11, 2002, April 17, 2002 and May 5, 2002, respectively, Baptist Memorial Hospital – St. Joseph Hospital, Baptist Memorial Hospital – DeSoto and Baptist Memorial Hospital – Golden Triangle transferred from their respective individual appeals to a group appeal (Case No. 02-1735G) the issue of whether the Intermediary included all Medicaid eligible days in computing the DSH Adjustment, as required by Ruling 97-2. Moreover, Baptist Memorial Hospital – St. Joseph Hospital, transferred to group appeal Case No. 02-1735G from its individual appeal the issue of whether the SSI% used to compute its DSH Adjustment was accurate. The respective individual appeals remained pending before the PRRB.[1]

---

[1]    In fact, the transfer of the individual appeal to the group appeal for Baptist Memorial Hospital-DeSoto was never perfected and the PRRB clearly continues to have jurisdiction over that individual appeal.

38. On July 30, 2003, the PRRB dismissed group appeal Case No. 02-1735G because the providers had not complied with the PRRB's due dates.

39. In January 2005, the Hospitals, along with several other providers with whom the Hospitals were under common ownership and control, added to their pending individual appeals the issue of whether the Intermediary had properly computed the DSH Adjustment to include the various required components, *i.e.*, appeal a number of components of the DSH adjustment, including Medicaid eligible days, waiver days, Medi-Medi days, general assistance days, and to reflect the application of the "hold harmless" provision set forth in CMS Program Memorandum A-99-62.[2]

40. On January 23, 2004, the Hospitals, along with several other providers with whom the Hospitals were under common ownership and control, established group appeal entitled "BMHCC 98 Medicare DSH Medicaid Proxy, Case No. 04-0554G to appeal a number of components of the DSH adjustment, including Medicaid eligible days, waiver days, Medi-Medi days, general assistance days and the application of the "hold harmless" provision of CMS Program Memorandum A-99-62.

41. By letter dated March 14, 2006, the PRRB issued a decision declining to assert jurisdiction over the Hospitals' appeal solely because the PRRB previously had dismissed Case No. 02-1735G.

---

[2] The Program Memorandum instructed the Intermediary as follows that paid and unpaid state-only days should be included where a provider timely pursued appeal rights under HCFA Ruling 97-2:

> Finally, you are reminded that, if a hospital has filed a jurisdictionally proper appeal with respect to the HCFA 97-2 ruling and the hospital has otherwise received payment for the portion of Medicare DSH adjustment attributable to the inclusion of general assistance or other State-only health programs, charity care, Medicaid DSH, and/or ineligible waiver or demonstration population days based on its *paid* Medicaid days, include these types of *unpaid* days in the Medicare DSH formula when revising the cost reports affected by the HCFA 97-2 appeal.

42.     By letter dated June 14, 2006, the PRRB declined to reconsider its jurisdiction decision. (Exhibit 1.)

43.     By letter dated July 18, 2006, Baptist Memorial Hospital – St. Joseph Hospital, requested that its appeal relating to the Medicaid Low Income Proxy be transferred to its individual appeal, case no. 03-3359.

44.     By letter dated September 5, 2006, the PRRB notified Baptist Memorial Hospital – St. Joseph Hospital that the PRRB declined to assert jurisdiction over the appeal relating to the Medicaid Low Income Proxy. (Exhibit 2.) As indicated by the PRRB's somewhat ill-tempered statement, the PRRB's decision was final and subject to appeal:

> "The Provider is directed to stop wasting the Board's time with its multiple requests to add or transfer these issues to any appeal for this fiscal year end. This is the Board's **final decision** regarding these issues for this Provider for this fiscal year end. No further requests will be considered. If any such requests are filed in the future, they will be summarily dismissed. If the Provider is dissatisfied with the decision, its recourse is appeal."

## COUNT I

45.     The Hospitals incorporate paragraphs 1-44.

46.     The Hospitals satisfied the jurisdictional prerequisites set forth in 42 U.S.C. § 1395oo(a) for receiving a hearing before the PRRB by timely filing a request for hearing regarding the Hospitals' dissatisfaction of the final determination of the Intermediary as to the total amount of payment due the Hospitals in an amount of $10,000 or more.

47.     The Hospitals satisfied the jurisdictional prerequisites set forth in 42 U.S.C. § 1395oo(b) for establishing a group appeal before the PRRB by timely filing a request for hearing

regarding the Hospitals' dissatisfaction of the final determination of the Intermediary as to the total amount of payment due the Hospitals in an amount of $50,000 or more.

48.    The PRRB's *Instructions* require that two more providers under common ownership or control with an issue in common must file a group appeal. (*Instructions* I.B.I.d.)

49.    The Hospitals had the right to add one or more issues to their pending appeals, notwithstanding that they transferred one or more issues to one or more group appeals. (42 C.F.R. § 405.1841(a)).

WHEREFORE, the Hospitals respectfully request that the Court:

Enter an order holding that the PRRB's June 14, 2006 and September 5, 2006 decisions declining to assert jurisdiction is unlawful and setting such decision aside because:

(a)    It unlawfully deprives the Hospitals of their right to appeal a final determination of the Secretary pursuant to 42 U.S.C. § §1395oo(a) and (b), and 42 C.F.R. § 405.1835 and 42 C.F.R. § 405.1837, and their right to add an issue to an individual appeal pursuant to 42 C.F.R. § 405.1841(a)) and the Board's *Instructions*, Section C.VI. "Adding of Issues to Individual Appeals and/or Transfer of Issue to Group;".and

(b)    Its conclusion of law that the PRRB does not have jurisdiction over the Hospitals' appeal is not supported by substantial evidence; and

(c)    Its conclusion of law that the PRRB does not have jurisdiction over the Hospitals' appeal is arbitrary and capricious, contrary to law, and an abuse of discretion.

## COUNT II

50. The Hospitals incorporate paragraphs 1-49.

51. The Hospitals have exhausted administrative remedies under the Medicare Act by (a) timely filing a request for an appeal before the PRRB and (b) timely requesting that the PRRB reconsider its denial of jurisdiction over the Hospitals' appeal.

52. The PRRB has determined that it does not have jurisdiction over the Hospitals' appeal, the CMS Administrator has not reviewed the decision of the PRRB, and thus the Secretary has determined that there is no jurisdiction under the Social Security Act for the challenged administrative action.

53. Where a hospital is challenging administrative action by the Secretary for which jurisdiction is not provided under the Social Security Act, the Supreme Court has held that jurisdiction for such review is available under 28 U.S.C. §1331 because of " the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986).

54. Accordingly, this case is ripe for decision and, pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, this Court should issue a decision on the merits in favor of the Hospitals.

WHEREFORE, the Hospitals respectfully request that the Court enter an order:

(a) requiring the Secretary to order the Intermediary to reopen the Hospitals' FY 1998 Medicare cost report and recalculate the Hospital Medicare DSH payment determinations for those fiscal years using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

(b) requiring the Secretary to pay to the Hospitals legal fees and costs of suit incurred by Hospital; and

(c) granting such other relief as the Court may deem just and proper.

        Respectfully submitted,

        HONIGMAN MILLER SCHWARTZ AND COHN LLP


        By: <u>Kenneth R. Marcus</u>

        Kenneth R. Marcus (DC Bar No MI 0016)
        660 Woodward Avenue
        2290 First National Building
        Detroit, Michigan 48226
        Phone: 313 465 7470
        Fax: 313 465 7471
        kmarcus@honigman.com

        COUNSEL FOR PLAINTIFFS

Date: October 6, 2006

DETROIT.2283728.5