## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL- )
GOLDEN TRIANGLE, BAPTIST )
MEMORIAL HOSPITAL-ST. JOSEPH )
HOSPITAL, AND BAPTIST MEMORIAL )
HOSPITAL-DESOTO HOSPITAL )
)
          Plaintiffs, )
)
          v. )     Case No. 1:06CV01413 (CKK)
)
MICHAEL O. LEAVITT, )
Secretary of Health and Human Services, )
)
          Defendant. )
_____ )

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND
## SCHEDULING ORDER AND PERMIT DISCOVERY

Defendant Michael O. Leavitt, Secretary of Health and Human Services ("the Secretary")

respectfully opposes Plaintiffs' Motion to Amend the Scheduling Order and Permit Discovery.

On February 21, 2007, Plaintiffs filed a Motion in which they asked the Court to amend

its January 26, 2007 order and permit discovery. Plaintiffs' Motion ("Pls.' Mot.), Docket Entry

No. 15. Plaintiffs seek the production of a broad array of documents, including: all of the

authorities which set forth the PRRB's policies regarding the formation of group appeals, the

addition and transfer of issues, and the reinstatement of appeals (all documents which are already

available to the public); all documents which relate to the filing and disposition of every

reinstatement request filed with the PRRB by providers since the creation of the PRRB by

Congress over three decades ago. See id. Plaintiffs also seek to depose two of the members of

the PRRB, and to have these members produce documents concerning the PRRB's procedures,

practices, and deliberations over a seven year period. Id. However, as set forth in more detail

below, discovery is inappropriate and not warranted in this Administrative Procedure Act (APA)

case, seeking review of the decisions of the Provider Reimbursement Review Board ("PRRB"),

the administrative tribunal responsible for hearing certain types of Medicare reimbursement

disputes.  See 42 U.S.C. § 1395oo(f)(1).  This Court already correctly denied Plaintiffs' request

for discovery and adopted the proposed briefing schedule set forth by Defendant in the Joint

Notice and Proposed Schedule.  See January 26, 2007 Minute Order.  Accordingly, the Court

should deny Plaintiffs' instant motion.

**BACKGROUND**

By way of background, Plaintiffs were a group of acute care hospitals which participated

in the Medicare program.  Each of the hospitals filed individual appeals with the PRRB

concerning Medicare reimbursement disputes.  See 42 U.S.C. § 1395oo(f)(1).  At the request of

the Plaintiffs, the PRRB added a legal issue to the hospitals' respective pending individual

appeals, concerning whether the Secretary was required to include so-called Medicaid eligible

days in computing Plaintiffs' disproportionate share ("DSH") payment adjustment ("DSH

Medicaid eligible days issue"), and then transferred that issue from their individual appeals to a

newly formed group appeal, which the PRRB assigned Case No. 02-1735G.  At the request of the

hospitals, the PRRB also added a second legal issue to the hospitals' respective pending

individual appeals, concerning whether the Secretary's treatment of the so-called SSI proxy used

to compute the DSH adjustment was lawful ("DSH SSI issue"), and then transferred that issue

from their individual appeals to a newly formed group appeal, which the PRRB assigned Case

No. 02-1736G.  On July 30, 2003, after all of these transfers had been effectuated, the PRRB

dismissed Case Nos. 02-1735G and 02-1736G because of the hospitals' failure to comply with

position paper deadlines that had been set and announced by the PRRB.  On numerous occasions in the ensuing three years, Plaintiffs attempted to add these two legal issues, the DSH Medicaid eligible days issue and the DSH SSI issue, to their individual appeals and to various newly formed group appeals.  In a series of jurisdictional decisions, issued on March 14, 2006, May 5, 2006, June 14, 2006, and September 5, 2006, the PRRB denied each of these requests, explaining each time that it lacked jurisdiction over the two issues as a result of the dismissal of Case Nos. 02-1735G and 02-1736G.  Plaintiffs are now before this Court challenging the last two of these jurisdictional decisions, the PRRB's June 14, 2006 and September 5, 2006 decisions.

In a Joint Notice and Proposed Schedule filed by the parties on January 19, 2007, Plaintiffs indicated that they would seek to conduct discovery in this case, over the Secretary's objections.  Docket Entry No. 13.  On January 26, 2007, this Court issued a Minute Order in which it ruled that discovery is inappropriate in this action and adopted the proposed briefing schedule set forth by Defendant in the Joint Notice and Proposed Schedule.  January 26, 2007 Minute Order.  The Court explained that this action is governed by the Administrative Procedure Act ("APA") and that review under the APA is limited to the administrative record, "except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review."  Id.  Because the Court concluded that Plaintiffs had not made either of those showings in this case, it found discovery to be improper.  Id.

## ARGUMENT

### A.    JUDICIAL REVIEW OF FINAL AGENCY ACTION IS GENERALLY CONFINED TO THE ADMINISTRATIVE RECORD

As this Court stated in its scheduling order, and Plaintiffs have acknowledged, this action concerns a challenge to agency action and this Court's review is therefore governed by the APA. See 5 U.S.C. § 551 et. seq.; Pls.' Mot. at 9, Docket Entry No. 15; Plaintiffs' Amended Compl. (Docket No. 5) ¶¶ 1-2 (stating that this is a civil action brought to obtain judicial review of final agency decisions rendered by the PRRB), 2 (noting the applicability of the APA to this action); 42 U.S.C. § 1395oo(f) (instructing that final decisions of the Secretary are to be "tried pursuant to the" APA); 5 U.S.C. § 701 (which provides that the action of "each authority of the Government of the United States" is subject to judicial review except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law.")

This Court also correctly stated in its scheduling order, and Plaintiffs have admitted, that judicial review pursuant to the APA is normally confined to the administrative record. See Pls.' Mot. at 9. The APA provides that a reviewing court's determination of whether an agency action is "arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law [,] . . . contrary to constitutional right, power, privilege, or immunity [, or] . . . in excess of statutory jurisdiction, authority or limitations, or short of statutory right," shall be based on the court's "*review* [of] *the whole record or the parts of it cited by a party* . . ." 5 U.S.C. § 706 (emphasis added).

Accordingly, in APA cases, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing

court." See Florida Power & Light v. Lorion, 470 U.S. 729, 743 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419-420 (1971) (noting that section 706 of the APA commands that a district court's review of agency action be based solely on "the full administrative record that was before the [agency] at the time [it] made its decision," which should correspond to "the 'whole record' compiled by the agency"); Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981) (noting that "[i]t is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made.") (emphasis added). "The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." See Florida Power, 470 U.S. at 743-44. "The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Id. at 744. "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." Walter O. Boswell Mem. Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984). For a court "[t]o review more information than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." Id.; see also IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997).

Because judicial review is generally confined to the administrative record and de novo inquiry is inappropriate, "the general rule is that discovery is not permitted prior to a court's review of the legality of agency action" under the APA. See National Law Ctr. on Homelessness & Poverty v. Department of Veterans Affairs, 736 F. Supp. 1148, 1152 (D.D.C. 1990).

- 5 -

Supplementing the administrative record "is the exception not the rule." Motor & Equip. Mfrs.
Ass'n v. Environmental Protection Agency, 627 F.2d 1095, 1105, n. 18 (D.C. Cir.1979); see also
Florida Power, 470 U.S. at 744 (observing that "[t]he APA specifically contemplates judicial
review on the basis of the agency record compiled in the course of informal agency action" and
that "[t]he factfinding capacity of the district court is . . . typically unnecessary to judicial review
of agency decisionmaking"); Greenpeace U.S.A. v. Mosbacher, 719 F.Supp. 21, 24 (D.D.C.
1989) (stating that discovery "is permitted only in the extraordinary agency record review case.")

    Discovery is only allowed in two limited circumstances: (1) where there has been a
"strong showing of bad faith or improper behavior;" or (2) where "discovery provides the only
possibility for effective judicial review and when there have been no contemporaneous
administrative findings." See Cmty. for Creative Non-Violence v. Lujan, 908 F.2d 992, 997
(D.C. Cir. 1990) ("CCNV"); id. at 998 (explaining that "only in the rare case in which the record
is so bare as to frustrate effective judicial review will discovery be permitted under the second
exception."); Commercial Drapery Contractors, Inc. v. U.S., 133 F.3d 1, *7 (D.C. Cir. 1998);
Overton Park, 401 U.S. at 420; Saratoga Dev. Corp. v. U.S., 21 F.3d 445, 457-58 (D.C. Cir.
1994) (rejecting effort by party in APA case to obtain "'discovery to probe the mental processes
of the decision-makers'" and "to examine such matters as 'why each Board member who voted
for Delta did so'"); Camp v. Pitts, 411 U.S. at 142-43 (asserting that even a "curt" explanation of
the reason for an agency action constitutes a sufficient basis for judicial review); National
Petroleum Refiners Ass'n v. FTC, 392 F. Supp. 1052, 1054 (D.D.C. 1974) (holding that even in
the "sharply limited situations" where courts have granted discovery, it was only after they
determined on review that the administrative record was inadequate); EDF, Inc. v. Blum, 458

F.Supp. 650, 663 (D.D.C. 1978) (remarking that mere allegations of impropriety "must not serve to allow those disappointed by regulatory activity to invoke all the benefits of the rules of civil procedure for an extensive search into the agency's decisional processes"); <u>Office of Foreign Assets Control v. Voices in Wilderness</u>, 382 F.Supp.2d 54, 63 (D.D.C. 2005) (observing that "[w]ere the rule otherwise, every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency.").

> **B.    NEITHER EXCEPTION TO THE GENERAL RULE BARRING DISCOVERY IN APA CASES APPLIES HERE, AND THUS DISCOVERY IS NOT WARRANTED**

In this case, Plaintiffs have not sufficiently alleged "bad faith or improper behavior" by the Secretary, and there is no evidence of such action.  <u>See</u> Amended Compl.; Pls.' Mot. *passim*. Without anything approaching a "strong showing of bad faith or improper motive," Plaintiffs cannot rely on the "bad faith" or "improper motive" exceptions to the general rule barring extra record discovery.  <u>See</u> <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 420.  Thus, Plaintiffs must rely on the other narrow exception to the general rule barring discovery in APA cases, which applies when "the record is so bare" as to prevent effective judicial review in the absence of discovery.  This claim fails as well.  Discovery is not necessary to allow effective judicial review of the PRRB's jurisdictional decisions in this case.

 Plaintiffs allege that the PRRB's jurisdictional decisions "consist of two brief, conclusory letters" and claim that "[n]owhere in the record does the PRRB explain adequately the basis for not allowing the Hospitals to add the DSH adjustment issue to their respective individual appeal or, for that matter, reconcile its decision with the Medicare regulations or the clear guidance of the PRRB's Instructions authorizing this very behavior."  <u>See</u> Pls.' Mot. at 2,

10.  In fact, the final decisions at issue, the PRRB's June 14, 2006 and September 5, 2006

decisions, were comprehensive and detailed, together comprising 5 single-spaced pages.  See

Certified Administrative Record for Baptist Memorial, et. al. v. Leavitt, 1:06cv01413 (D.D.C.)

("AR") at 5-7, 89-91.  These two decisions referenced, are further elucidated by, and are best

understood in conjunction with, the PRRB's earlier jurisdictional decisions of March 14, 2006

and May 5, 2006.  In total, the PRRB's four jurisdictional decisions consist of a total of 13 single

spaced pages, which individually and collectively clearly explain the  facts and legal reasoning

upon which the PRRB relied in reaching its jurisdictional conclusions.  Id.  In each decision, the

PRRB recounted, in great detail, what it understood to be the important events in the procedural

history of Plaintiffs' PRRB appeals, incorporating dates, details, and an explanation of the

significance of each event in the relevant chronology.  See AR at 5-7, 13-20, 89-91.  The PRRB

also made its legal reasoning plain in its four decisions. See, e.g., AR 90 (June 14, 2006 decision,

noting that "[t]hese providers chose to become part of a group appeal (CN: 02-1735G) to resolve

the Medicaid eligible days issue but then failed [to] follow the Board's Instructions, which

resulted in the dismissal of the group appeal," that "[t]he dismissal disposed of the Medicaid

eligible days issue," and "[t]he providers cannot now rely on adding the same issue again to their

individual appeals to get a second opportunity to join a group"), 15 (March 14, 2006 decision,

making these same points), 20 (May 5, 2006 decision, explaining that "[e]ach of these providers

chose to become a part of the group appeal to resolve the [Medicaid] SSI% issue but then failed

[to] follow the Board's Instructions, which resulted in the dismissal of the group appeal," that

"[t]he dismissal disposed of the SSI% issue," and "[t]he providers cannot now rely on adding the

same issue again to their individual appeals to get a second opportunity to join a group.").  The

PRRB's September 5, 2006 decision reiterated the aforementioned procedural history and legal reasoning.  See AR 5-7.

      The 810 page administrative record that the Secretary has filed with this Court constitutes the full record that was before the PRRB at the time that it made these decisions.  Among other documents, the record contains PRRB orders (including orders setting position paper deadlines), jurisdictional decisions by the PRRB, jurisdictional challenges filed with the Board by the Medicare Fiscal Intermediary and Plaintiffs' responses to those challenges, position papers which were filed by the parties, and correspondence between the Plaintiffs and the PRRB (including requests for hearing, requests for the addition and transfer of issues, and PRRB responses to those requests).  Thus the existing administrative record is more than adequate for this Court to effectively ascertain whether the PRRB's decisions were lawful.  The record provides much more, and certainly no less, than a "curt explanation" of the basis for the agency's action sufficient to permit "effective judicial review."  See Camp v. Pitts, 441 U.S. at 142.

      There do not appear to be any genuine and material issues of fact in this case.  Rather, the questions before the court are strictly legal in nature: whether the PRRB had jurisdiction to hear the DSH eligible days issue and the DSH SSI issue, once the providers transferred those issues to two separate group appeals but then failed to follow the Board's Instructions, which resulted in the dismissal of these group appeals.  No further factual development is necessary before the court may pass judgment on these legal issues.  The parties do not appear to disagree about what the relevant facts are in this case.  Rather, their disagreement centers on the legal significance of the agreed-upon facts and the facts that are plain on the face of the record.

      Plaintiffs suggest that the PRRB relied upon "secret law" and claim that "the PRRB does

not publish its . . . internal policies" and its "practices."  <u>See</u> Pls.' Mot. at 2-3, 11-14.  Nothing

could be farther from the truth.  For one thing, the PRRB referenced instructions in its decisions,

<u>see</u> AR 7, 15, 20, which by Plaintiffs' own admission are available online.  <u>See</u> AR 7, 15, 20;

Pls.' Mot. at 10 (citing to the instructions); Amended Compl. ¶ 13 (same); PRRB Instructions

(available at www.cms.hhs.gov/PRRBReview/Downloads/PRRB_Instructions_March_03.pdf).

Aside from the Instructions, there are other publicly available, relevant legal authorities against

which the lawfulness of the PRRB's jurisdictional decisions can be judged, including the

Medicare statute, and implementing regulations governing the PRRB's jurisdiction and powers

as well as the rights and responsibilities of the parties to PRRB proceedings.  <u>See</u>, <u>e.g.</u>, 42 U.S.C.

§ 1395oo(a), (e); 42 C.F.R. §§ 405.1835, 405.1867, 405.1873.  The court can certainly resolve

the question of whether the PRRB's jurisdictional decisions were reasonable and consistent with

the Medicare statute, the implementing regulations, and the PRRB's instructions in the absence

of any discovery.  Plaintiffs' suggestion that the record hints that the PRRB may have considered

improper factors outside the record is insufficient to trigger either the discovery sought or any

discovery at all.  Contrary to Plaintiffs' suspicions, the decisions under review speak for

themselves.  They are either reasonable and consistent with the governing statute and other

standards or they are not.  The administrative record compiled is more than sufficient to allow the

Court to make this determination.

Plaintiffs claim that "the PRRB has cited to no published authority for the proposition

that the transfer of an issue to a group appeal deprives the provider of the right to add <u>other</u> issues

to the individual appeal."  <u>See</u> Pls.' Mot. at 10 (emphasis added); <u>see also id</u>. at 2.  This however

is beside the point.  The legal issue which confronted the PRRB in this case was not whether the

transfer of an issue to a group appeal deprives the provider of "the right to add <u>other</u> issues to the individual appeal," but rather whether the transfer of an issue to a group appeal deprives the provider of the right to add <u>the same legal issue</u> to the individual appeal <u>after the group appeal has been dismissed</u>.  There is ample legal authority for the latter, more relevant proposition.[1]

Plaintiffs claim that [t]he PRRB does not publish its jurisdictional decisions" and argue that for this reason they have been "deprived of the opportunity to determine whether the PRRB acted consistent or inconsistent with past precedent . . . "  <u>See</u> Pls' Mot. at 11.  In fact, numerous PRRB jurisdiction decisions, as well as Administrator and court decisions reviewing those decisions can be found on Westlaw, Lexis, and in the CCH Medicare and Medicaid Guide, and they provide significant insight into how the PRRB's past practices and understanding with regard to when a provider may add or transfer issues, its authority to dismiss appeals for failure to comply with a position paper deadline, and the jurisdictional implications of such dismissals by the PRRB.[2]

_____

[1]  <u>See</u>, <u>e.g.</u>, PRRB's Instructions I.B.I.d. & I.C.VI., at Page 10) (emphasis added) (instructing that "[y]ou <u>cannot be a party to more than one group appeal on the same issue</u> for the same fiscal year end" and that "the Board does not acknowledge in writing the transfer of issue(s) from an individual appeal to a group appeal, <u>unless it will result in the closing of the individual case</u>.") (emphasis added); 69 Fed. Reg. 35716-01, *35724 (June 25, 2004) (Proposed rule, observing that "[u]nder our longstanding interpretation of these provisions, a provider's right to add issues is limited to a single provider appeal before the Board or the intermediary, and does not apply to a group appeal to the Board under section 1878(b) of the Act and [42 C.F.R.] § 405.1837" and "a provider's right to add issues is contingent on an original hearing request that meets all jurisdictional requirements for a Board or intermediary hearing, along with satisfaction of applicable jurisdictional requirements after any issues are added to the original request.")

[2]  <u>See</u>, <u>e.g.</u>, <u>Columbia / HCA Health Care Corporation 90 Franchise Tax - Louisiana, Provider v. Blue Cross and Blue Shield Association/Trispan Health Services</u>, Review of: PRRB Decision No. 99-D30 (May 21, 1999), *available at* 1999 WL 398029 (Administrator decision, noting that "it would have been improper to allow Highland to add the franchise tax issue to a closed case and transfer that case to a group appeal."); <u>Michael Reese Hosp. and Medical Center</u>

Finally, Plaintiffs have offered evidence of disparate treatment that is only weak at best. First, Plaintiffs point to the fact that, on two occasions in other cases involving other providers, the PRRB allegedly chose to reinstate appeals that had previously been dismissed due to the failure of providers to comply with position papers. See Pls.' Mot. at 12. However, Plaintiffs decline to mention that they never requested reinstatement of their group appeals, 02–1735G and 02-1736G, after the PRRB dismissed them based on Plaintiffs' failure to comply with the PRRB's position paper deadlines. See AR 5. Moreover, the perfunctory reinstatement orders which Plaintiffs cite as evidence do not explain the circumstances in those cases, making it impossible to evaluate why the reinstatements were granted. See Pls.' Mot, Exhibits 3 and 4; P.I.A. Michigan City, Inc. v. Thompson, 292 F. 3d 820, 826 (D.C. Cir. 2002) (It is "incumbent on an appellant complaining of inconsistency and capriciousness in the agency's explanation of its treatment to bring before the reviewing court sufficient particulars of how the appellant was situated, how the allegedly favored party was situated, and how such similarities as may exist dictate similar treatment and how such dissimilarities as may exist are irrelevant or outweighed"). These other providers might have had a more sympathetic case to make than Plaintiffs, and in any event, the PRRB cannot be faulted for not having granted a reinstatement request that was never made.

---

v. Thompson, 427 F.3d 436, 439-40 (7th Cir. 2005) (noting that "Michael Reese [hospital] did not respond to that letter from the PRRB in any way, neither filing position papers nor informing the PRRB that the issues had been settled and withdrawing the appeal" and "[a]ccordingly, the PRRB dismissed those appeals."); Ingham Regional Medical Center Provider No. 23-0167 v. Intermediary -- United Government Services, LLC - WI, Case No. 96-1951 (January 30, 2003), available at 2003 WL 296562, *4 (PRRB decision, observing that "[t]he Board concludes that, under the explicit language of the regulation, if a provider has a jurisdictionally proper appeal pending, it is permitted to add the DSH issue."); Pls.' Mot. at 12-13 (citing to PRRB decisions).

Plaintiffs also cite to a 2003 decision involving another provider in which the PRRB denied a request to form a group appeal on a DSH SSI issue.  See Pls.' Mot. at 12 & Exhibit 5. The question whether the PRRB should have granted the request to form a group appeal on the DSH SSI issue however has no bearing on the issue presented in this case, which is whether the dismissal of an appeal by the PRRB for failure to file a timely position paper has preclusive effect on the issue raised in that appeal, preventing the PRRB from having jurisdiction over it.

Lastly, the unsubstantiated hearsay evidence Plaintiffs proffer with regard to the February 16, 2007 hearing, see Pls.' Mot. at 13, does not help Plaintiffs' cause, as it no way undercuts the PRRB's conclusion that it is without jurisdiction over the issues that were transferred to the group appeals and then dismissed.

The Federal Rules of Civil Procedure vest broad discretion in the district courts with respect to control of the discovery process, see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) and United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1382-83 (D.C. Cir. 1984), and provide that "a [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge . . ."  See Fed.R.Civ.P. 16(b); see also LCvR 16.4.  "A scheduling order issued pursuant to Federal Rule of Civil Procedure 16(b) . . . 'is intended to serve 'as the unalterable road map (absent good cause) for the remainder of the case.'"  See Nat'l R.R. Passenger Corp. v. Expresstrak, L.L.C.., 2006 W.L. 2711533, *2 (D.D.C. 2006); Olgyay v. Soc'y For Envtl. Graphic Designs, Inc., 169 F.R.D. 219, 220 (D.D.C. 1996). Accordingly, this Court should deny Plaintiffs' motion to amend the scheduling order and permit discovery.

- 13 -

## C.     A District Court Recently Denied Discovery Under Identical Circumstances

The United States District Court for the District of Rhode Island recently granted a Protective Order to the Secretary under factual and legal circumstances that are completely virtually identical to those presented here.  See Rhode Island Hosp. v. Leavitt, 2007 WL 294026 (D. R.I. 2007) ("Rhode Island").[3]  Like the Plaintiffs in this case, the hospital in Rhode Island "contend[ed] . . . that discovery is required because the PRRB did not adequately explain its decision."  See Rhode Island, 2007 W.L. at *2; see also Pls.' Mot. at 9-10.  The Court disposed of this argument, noting that "[w]hile the Hospital may disagree with the PRRB's decision and may well be correct in that opinion, the procedural issue decided by the PRRB was relatively simple and its decisions each contain a short and plain explanation of the reasons for such decisions."  Id. at *2.  The same can be said in this case.

Like the Plaintiffs in this case, the hospital in Rhode Island also "argue[d] that discovery is warranted because it has not been able to identify 'any publicly-available policies or decisions from the PRRB that substantiate [its] position.'"  See Rhode Island, 2007 W.L. at *2; see also see Pls' Mot. at 10-13.  The Rhode Island court disposed of this argument noting that:

> . . . this is not a reason to permit discovery in an administrative appeal.  The Court must ultimately determine if the PRRB's decision is supported by substantial evidence in the record and the applicable law. The applicable law is contained in the U.S. Code, Code of Federal Regulations, the PRRB Instructions and any applicable case law.  Prior PRRB decisions are apparently available to the public

---

[3]  The Rhode Island court explained that in that case, as in this one, "[t]he crux of the dispute is whether the dismissal of an appeal by the PRRB for failure to file a timely position paper has preclusive effect on the issue raised in that appeal," explaining that "[t]he PRRB [had] held that it did and refused to allow the Hospital to litigate the issue by adding or transferring it to another pending appeal" and "[t]he Hospital contends that the PRRB erred because, prior to the dismissal for failure to file a position paper, the Hospital exercised its right under 42 C.F.R. § 405.1841(a)(1) to transfer or add the issue back into its initial appeal."  Id. at *1.

as the Hospital's attorney cited to "several PRRB decisions" in his April 3, 2006 request to reopen submitted to the PRRB.  This administrative appeal has yet to be briefed on the merits.  When it is, it will be incumbent on Defendant to identify the legal support for the challenged decision. If it fails to identify such support, the Hospital will surely point that out in its argument to vacate the challenged PRRB decisions.  If it does identify such support, the Hospital will surely analyze the legal support offered by Defendant and present any available argument(s) as to the applicability or weight to be provided to it.

See id. at *2.

Finally, the Plaintiff in Rhode Island, like the Plaintiffs here, "argue[d] that the discovery sought may reveal that the PRRB has taken a different position in the past in similar cases" and "that if the PRRB has taken inconsistent positions, it would be a 'classic case' of a decision that is arbitrary, capricious and an abuse of discretion."  See Rhode Island, 2007 W.L. at *2; Pls.' Mot. at 11-13.  The Rhode Island court rejected that argument for the same reason this Court should.  It observed that "the Hospital offers absolutely no factual support for the existence of inconsistent decisions and it is plainly on a fishing expedition," and explained that "[i]f this Court allowed the Hospital to go on this fishing expedition, then it would have to allow all plaintiffs in administrative appeals to do so based solely on a speculative accusation of possible disparate enforcement."  See Rhode Island, 2007 W.L. at *2.  The court concluded that "[s]uch a result would place the burden on administrative agencies to research all of their prior decisions for plaintiffs in administrative appeals in an attempt to locate any past inconsistent decisions," and that "[t]here is no support under the APA to place such a burden on the agency."  See Rhode Island, 2007 W.L. at *2.  All of the Rhode Island court's conclusions are equally applicable here.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully submits that the Court should deny Plaintiffs' Motion to Amend the Scheduling Order and Permit Discovery.

Respectfully submitted,

_____/ s /_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_____/ s /_____
MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7220/FAX: (202) 514-8780

JONATHAN C. BRUMER
D.C. Bar No. 463328
U.S. Department of Health and Human
  Services
Office of the General Counsel
Centers for Medicare and Medicaid Services
  Division
330 Independence Ave., S.W.
Cohen Building, Room 5344
Washington, D.C. 20201
(202) 205-8703/FAX: (202) 401-1405

Counsel for the Secretary

- 16 -