IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL - GOLDEN
TRIANGLE, BAPTIST MEMORIAL
HOSPITAL - ST. JOSEPH HOSPITAL, AND
BAPTIST MEMORIAL HOSPITAL - DESOTO
HOSPITAL
350 N. HUMPHREY'S BLVD.
MEMPHIS, TN 38120

Civil Action No.1:06CV01413
Hon. Colleen Kollar-Kotelly

        Plaintiffs,

**ORAL ARGUMENT REQUESTED**

vs.

MICHAEL O. LEAVITT, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF HEALTH AND
HUMAN SERVICES,

        Defendant.

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Baptist Memorial Hospital - Golden Triangle, Baptist Memorial Hospital - St. Joseph Hospital and Baptist Memorial Hospital - Desoto Hospital (collectively, the "Hospitals"), for their Motion for Summary Judgment, rely upon the attached memorandum and state that there is no genuine issue of material fact and that they are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56. On April 4, 2007, concurrence of counsel in the relief sought was been requested, but was denied, therefore, it is necessary to present this motion.

**WHEREFORE**, the Hospitals respectfully request that this Court:

(1)      grant their Motion for Summary Judgment;

(2)      reverse the decisions of the Medicare Provider Reimbursement Review Board ("PRRB") dated June 14 and September 5, 2006, disallowing the Hospitals' request to add issues to their pending individual appeals. The PRRB's decisions were based on erroneous findings of fact

and other failures to follow the federal regulations and its own Instructions;

(3)    require Defendant to order the Intermediary to reopen the Hospitals' FY 1998 Medicare cost report and recalculate the Hospitals' Medicare disproportionate share hospital adjustment determinations for the fiscal year ending in 1998;

(4)    award the Hospitals their costs and attorneys' fees incurred in bringing this Motion; and

(5)    grant the Hospitals any further relief this Court deems just and necessary.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:    /s/ Kenneth R. Marcus
       Kenneth R. Marcus (DC Bar No MI 0016)
       660 Woodward Avenue
       2290 First National Building
       Detroit, Michigan 48226
       Phone:  313 465 7470
       Fax:  313 465 7471
       kmarcus@honigman.com

       and

ALDERMAN & DEVORSETZ, PLLC

/s/ Leslie D. Alderman III
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@a-dlaw.com

COUNSEL FOR PLAINTIFFS

Date:  April 6, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL - GOLDEN
TRIANGLE, BAPTIST MEMORIAL
HOSPITAL - ST. JOSEPH HOSPITAL, AND
BAPTIST MEMORIAL HOSPITAL - DESOTO
HOSPITAL
350 N. HUMPHREY'S BLVD.
MEMPHIS, TN 38120

       Plaintiffs,

vs.

MICHAEL O. LEAVITT, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF HEALTH AND
HUMAN SERVICES,

       Defendant.

Civil Action No.1:06CV01413
Hon. Colleen Kollar-Kotelly

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

At stake in this case is the right of Plaintiffs Baptist Memorial Hospital - Golden

Triangle, ("BMH-Golden Triangle") Baptist Memorial Hospital - St. Joseph Hospital ("BMH-

St. Joseph") and Baptist Memorial Hospital - DeSoto ("BMH-DeSoto") (collectively, the

"Hospitals"), each of which is a nonprofit, charitable community hospital, to receive their fair

share of Medicare payment.  Each Hospital had a contract with the Defendant Secretary of

Health and Human Services (the "Secretary") requiring the Secretary to make payment to each

Hospital the "reasonable and necessary costs" incurred in furnishing services to Medicare

beneficiaries, including the DSH Adjustment.  42 U.S.C. §§ 1395d, 1395x.  At issue in this case is Medicare payment for services the Hospitals furnished to the indigent population they serve, referred to as the disproportionate share hospital adjustment (the "DSH Adjustment"), during the Hospitals' 1998 fiscal years. 42 U.S.C. §1395ww(d)(5)(F).  This case presents the central issue of whether the Provider Reimbursement Review Board ("PRRB" or "Board"), below, erred when it denied the request of the Hospitals to pursue their appeals of the DSH Adjustment in either their respective individual appeals pending before the PRRB or in group appeals.

A.    **SUMMARY AND OVERVIEW**

To decide this case, it is necessary for the Court to familiarize itself with the DSH Adjustment, the Medicare appeals process, and the procedural appeal chronology, all of which are explained in detail in the succeeding sections of this brief.  To enable the Court to readily grasp the essence of this case, this Introduction provides a brief summary and overview of the applicable law and the relevant facts.

1.    The DSH Adjustment

The DSH Adjustment is an additional Medicare payment reflecting that a hospital serves a disproportionate share of low income persons, referred to in Medicare parlance as a "DSH Adjustment."  See 42. U.S.C. § 1395ww(d)(5)(F), 42 C.F.R. § 412.106.  The DSH Adjustment involves two separate computations, the "Medicaid Fraction" and the "Medicare Fraction."  These two computations in turn are based on a variety of hospital-specific components.  The DSH Adjustment is further briefed in greater detail in Section III.A.

2.    The Medicare Appeals Process

Each Hospital had the right under the Medicare Act to pursue an administrative appeal before the Provider Reimbursement Review Board ("PRRB" or "Board") and, if necessary, the

right to pursue a judicial appeal from any final decision of the PRRB. 42 U.S.C. § 1395oo. A provider, such as each of the Hospitals, may pursue an individual appeal regarding one or more issues, 42 U.S.C. § 1395oo(a). Alternatively, a provider, such as each of the Hospitals, may establish a group appeal along with one or more other providers to appeal a common issue of law or fact. 42 U.S.C. § 1395oo(b). The Medicare appeals process is further briefed in greater detail in Section III.B.

      3.    <u>The Hospitals' Appeals</u>

Each Hospital pursued its right to appeal to the PRRB regarding a variety of the components of the DSH Adjustment for its fiscal year 1998. Each Hospital satisfied the jurisdictional requirements for establishing an individual appeal before the PRRB. Two of the Hospitals, BMH-Golden Triangle and BMH-St. Joseph, also established, along with other providers, two group appeals before the PRRB to appeal two distinct components of the DSH Adjustment. Those two groups were dismissed due to failure to comply with a deadline. The Hospitals' individual appeals, however, continued to remain in good standing before the PRRB, and the Hospitals sought to pursue their appeals regarding the DSH Adjustment in their individual appeals or in other group appeals presenting different DSH Adjustment components than were presented in the dismissed group appeals. The PRRB has denied each Hospital its right to pursue its appeal of any of the DSH Adjustment components in either their respective individual appeals or in group appeals. The detailed chronology of the Hospitals' individual and group appeals is set forth in Section III.C.1. and 2.

      **B.**    **ISSUE PRESENTED**

This case presents the central issue of whether the PRRB's denial of the Hospitals' rights to pursue their appeals of the DSH Adjustment in either their respective individual appeals

pending before the Board or in group appeals was arbitrary, capricious, an abuse of discretion, not in accordance with law and not supported by substantial evidence in the record.

The PRRB ignored that, having satisfied the jurisdictional prerequisites for establishing their respective individual appeals before the PRRB, the PRRB had jurisdiction over any and all issues that could be raised in such individual appeals, including appeal of the DSH Adjustment. There is no authority supporting the PRRB decision that individual appeal rights are waived or extinguished solely because a Hospital participated in a group appeal that was dismissed. Certainly, the PRRB cites no authority and offers no explanation for such a decision. Moreover, review of the administrative record reveals that the PRRB did not order the parties to submit briefs and that the PRRB did not conduct a hearing on the issue. Rather, the PRRB summarily dismissed the Hospitals' appeals and instructed the Hospitals to appeal to federal court if they remained dissatisfied. The Court denied the Hospitals' discovery motion, which sought to establish a robust basis for this Court's review. The Hospitals respectfully submit that the Court's ability to assess the decision of the PRRB in the instant case in the light of PRRB decisions presenting the same or similar issue is diminished.

Moreover, the PRRB ignored that the Hospitals had the right to add issues to their pending individual appeals, as expressly permitted by the Medicare regulations at 42 C.F.R. § 405.1841(a), and by the PRRB's Instructions.[1] The PRRB denied the request of the Hospitals to add their appeal of the DSH Adjustment to their individual appeals for the sole reason that the Hospitals had previously transferred such issues to group appeals which subsequently had been terminated. There is no published authority supporting the decision of the PRRB denying the

---

[1] The PRRB Instructions purportedly contain the policies and practices of the PRRB in administering reimbursement appeals The Instructions are published on the world wide web: http://www.cms.hhs.gov/PRRBReview/Downloads/PRRB_Instructions_March_03.pdf

Hospitals' right to add such issues to their pending individual appeals.

Against this background, summary judgment is appropriate because there are no disputed issues of fact and the PRRB's decision in this case was arbitrary and capricious, an abuse of discretion or otherwise not in accordance with the law.

## II.     FACTS

As required by LCvR 7(h), the Hospitals simultaneously are filing with the Court their Statement of Material Facts. The proceedings before the PRRB are summarized in Section III. C.

## III.     REGULATORY BACKGROUND

For the Court to decide the issue in this case, it is necessary for the Court to familiarize itself with the DSH Adjustment and the Medicare appeals process, which are summarized as follows:

### A.     DSH ADJUSTMENT

It is necessary for the Court to understand that the DSH Adjustment is not monolithic. Rather, it consists of a host of components, summarized below.  It is necessary for the Hospitals to brief the Court regarding these several components in order to demonstrate to the Court that the PRRB denied the Hospitals the right to appeal *any* of the DSH Adjustment components solely because two group appeals presenting two of the components were terminated.

Thus, under the Medicare Prospective Payment System ("PPS"), Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments.  42 U.S.C. §1395ww(d); 42 C.F.R. Part 412.  One of these adjustments, known as the disproportionate share hospital or "DSH Adjustment," is

available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients. See 42 U.S.C. §1395ww(d)(5)(F).

The DSH Adjustment percentage is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis: (1) the "Medicaid Proxy," intended to account for inpatients who are not entitled to Medicare benefits, but who qualify for medical assistance under a State's Medicaid State plan, and  (2) the "Medicare Proxy," which is intended to account for inpatients who are Medicare beneficiaries entitled to SSI, a federal low-income supplement.    The following is a summary of the various component of these two fractions which are subject to appeal before the PRRB and the federal courts:

1.    The Medicaid Proxy

For the Intermediary to compute the "Medicaid Proxy," it is necessary for the Intermediary to determine the number of inpatient days that patients who "were eligible for medical assistance [i.e., Medicaid]" received services at the hospital. 42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added). In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment. As the following discussion indicates, several categories of Medicaid days come within the Medicaid Proxy.

a.    Medicaid Paid and Unpaid Days

A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment. See 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. §412.106. This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days:

for which benefits are payable under [Medicaid].  Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

Thus, this final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible" Medicaid inpatient days, when computing the DSH adjustment.  This is known as the Secretary's "paid days" policy.

The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy.  See *Jewish Hosp., Inc. v. Secretary of Health and Human Services,* 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996).  Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based.  No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

As a result of these four judicial decisions, the CMS Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. §401.108.  This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients eligible for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

HCFAR 97-2 also explicitly states that CMS will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia in *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001). The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

Although the hospitals in *Monmouth* requested a reopening which the intermediary denied, the United States Court of Appeals for the District of Columbia subsequently decided that the intermediary has a duty to reopen cost reports for NPR's dated during the period of 2/27/94-2/27/97 to apply HCFA Ruling 97-2 even if a provider did not request a reopening. *In Re Medicare Reimbursement Litigation Baystate Health Systems v. Leavitt*, 414 F.3d 7 (D.C. Cir. 2005), *cert. denied*, (2006 U.S. LEXIS 2717; 74 U.S.L.W. 3559 (April 3, 2006).

Thus, in light of this authority it has become a matter of well settled law that the Intermediary has a duty to include all Medicaid eligible days in the Medicaid low income proxy.

b. Section 1115 Days

Section 1115 of the Social Security Act, as codified at 42 U.S.C. § 1315, allows the Secretary to approve State research and demonstration projects that promote the objectives of the Title XIX Medicaid program. For purposes of the DSH Adjustment, days of hospital care for

persons enrolled in such programs are referred to as "Section 1115 Waiver Days." Until early 2000, the Medicare regulations did not specifically address the treatment of Section 1115 waiver days under DSH, and CMS policy on this issue was not clear. Thus, there was an inconsistency in whether hospitals were allowed to include Section 1115 Waiver Days in the DSH calculation. The applicable regulation provides that hospitals may include Section 1115 Waiver Days for discharges occurring on or after January 20, 2000. 42 C.F.R. § 412.106(b)(4)(ii) (2002). The validity of this regulation is current being adjudicated by this Court. *Cookeville Regional Medical Center v. Thompson*, 2005 WL 3276219 (D.D.C.), Med & Med GD (CCH) ¶ 301,760 (Oct. 28, 2005), *Cookeville Regional Medical Center v. Leavitt*, 2006 WL 2787831 (D.D.C.), Med & Med GD (CCH) ¶ 301,910 (Sept. 26, 2006.), *Cookeville Regional Medical Center v. Leavitt*, 2006 WL 3870414 (D.C.Cir. Dec 18, 2006).

   c.    <u>Charity Care Days</u>

   The DSH "Medicaid Proxy" refers to "medical assistance," as follows:  "eligible for medical assistance under a State plan approved under subchapter XIX of this chapter." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II).  Certain states have included in their Title XIX State Plan categories of coverage in addition to conventional Medicaid coverage.  This Court has held that such "charity care" days are included in the definition of "medical assistance." *St. Joseph's Hospital v. Leavitt*, 425 F.Supp.2d 94 (D.D.C. Mar 30, 2006).

   2.    <u>The Medicare Proxy</u>

   In addition to the Medicaid Low Income Proxy,  the DSH Adjustment is based on the supplemental security income percentage ("SSI%") as set forth in the "Medicare Proxy," 42 U.S.C. § 1395ww(d)(5)(D0(vi)(I), which provides as follows:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of

this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter.

Thus, the "Medicare proxy" is the percentage of a hospital's inpatients who received Medicare Part A benefits who were also eligible for SSI benefits when they were receiving inpatient services at the hospital. This percentage is called the "SSI percentage."

CMS computes the SSI percentage, but does not release the underlying data to the hospital. It is the stated position of CMS that certain of these data cannot be released to hospitals. See 70 Fed. Reg. 47,440 (August 12, 2005). In 2006, the PRRB issued a significant decision in B*aystate Hospital v. Mutual of Omaha Ins. Co.*, PRRB Case No.2006-D20 (PRRB Dec. March 17, 2006), modified (CMS Adm. Dec. May 11, 2006). The providers argued that the SSI percentage used to make the DSH determination was understated because it was severely flawed. The PRRB decision confirmed the many flaws in the SSI%:

1.    CMS requires PPS hospitals to use the SSI percentages that CMS provides.

     a.    "42 C.F.R. 412.106(b) provides that CMS will calculate a hospital's Medicare fraction . . . ." Board Dec. at 6.

     b.    "[T]he DSH statute directs CMS to determine the SSI fraction . . . ." *Id.* at 8.

2.    CMS has known for many years that its SSI percentages were incorrect for many FYs, including the ones at issue in the *Baystate* appeal, because the agency was aware that (1) the process it used to match beneficiary specific information with SSA data to determine the SSI percentage was flawed and (2) several problems existed with data used to determine the SSI percentage.

     a.    "Both parties consistently acknowledged during the hearing that the Social Security number is the best unique identifier. However, despite CMS' stated intent to use Social Security numbers as the patient match criteria, the evidence

showed that CMS has never matched Social Security numbers on the SSI data tape with Social Security numbers on the MEDPAR in the calculation of the SSI ratios." *Id.* at 12-13.

b.   "[I]ndividuals who received a forced payment during their inpatient stays were not shown as having been entitled to SSI for such periods on SSA annual tapes. Shafer [a CMS employee] testified that forced payments were a common occurrence during the periods at issue here. Thus, the omission of all these records was a systematic and recurring error that had the effect of understating the SSI ratios." *Id.* at 26.

c.   CMS should have known that the omission of retroactive SSI awards was a problem. "CMS' 1996 summary report showed that the ratio of the number of stays with new SSI days added . . . to the number of stays with old SSI days deleted . . . was greater than 17:1 for most years." Theoretically, and CMS claimed as much, the two categories could have offset each other resulting in a wash. Yet, with the ratio at 17:1, the stays with new SSI days added were not offset by any countervailing situation. *Id.* at 28.

d.   CMS knew that stale records were a problem with SSI fractions. Yet, in a June 1995 proposed rule to change the process of recalculation of the SSI ratio based on a hospital's cost reporting period, CMS claimed that the result of recalculating the ratio was "invariably" lower SSI ratios due to problems with the hospital's data. Five months later CMS requested corrected SSI records from SSA because its MEDPAR records were contaminated. CMS created a set of "special" MEDPAR files to allow CMS to determine the number of hospital stays in which the value of the SSI days increased or decreased. It subsequently used these special MEDPAR files for "everything" and claims that, even though it possessed these tapes as late as 1997, it either lost or destroyed those records. *Id.* at 33-34.

e.   "The uncontroverted evidence shows that the CMS knew, at least by 1993, that there was a problem with the SSI data that CMS had been receiving from SSA." *Id.* at 25.

Baystate is pending before this Court. *Baystate Med'l Ctr. v. Leavitt et al.*, 06-cv-1263

PLF (D.D.C.).    Upon information and belief, many cases are pending in abeyance before the

PRRB awaiting the final decision in *Baystate*.

## B.   THE MEDICARE APPEALS PROCESS

### 1.   Appeal Requirements

At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both

the cost incurred by it during the fiscal year and the appropriate portion of those costs to be

allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50. The hospital must submit its cost report in compliance with law. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

A provider has a right to obtain a hearing before PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act. *See* 42 U.S.C. § 1395oo(a)(1)(A)(2). The implementing regulation is 42 C.F.R. § 405.1835(a).

The PRRB consists of five members appointed by the Secretary. 42 U.S.C. § 1395oo(h). The PRRB has jurisdiction over appeals from the Secretary's final determinations if the provider is dissatisfied with the Secretary's final determination, the amount in controversy is equal to $10,000 or more, and the provider requests a hearing within 180 days after notice of the Secretary's determination. 42 U.S.C. §1395oo(a).

Two or more providers may file a group appeal with the PRRB regarding an issue involving a question of law or fact common to all of the providers. The identical requirements for filing an individual appeal are applicable, but the aggregate amount in controversy must be equal to $50,000 or more:

> The provisions of subsection (a) shall apply to any group of providers of services if each provider of services in such group would, upon the filing of an appeal (but without regard to the $10,000 limitation), be entitled to such a hearing, but only if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.

42 U.S.C. § 1395oo(b).

The PRRB Instructions provide that "[a] group appeal consists of one issue only, which involves a question of fact or an interpretation of law, regulation or CMS ruling, which is common to all of providers in the appeal." Instructions A.II.B.I.d. (page 5.)

To participate in a group appeal, typically a provider adds the issue to be appealed in the group to is individual appeal, and then transfers the issue from its individual appeal to a group appeal. The PRRB Instructions provide that the PRRB "does not acknowledge, in writing, the transfer of issues(s) from an individual appeal to a group appeal unless it will result in the closing of the individual case." Instructions C.VI. (page 10.)   As a practical matter, therefore, whether a provider in fact is included in a group is not determined until a later date when the group is deemed to be, in the parlance of the PRRB Instructions, "closed." Instructions C.VIII. (page 10.) That is, the final determination whether jurisdictional requirements for participation in a group are not determined when a provider adds and transfers an issue to a group. Rather, that determination is made at a much later date. *Id.*

The decision of a provider to participate in a group appeal is not irrevocable. In practice, the PRRB permits a provider to transfer from a group appeal to the provider's individual appeal.

The 180-day filing period set forth in 42 U.S.C. §1395oo(a) is not a jurisdictional requirement. Rather, it is simply a period of limitations. Indeed, the Secretary cannot dispute this fact, because the Secretary has promulgated  42 C.F.R. §405.1841(b),  which explicitly allows the 180-day filing period to be waived and extended to three years. *Ozark Mountain Regional Rehabilitation Center, Inc. v. HHS*, 798 F. Supp. 16 (D.D.C. 1992).

4.    The Scope of PRRB Review Upon Satisfaction Of  Jurisdictional Requirements

The United States Supreme Court has held that, "once jurisdiction has been invoked" over a cost report under 42 U.S.C. § 1395oo(a), then 42 U.S.C. §1395oo(d) "sets forth the powers and duties of the Board.." *Bethesda Hospital Association v. Bowen*, 484 U.S. 399 at 405.

The provisions of 42 U.S.C §1395oo(d) are as follows:

> A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole. The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

Moreover, the Supreme Court stated in *Bethesda* that the text of § 1395oo(d) "allows the Board … to review and revise a cost report with respect to matters not contested before the fiscal intermediary." *Id.* at 406. Thus, upon satisfying the jurisdictional requirements for an appeal before the PRRB, "[t]he only limitation prescribed by Congress is that the matter must have been 'covered by such cost report,' that is a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Id.*

3.    The Provider's Right to Add Issues To A Jurisdictionally Proper PRRB Appeal

Consistent with the principle that the PRRB enjoys a broad scope of review once PRRB jurisdiction has been established, the Secretary has promulgated a regulation authorizing a provider to add an issue to an appeal pending before the PRRB prior to the date of the hearing: "Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof." 42. C.F.R. § 405.1841(a).

Moreover, the PRRB Instructions provide as follows regarding the right of a provider to a pending appeal:

> In an individual appeal, you may add issues to the appeal prior to the commencement of the hearing. You must identify the issues in writing and simultaneously furnish any supporting documentary evidence. (See Part I, B., II., a. Hearing Request for Individual Appeals.) The issues must be

14

from the final determination(s) that is (are) the subject of your hearing request. The Board does not send written acknowledgement of the addition of issues to an existing appeal. Since you are responsible for addressing all issues in a position paper before the hearing, you should assume that the added issues are part of your appeal. In addition, the Board does not acknowledge, in writing, the transfer of issue(s) from an individual appeal to a group appeal, unless it will result in the closing of the individual case. Although issues may be added to an individual appeal even after you have filed your position paper, the Board will look with disfavor on issues that are added at the last minute. The Board encourages you to submit a supplemental position paper on any such added issue(s) at least 45 days before the hearing.

Instructions, II.C.VI (page 10.)

Neither Congress nor the Secretary has imposed any restriction or limitation on the right of a provider to add one or more issues to a pending appeal before the PRRB. On June 25, 2004, the Secretary published a proposed amended regulation governing appeals before the PRRB. 69 *Fed. Reg.* 35716. Among other proposed amendments, the Secretary proposed to impose a time limit on the right of a provider to add an issue to an appeal. The Secretary stated as follows regarding 42 C.F.R. § 405.1841(a):

Under current §405.1811(c) and §405.1841(a)(1), a provider may add a specific matter at issue to the original request for a hearing before the intermediary or the Board, respectively, anytime before the commencement of a hearing. Under our longstanding interpretation of these provisions, a provider's right to add issues is limited to a single provider appeal before the Board or the intermediary, and does not apply to a group appeal to the Board under section 1878(b) of the Act and §405.1837. **Also, a provider's right to add issues is contingent on an original hearing request that meets all jurisdictional requirements for a Board or intermediary hearing, along with satisfaction of applicable jurisdictional requirements after any issues are added to the original request.** Moreover, if a provider's original hearing request is an appeal from a revised NPR issued after a reopening (see §405.1885 and §405.1889), the provider's right to add issues is limited to those specific matters that are within the scope of the reopening and revised NPR.

69 *Fed.. Reg..* at 35724. (Emphasis added.)

It is clear from the Secretary's statement that, under the current rule in effect, a provider's satisfaction of applicable jurisdictional requirements in the original hearing request is the *sole* condition to a provider's right to add an issue to an individual appeal.

The Secretary also made the following statement in the preamble to the proposed rule:

> We recognize that, to the extent the Board has jurisdiction under section 1878(a) over a single provider appeal from an initial NPR, the third sentence of section 1878(d) confers on the Board the power to affirm, modify, or reverse the intermediary determination, and to make any other revisions on matters covered by the cost report regardless of whether such matters were considered by the intermediary in making the final determination.

69 Fed. Reg. at 35724.

This statement confirms that the Secretary acknowledges that, once jurisdictional requirements are satisfied, the PRRB enjoys a broad scope of review.

Thus, neither the Medicare Act, the governing regulation, 42. C.F.R. § 405.1841(a), the proposed amended regulation, nor the corresponding provision of the PRRB Instructions, limits a provider's right to add an issue to a pending individual appeal if jurisdictional requirements have been satisfied.

The implications for this case are very significant because, here, that the Hospitals transferred an issue to a group appeal that was terminated does not eliminate the right of the Hospitals to add that same issue to the provider's jurisdictionally proper individual appeal.

4.    Appeal of the DSH Adjustment

Although a provider has the right to appeal a DSH Adjustment to the PRRB, the burden is not on the provider to claim the DSH Adjustment or to appeal the failure of the Intermediary to properly compute the DSH Adjustment.  CMS is on record in the *Federal Register* that a provider need not claim the DSH Adjustment as part of the formal cost reporting process.  *See* 51 *Fed. Reg.* 31457-58, September 3, 1986.  Thus, as early as September 3, 1986, CMS recognized

that it is the sole duty of the intermediary to make the proper DSH payment to a provider. Of course, this Court and the Court of Appeals reached an identical conclusion in ordering mandamus relief requiring the intermediary to reopen a cost report to assure that the DSH Adjustment was computed in accordance with HCFAR 97-2. *Monmouth* and *Baystate*, *supra*.[2]

Although the Intermediary has the duty to assure that the proper DSH Adjustment is made, of course a provider has the right to appeal to the PRRB regarding the failure of the intermediary to properly compute the DSH Adjustment. The PRRB Instructions recognize that the DSH Adjustment consists of a number of components and, accordingly, the Instructions require a provider to specify the specific component that the provider desires to appeal:

> Your hearing request must include an identification and statement of the issue(s) you are disputing. You must identify the specific issues, findings of fact and conclusions of law with which the affected parties disagree; and you must specify the basis for contending that the findings and conclusions are incorrect. If you use an acronym, you must define it first. You must clearly and specifically identify your position in regard to the issues in dispute. **For instance, if you are appealing an aspect of the disproportionate share (DSH) adjustment factor or calculation, do not define the issue as "DSH." You must precisely identify the component of the DSH issue that is in dispute.** For Example: Were the Intermediary's adjustments to the number of available beds for disproportionate share (DSH) qualification purposes proper?

Instructions, II.a. (page 6.) (Emphasis added.)

## C.    PROCEEDINGS BEFORE THE PRRB

### 1.    The DSH Adjustment Appeal of BMH-Golden Triangle

On February 26, 2002, BMH-Golden Triangle timely filed a request for hearing regarding its FYE 9/30/98, which included appeal of the Medicare Proxy and the Medicaid Proxy. (Statement of Material Facts Paragraph 6.) The PRRB assigned this appeal Case No. 02-0958.

---

[2] Upon information and belief, the Hospitals are aware that in unpublished decisions the PRRB has asserted jurisdiction over a hospital's DSH Adjustment appeal where there is no DSH Adjustment in the Provider's cost report.

BMH-Golden Triangle transferred its appeal of the DSH Adjustment Medicare Proxy to BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G and its appeal of the DSH Adjustment Medicaid Proxy to BMHCC 98 Medicaid Eligible Days Group, Case No. 02-1735G. (Statement of Material Facts Paragraphs 7,8,9,10, and 11.)

On July 30, 2003, the PRRB issued a letter to reimbursement consulting firm Quality Reimbursement Services, Inc. ("QRS") dismissing BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G (AR 419) and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G for the stated reason that the preliminary position paper was not filed with the Intermediary and that a confirming letter regarding the filing of the preliminary position paper was not filed with the PRRB. (Statement of Material Facts Paragraph 12.)[3]

BMH-Golden Triangle transferred its appeal of the DSH Adjustment Medicare Proxy to BMH 98 Medicare DSH SSI Proxy Group, Case No. 04-055G and its appeal of the DSH Adjustment Medicaid Proxy to DSH Adjustment Medicaid eligible days component, Case No. 04-0554G. (Statement of Material Facts Paragraphs 17-20.)

On March 14, 2006, the PRRB issued a decision that it did not have jurisdiction over the Hospitals in BMH 98 Medicare DSH SSI Proxy Group, Case No. 04-0554G. (Statement of Material Facts Paragraph 59.)

On May 2, 2006, the PRRB issued a decision that it did not have jurisdiction over the Hospitals in BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 04-0553G. (Statement of Material Facts Paragraph 61.)

---

[3] It is undisputed that the Hospitals did not appeal the dismissal of Case Nos. 02-1735G and 02-1736G. The Hospitals' decision to not appeal the dismissals was based on their understanding of the relevant regulations, which they correctly interpreted to allow the Hospitals to add dismissed issues to their pending individual appeals.

On June 14, 2006, the PRRB denied the request for reconsideration of the jurisdictional decision in BMHCC 98 Medicare DSH Medicaid Proxy Group, Case No.04-0554G. (Statement of Material Facts Paragraph 62.)

2.    The DSH Adjustment Appeal of BMH-DeSoto

On November 23, 2001, BMH-DeSoto filed a request for hearing regarding its FYE 9/30/98, which included appeal of the Medicare Proxy and the Medicaid Proxy.  (Statement of Material Facts Paragraph 22.)  The PRRB assigned this appeal Case No. 02-0304.

BMH-DeSoto initially sent correspondence to the PRRB requesting participation in BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G and  in BMHCC 98 Medicaid Eligible Days Group, Case No. 02-1735G.  (Statement of Material Facts Paragraphs 23-26.)    In fact, however, the Medicare DSH Adjustment appeals of BMH-DeSoto did not become incorporated in either of those group appeals.  See letter dated April 24, 2003 to the Board including a list of Providers in PRRB Case Nos.02-1735G and 02-1736G describing in detail the issues under appeal.  The list of Providers did not include BMH-DeSoto. (Statement of Material Facts Paragraph 27.)  Accordingly, the Medicare DSH Adjustment appeals of BMH-DeSoto remained in its individual appeal, case No. 02-0304. The PRRB clearly continues to have jurisdiction over that entire individual appeal.

3.    The DSH Adjustment Appeal of BMH-St. Joseph

On August 16, 2001, BMH-St. Joseph filed a request for hearing regarding its FYE 9/30/98, which included appeal of the Medicare Proxy and the Medicaid Proxy.  (Statement of Material Facts Paragraph 34.)  The PRRB assigned this appeal Case No. 01-3359.

On April 11, 2002, BMH-St. Joseph filed a request with the PRRB to establish BMHCC 1998 Medicaid Eligible Days Group Appeal and to establish BMHCC 1998 Medicare DSH SSI Proxy Group Appeal.  (Statement of Material Fact Paragraphs 37, 38, 41, 42.)  By letter dated

April 24, 2003 to the Board, BMH-St. Joseph along with the other participating providers in these group appeals furnished a list of Providers in PRRB Case Nos.02-1735G and 02-1736G describing in detail the issues under appeal. (Statement of Material Facts Paragraph 43.)

Although BMH-St. Joseph filed a request to participate in the two group appeals, in fact it filed its Final Position Paper for its individual appeal with the PRRB on April 18, 2002. (Statement of Material Facts Paragraph 40.) The Final Position Paper evidences that BMH-St. Joseph appealed to the PRRB the DSH Adjustment Medicare Proxy and Medicaid Proxy. Moreover, the Intermediary's Final Position Paper evidences that BMH-St. Joseph had appealed such issues. (Statement of Material Facts Paragraph 36.)

On July 30, 2003, the PRRB issued a letter to reimbursement consulting firm Quality Reimbursement Services, Inc. ("QRS") dismissing BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G (AR 419) and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G for the stated reason that the preliminary position paper was not filed with the Intermediary and that a confirming letter regarding the filing of the preliminary position paper was not filed with the PRRB. (Statement of Material Facts Paragraph 12.)

On January 23, 2004, QRS requested, on behalf of BMH-St. Joseph and several other providers, that the PRRB establish a group appeal for its FYE 9/30/1998 to appeal the DSH Adjustment Medicaid eligible days component and that the PRRB establish a group appeal for its FYE 9/30/1998 to appeal the DSH Adjustment SSI% component. (Statement of Material Facts Paragraphs 45 and 46.) By letters dated March 31, 2004, the PRRB established BMH 98 Medicare DSH Medicaid Proxy Group, Case No. 04-0554G. and BMH 98 Medicare DSH SSI Proxy Group, Case No. 04-0553G. (Statement of Material Facts Paragraphs 47 and 48.)

Moreover, although BMH-St. Joseph filed a request to participate in the two group appeals, in fact BMH-St. Joseph continued to diligently pursue its appeal of the DSH Adjustment SSI% issue, as witnessed by its correspondence to CMS requesting SSI% information. (Statement of Material Facts Paragraphs 49, 50, 53.)

On March 14, 2006, the PRRB issued a decision that it did not have jurisdiction over the Hospitals in BMH 98 Medicare DSH SSI Proxy Group, Case No. 04-0554G. (Statement of Material Facts Paragraph 59.)   On May 2, 2006, the PRRB issued a decision that it did not have jurisdiction over the Hospitals in BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 04-0553G. (Statement of Material Facts Paragraph 61.)  On June 14, 2006, the PRRB denied the request for reconsideration of the jurisdictional decision in BMHCC 98 Medicare DSH Medicaid Proxy Group, Case No.04-0554G. (Statement of Materials Facts Paragraph 62.)

BMH-St. Joseph corresponded with the PRRB requesting appeal of the DSH Adjustment Medicare Proxy and Medicaid Proxy in its individual appeal, Case No.  01-3359.  The PRRB initially granted, then in response to a challenge from the Intermediary, denied this request. (Statement of Material Facts Paragraphs 63 – 70.)

By letter to BBL dated September 5, 2006, the PRRB issued a decision declining to assert jurisdiction over the Medicaid eligible days component and the SSI% component in St. Joseph's individual appeal, Case No. 01-3359.   (Statement of Material Facts Paragraph 70.) As indicated by the PRRB's somewhat ill-tempered statement, the PRRB stated that its decision was final and subject to appeal:

> The Provider is directed to stop wasting the Board's time with its multiple requests to add or transfer these issues to any appeal for this fiscal year end.  This is the Board's **final decision** regarding these issues for this Provider for this fiscal year end.  No further requests will be considered. If any such requests are filed in the future, they will be summarily dismissed.  If the Provider is dissatisfied with the decision, its recourse is

appeal.  [*Id.* at 7 (emphasis in the original).]

### D.  THE HOSPITALS' REQUEST FOR JUDICIAL REVIEW

On August 9, 2006, the Hospitals filed a Complaint for judicial review of the PRRB's June 14, 2006 final decision declining to assert jurisdiction over the Hospitals' DSH Adjustment appeals in BMHCC 98 Medicare DSH Medicaid Proxy Group, Case No.04-0554G. (The June 14, 2006 final decision is set forth in Statement of Materials Facts Paragraph 62.)  On October 10, 2006, the Hospitals filed an Amended Complaint from the PRRB's September 5, 2006 final decision declining to assert jurisdiction over the DSH Adjustment appeals of BMH-St. Joseph appeal in Case No.  01-3359.  (The September 5, 23006 final decision is set forth in Statement of Material Fact Paragraph 70.)

The PRRB's June 14, 2006 and September 5, 2006 decisions are arbitrary, capricious, an abuse of discretion, not in accordance with law and not supported by substantial evidence in the record because they are in direct conflict with the Medicare regulations and the PRRB's own Instructions and because they ignore that the DSH Adjustment consists of a host of components each of which, as witnessed by the PRRB's own Instructions, must be appealed with specificity. The PRRB's decisions deprived the Hospitals of their rights to appeal issues which they had the right to appeal in their jurisdictionally sound individual appeals, and to add issues related to several of the DSH Adjustment components that had never been included in the terminated group appeal, as well as the DSH Adjustment component that had been included in the terminated group appeal.

# IV.    Discussion

## A.    STANDARD OF REVIEW

Section 1395oo(f)(1) of the Medicare Act provides this Court with jurisdiction to review

"final agency decisions concerning Medicare provider reimbursement disputes pursuant to the

applicable provisions of the Administrative Procedure Act ('APA') [5 U.S.C. § 706(2)]."

*Grancare, Inc. v. Shalala*, 93 F. Supp. 2d 24, 29 (D.D.C. 2000).  Although the standard of review

is deferential, this Court "must ensure that the agency action was based on a consideration of the

relevant factors, and that the agency has exercised a reasoned discretion, with reasons that do not

deviate from or ignore legislative intent." *Id* (internal quotation marks omitted).  This Court's

review must be "searching and careful," and is generally confined to the agency record in

existence before the agency.[4] *Id.* (internal quotation marks omitted).

In the instant case, where the decision and action of the PRRB is not supported by and in

fact is inconsistent with the governing regulations, the Court should find that the absence of a

regulation is of particular importance in the Medicare context, where the Medicare Act

specifically prescribes that "[n]o rule, requirement, or other statement of policy ... that

establishes or changes a substantive legal standard governing the scope of benefits [or] the

payment for services ... [under Medicare] shall take effect unless it is promulgated by the

Secretary by regulation ...."  42 U.S.C. §1395hh(a)(2).  The Court also should recognize that,

---

[4] Because the PRRB failed to adequately explain its decision and appeared prejudiced against the Hospitals, and the administrative record assembled in this case was inadequate and incomplete, the Hospitals requested that discovery be permitted.  (Docket No. 15.)  On March 13, 2005, this Court denied the Hospitals' request to conduct discovery.  The Court's denial of discovery in this case has severely hampered the Hospitals ability to cite jurisdictional decisions supporting its positions because the PRRB -- as explained in the Hospitals' February 21, 2007 Memorandum -- does not publish its jurisdictional decisions.  As the Hospitals explained, they have every reason to believe that the PRRB has allowed other providers to add an issue to a pending individual appeal that was previously dismissed from a group appeal.

while a general agency practice or policy might be worthy, in some limited circumstances, of some judicial deference, notwithstanding that it has never been incorporated in any formal agency requirement or regulation, action that establishes or changes a substantive legal standard is entitled to no such deference. Accordingly, this Court should give heightened scrutiny to any agency action that is not supported by regulation and which, as this brief demonstrates in the instant case, is contrary to the regulations.  Thus, this Court must set aside the PRRB's decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by substantial evidence." *Id.* (internal quotation marks omitted).  A decision is arbitrary and capricious if:

> the agency . . . relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, the PRRB's decisions, as explained below, are erroneous, arbitrary, and capricious and not supported by substantial evidence because the PRRB mistook the facts and failed to follow its own regulations and Instructions.

**B.    THE PRRB'S REFUSAL TO ALLOW THE HOSPITALS TO APPEAL THE DSH ADJUSTMENT MEDICARE PROXY AND MEDICAID PROXY WAS NOT SUPPORTED BY LAW AND WAS CLEARLY ERRONEOUS**

The central issue in this case is whether there is any authority for the PRRB's action that deprived the Hospitals of their statutory right to an appeal guaranteed by the Medicare Act.  The following discussion demonstrates that, having properly asserted jurisdiction over the Hospitals' respective individual appeals of the DSH Adjustment Medicare Proxy and the Medicaid Proxy, the PRRB continued to enjoy jurisdiction over the Hospitals' appeals of the DSH Adjustment Medicare Proxy and the Medicaid Proxy. The Medicare Act specifically prescribes that "[n]o

rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services … [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation …." 42 U.S.C. §1395hh(a)(2).

The PRRB's action in this case is not supported by regulation, and is inconsistent with the applicable statutory and regulatory provisions. Consequently, the PRRB's refusal to permit the Hospitals to pursue these appeals in their respective individual appeals or in a group appeal was not supported by law and was clearly erroneous.

1.    The Hospitals Timely Filed Individual Appeals And Group Appeals With The PRRB Regarding the DSH Adjustment Medicare Proxy and Medicaid Proxy

As summarized in Section III.C.1 and 2, *supra*, each of the Hospitals timely filed individual and group appeals with the PRRB that satisfied applicable jurisdictional requirements and which included appeals of the Medicare Proxy and the Medicaid Proxy.

2.    Throughout The Relevant Time Period, The PRRB Continuously Enjoyed Jurisdiction Over Each Hospital's Appeal Of The DSH Adjustment Medicare Proxy and Medicaid Proxy.

Having properly and timely filed appeals with the PRRB appealing the DSH Adjustment Medicare Proxy and Medicaid Proxy, the Hospitals had a continued right to appeal those issues before the PRRB, either as part of their respective individual appeals or as part of the group appeals that had been established.

a.    Upon Satisfaction Of Jurisdictional Requirements, The PRRB Enjoys A Broad Scope Of Jurisdiction

As briefed *supra*, the Supreme Court has pronounced that upon satisfying the jurisdictional requirements for an appeal before the PRRB, "[t]he only limitation prescribed by Congress is that the matter must have been 'covered by such cost report,' that is a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Bethesda*, 484 U.S. 399 at 406. In the instant case, and

as demonstrated in Section III.C. of this brief, each of the Hospitals satisfied the jurisdictional requirements, and thus the PRRB continued to enjoy jurisdiction over all matters covered by their respective cost reports, including the DSH Adjustment.   The refusal of the PRRB to permit the Hospitals to pursue their appeals is not supported by the Medicare Act, the Medicare regulations or the PRRB's Instructions.  Thus, the decision of the PRRB was not supported by law and this Court should not hesitate to order that decision to be reversed.

     b.     BMH-DeSoto Did Not Perfect Its Preliminary Group Appeal Transfer Request.

As noted above, BMH-DeSoto did not in fact perfect its preliminary request to transfer its DSH Adjustment Medicare Proxy and Medicaid Proxy to group appeals. (Statement of Material Facts Paragraph 27.)   Clearly the PRRB erred in refusing to permit BMH-DeSoto to pursue appeal of these issues in its individual appeal or in another group appeal.

     c.     A Provider's Right To Appeal An Issue In An Individual Appeal Is Note Extinguished If The Issue Is Transferred To A Group Appeal Which Ultimately Is Terminated.

The Hospitals acknowledge that BMH-Golden Triangle and BMH-St. Joseph procedurally perfected their requests to transfer their DSH Adjustment Medicare Proxy and Medicaid Proxy to the two group appeals that were terminated, *i.e.*, BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G (AR 419) and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G .  There is no authority, however, for the position of the PRRB that a provider's right to appeal an issue in an individual appeal is extinguished if, as in the instant case, the issue is transferred to a group appeal which ultimately is terminated.

Rather, the establishment of the individual appeal confers PRRB jurisdiction  over all matters covered by the cost report, *Bethesda, supra.*  Upon termination of the BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G (AR 419) and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G, therefore, the appeal of the DSH

Adjustment Medicare Proxy and Medicaid Proxy reverted to the respective individual appeals of BMH-Golden Triangle and BMH-St. Joseph.

3.    The PRRB Has Ruled  That DSH Adjustment  Medicare Proxy Is Not Suitable For A Group Appeal

Although BMH-Golden Triangle and BMH-St. Joseph *procedurally* perfected their requests to transfer their DSH Adjustment Medicare Proxy to a group appeal, it is questionable whether, *substantively*, the Medicare Proxy issue appropriately may be pursued in a group appeal. *See Harborview Medical Center*, PRRB Case No. 97-0945 ("The underlying data in determining Medicare SSI% varies from provider to provider and is unique to a specific provider based on their data, **thus, this issue is not suitable for a group appeal.**").   (Exhibit 1.) (Emphasis added.)

In the instant case, the PRRB has taken an entirely contradictory position from the position it took in *Harborview Medical Center* by insisting that the Medicare Proxy issue was transferred to a group appeal which was terminated and that, accordingly, the Hospitals forfeited the right to appeal that issue in their respective individual appeals.   Such contradictory action is the epitome of the type of arbitrary, capricious and unlawful agency action which this Court should not hesitate to reverse.

4.    In Any Event, The Hospitals Had The Right To Add The DSH Adjustment Medicare Proxy and Medicaid Proxy To Their Respective Individual Appeals

Even if the Court finds that upon termination of the group appeals the issue in the group appeals did not revert automatically to the Hospitals' respective individual appeals, certainly the Court should find that the Hospitals had the right to request that these issues be added to their individual appeals.  The Court should further find that the Hospitals exercised that right which the PRRB unlawfully denied.

The Secretary's promulgated regulations and the PRRB's Instructions specifically permit a provider to add one or more issue to its individual appeals. Specifically, the applicable regulation provides:

> Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof. 42 C.F.R. § 405.1841(a).

The Instructions also specifically provide:

> **In an individual appeal, you may add issues to the appeal prior to the commencement of the hearing.** You must identify the issues in writing and simultaneously furnish any supporting documentary evidence. (See Part I, B., II., a. Hearing Request for Individual Appeals.) The issues must be from the final determination(s) that is (are) the subject of your hearing request. (See Section C(VI) "Adding of Issues to Individual Appeals and/or Transfer of Issue to Group.")

Notably, neither of the provisions cited above contains *any* restriction on the ability to add issues to an individual appeal.

Accordingly, the PRRB failed to follow the Secretary's regulations and its own Instructions when it deprived the Hospitals of their right to add issues to their pending individual appeals. The PRRB's failure to follow the regulations and its own Instructions is itself arbitrary and capricious. *See City of Stoughton v. E.P.A.*, 858 F.2d 747, 759 (D.D.C. 1988); *Int'l Union v. Donovan*, 590 F. Supp. 747, n.4 (D.D.C. 1984) ("an agency of course must adhere to its own regulations . . . .").

Given the clear authority allowing providers to add issues to pending individual appeals - - with no restriction that excluded issues which were previously dismissed on nothing more than a technicality -- it is not surprising that the PRRB cited no authority for its decision. In fact, to the Hospitals' knowledge, absolutely no published authority exists that holds that a provider cannot add an issue to an individual appeal if that issue was previously dismissed from a group

appeal. Certainly, the PRRB cites no such authority.   This fact in and of itself demonstrates that

the PRRB's decision was arbitrary and capricious.

In sum, the PRRB in rendering the challenged decisions not only ignored the factual

background of the various appeals, but also ignored the federal regulations and its own

Instructions.  In so doing, the PRRB acted arbitrarily and capriciously, abused its discretion and

its decision was not in accordance with the law.

**C.    THE PRRB'S REFUSAL TO ALLOW THE HOSPITALS TO PURSUE ISSUES THAT WERE NOT INCLUDED IN THE DISMISSED GROUP APPEALS WAS ARBITRARY AND ERRONEOUS**

1.    The DSH Adjustment Consists Of Several Components

As briefed in Section III.A., *supra,* the DSH adjustment is calculated based on the

Medicaid Fraction and Medicare Fraction, which in turn consist of several different hospital-

specific components.    Thus, even if the Court holds that the Hospitals forfeited their right to

appeal those DSH Adjustment components that were presented in the two group appeals that

were dismissed, the Court should hold that Hospitals retain their right to appeal other DSH

Adjustment components that were not included in such dismissed group appeals.

The PRRB Instructions specifically recognize that the DSH Adjustment consists of a

variety of different components, and prescribe as follows regarding the appeal of the DSH

Adjustment:

> You must clearly and specifically identify your position in regard to the issues in dispute.  For instance, if you are appealing an aspect of the disproportionate share (DSH) adjustment factor or calculation, do not define the issue as "DSH." *You must precisely identify the component of the DSH issue that is in dispute.*  [Instructions, p.7. (emphasis added).]

29

A recent letter from the PRRB underscores this principle. The PRRB issued a letter to QRS dated March 7, 2007 which stated as follows in response to the request of the Hospitals to pursue appeal of the Section 1115 waiver days component of the DSH Adjustment:

> The Board hereby finds that [expedited judicial review] is not available for the § 1115 waiver days issue for Union City. The Board finds that the § 1115 waiver days issue was not the issue under dispute in this group appeal. The statute, regulation and Board Instructions limit [a] group to a single issue. The issue identified in the hearing request is the Medicaid eligible/paid days issue that falls squarely within the four corners of Health Care Financing Administration Ruling 97-2."

(Statement of Material Facts Paragraph 78.)   This letter evidences conclusively that the PRRB recognizes that the DSH Adjustment is not monolithic.  Rather, as briefed in Section III.A., *supra*, the DSH Adjustment consists of multiple components.

This Court has even recognized that although in auditing a cost report the Intermediary makes only a single "global" notation regarding the DSH Adjustment,  a provider's appeal of such an adjustment gives the provider the right to appeal any or all of the components of the DSH Adjustment.  See *St. Joseph's Hosp. v. Leavitt*, 425 F. Supp. 2d 94 (D.D.C. 2006).  The PRRB also recognizes this principle.  *See, e.g., Community Hosp. of Monterrey Peninsula v. Blue Cross Blue Shield Association/United Governmental Services LLC-CA*, PRRB Dec. No.2006-D13 (January 19, 2006) (Medicare and Medicaid Guide (CCH) ¶ 81,461) (Board asserted jurisdiction over a provider's appeal from a revised notice of program reimbursement ("Revised NPR") where the revised NPR adjusted for the component of "paid" Medicaid days and the provider appealed "unpaid" Medicaid days.); *St. Rita's Medical Center v. Blue Cross and Blue Shield Association/AdminStar Federal Ohio*, PRRB Dec. No. 2005-D41 (May 25, 2005) (Medicare and Medicaid Guide (CCH) ¶ 81,364); *Rome Memorial Hosp. v. Blue Cross Blue Shield Association/Empire Medicare Services*, PRRB Dec. No. 2005-D42 (April 6, 2005) (Medicare and Medicaid Guide (CCH) ¶ 81,365).

In fact, in a separate, unrecorded proceeding before the PRRB on February 16, 2007, Chairperson Ms. Suzanne Cochran and Board Member Ms. Elaine Crews-Powell stated that the PRRB's policy was that general assistance is a separate DSH issue and should not be included in a group appeal related to Medicaid eligible days.  *See* Exhibit 2 (Declaration of James C. Ravindran).

2.    The Subsequent Group Appeals

Thus, even if this Court holds that the Hospitals did not have the right to appeal the DSH Adjustment components identified in the two terminated group appeals, BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G, the Court should hold that the Hospitals retained the right to appeal such DSH Adjustment components that were *not* included in the terminated group appeals.  The Court should reach that holding because a group appeal is restricted to a single issue, and a group appeal regarding the DSH Adjustment is restricted to a single DSH Adjustment component.  Accordingly, any DSH Adjustment component not included in the dismissed group appeals may continue to be appealed in the subsequent group appeals or in the Hospitals' individual appeals.

As noted *supra*, BMH-DeSoto did not procedurally perfect transfer of the DSH Adjustment Medicare Proxy or Medicaid Proxy to BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G  and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G.  The Court should hold, therefore, that BMH-DeSoto, therefore, continues to have the right to appeal  the DSH Adjustment Medicare Proxy or Medicaid Proxy in its individual appeal or in other group appeals.

As also noted, *supra,* the decision of the PRRB in the *Harborview* case casts into doubt whether the DSH Adjustment Medicare Proxy may be pursued in a group appeal. Thus, the Court should find that BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G was void *ab initio*, and the Court should hold that the Hospitals retained their right to appeal the Medicare Fraction in their respective individual appeals.

In any event, however, following the termination of the BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G  and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G, the Hospitals  established group appeals which did not purport to address the identical DSH Adjustment issues that were presented in BMHCC 98 Medicaid-Eligible Days Group Appeal, Case No. 02-1735G (AR 419) and BMHCC 98 Medicare DSH SSI Proxy Group Appeal, Case No. 02-1736G .  These group appeals were BMH 98 Medicare DSH Medicaid Proxy Group, Case No. 04-0554G and BMH 98 Medicare DSH SSI Proxy Group, Case No. 04-0553G.  (For BMH-Golden Triangle, Statement of Material Facts Paragraphs 13-20; for BMH-DeSoto, Statement of Material Facts Paragraphs 29-33;  for BMH-St. Joseph, Statement of Material Facts Paragraphs 45-48, 51-52.)

The issues presented to the PRRB in these two group appeals were not identical to the two terminated appeals.  Indeed, review of the parties' position papers filed with the PRRB reveals that the parties briefed the following DSH Adjustment components that were not identified for appeal in the earlier group appeals:  charity care days, Section 1115 Waiver Days, "Medi-Medi" days[5].  See Intermediary's Position Paper, AR 205-251; and Providers' Position Paper AR 252-331.

---

[5] "Medi-Medi" days refers to patients  simultaneously eligible for Medicare and Medicaid coverage.

3.    <u>The BMH-St. Joseph Individual Appeal</u>

The PRRB's refusal to allow BMH-St. Joseph to add DSH Adjustment issues to its pending individual appeal that had never been included in the terminated group appeal was erroneous.  Certainly nothing prevents providers from timely adding issues to individual appeals **which were not previously dismissed from a group appeal**.

The July 16, 2006 correspondence of BBL to the PRRB identified the following DSH Adjustment issues:

> **Disproportionate Share Payment - Medicaid Percentage:** Whether one or more of the following types of patient days for which patients were eligible for medical assistance under the State Medicaid plan were erroneously excluded from the Provider's DSH calculation:  charity care, state general assistance, state medical assistance, state-only or county-only health program, low income care, indigent care, uncompensated care, bad debt, Medicaid DSH and/or Section 1115 waiver/demonstration project or population days.
>
> Whether Medicaid Eligible days were in accordance with the Provider's underlying records since it did not include claims adjudicated after the cut-off date used by the Fiscal Intermediary and all out-of-state paid and eligible days.
>
> Audit Adjustment #24
> Reimbursement Amount: $1,130,295
>
> **Disproportionate Share Payment - SSI Proxy:** Whether the SSI percentage (proxy) used to compute Medicare Disproportionate Share (DSH) payments has been determined in accordance with the Medicare statutes, 42 U.S.C. Section 1395(d)(5)(F)(vi)(I). Specifically, the Provider disagrees with the Intermediary's calculation of the disproportionate patient percentage set forth at 42 C.F.R. Section 412.106(b)(2)(i).
>
> Specifically, the Intermediary has not reflected the recalculated SSI percentage for the Provider's fiscal period in accordance with 42 CFR Section 412.106(b)(3).
>
> Audit Adjustment #24
> Reimbursement Amount:  $50,800"

The PRRB initially granted, then in response to a challenge from the Intermediary, denied this request.  (Statement of Material Facts Paragraphs 63 – 70.)

As presented to the PRRB, these DSH Adjustment issues were inappropriate for a group appeal.  The Instructions provide in pertinent part as follows:

d.    <u>Group Appeals</u>

You and at least one other provider may request a group appeal.  Such an appeal is called a "optional" group appeal.  A group appeal consists of one issue only, which involves a question of fact or an interpretation of law, regulation, or CMS ruling, which is common to all providers in the appeal.

*If there are factual differences among the providers, the issue is not a valid group appeal issue.*  For example bad debts, exception issues, reconciliation issues, settlement data and undefined home office issues are among the issues that are generally inappropriate for a group appeal . (Emphasis added.)

Correspondence from the PRRB indicates that the appeal of the SSI% is not appropriate for a group appeal. The letter dated 2/9/2000 regarding QRS group appeal number 98-2692G,

The Board in pertinent parts states as follows, "Further the Board questions whether the issues in case 98-2692G is suitable for a group appeal because the question whether the SSI percentage was correctly calculated would be unique for each Provider and would involve a reconciliation of the records from HCFA/SSA and the Provider."

Exhibit 3.

The PRRB  letter dated 2/28/2003, Harborview Medical Center, PRRB # 97-0945, FYE 06/30/1994 stated as follows:

The Board states in pertinent parts as follows: "The Board is hereby denying your request to transfer the issues to group appeal.  The Board has determined that the calculation of the SSI% issue is factually specific to this Provider.  The underlying data in determining Medicare SSI% varies from provider to provider and is unique to a specific provider based on their data, thus, this issue is not suitable for group appeal.  Since this issue does not meet the criteria for a group appeal, the Board cannot grant your request to transfer this issue to case number 98-2692G or case number 99-3222G.  The combined issue will be added to and remain with appeal 97-0945." (Exhibit 1)

Further, Paragraphs 6 and 7 of the Affidavit of J.C. Ravindran, attached as Exhibit 2, provides as follows:

6.  At the meeting on February 16, 2007 at the PRRB, the question of what issues can remain in the *individual* appeal after a common question of fact or an interpretation of law, regulation or CMS ruling were transferred to a Medicaid Eligible day group appeal was discussed. Chairperson, Ms. Suzanne Cochran and Board Member, Ms. Elaine Crews-Powell agreed that the entire appeal for the Medicaid proxy component need not be dismissed and other issues could be pursued through an individual appeal which is Provider specific and not the subject of the issues transferred to the group.

7.  Conversely, in the Board's decision of September 5, 2006, the Board denied the Provider the right to pursue Provider specific issues on the Medicaid proxy and the SSI proxy which involves the reconciliation of the Provider's record with that of the intermediary and the agency. This is contrary to the interpretation of the Instructions of the Board as stated on February 16, 2007.

In the instant case, this SSI% DSH Adjustment component is exactly the same issue that the PRRB refused to permit the BMH-St. Joseph to pursue. Similarly, this is also the issue with respect to the Medicaid eligible days in which BMH-St. Joseph attempted to include the reconciliation of the Provider's specific Medicaid paid and eligible days with the State's records in the individual appeal. As noted above, the PRRB's Instruction says that items such as the settlement data are provider specific and therefore cannot be addressed through a group appeal. Accordingly, BMH-St. Joseph has the right to appeal such DSH Adjustment components through its individual appeal.

4.    In Sum, The PRRB Decisions Were Erroneous

In this case, therefore, the PRRB erroneously determined that all of the issues the Hospitals sought to add to their individual appeals, *i.e.*, whether their DSH Adjustment properly accounted for Medicaid eligible days, waiver days, Medi-Medi days, general assistance days, and the application of the "hold harmless" provision set forth in CMS Program Memorandum A-99-62, were a part of the terminated group appeal and refused to allow the Hospitals to add those issues to their individual appeals on that basis alone. A.R. 168 ("The providers cannot now rely

on adding the same issue again to their individual appeals to get a second opportunity to join a group."). **The dismissed appeal, however, only pertained to the issue of whether their DSH Adjustment properly accounted for Medicaid eligible days as required by HCFA Ruling 97.2 and general assistance days. The dismissed appeal did not relate to the other DSH Adjustment components the Hospitals sought to add to their individual appeals.**

Accordingly, the PRRB's decision which equated all of the Hospitals' challenges to the various components of their DSH Adjustment into one issue, "DSH," was flatly erroneous arbitrary and capricious, an abuse of discretion or otherwise not in accordance with the law.

### D.    ALTERNATIVELY, THE HOSPITALS ARE ENTITLED TO MANDAMUS RELIEF

As recognized by this Court and the Court of Appeals in *Monmouth* and *Baystate*, supra, the Intermediary is under a duty to compute the DSH Adjustment in compliance with HCFA Ruling 97-2. The PRRB has denied the Hospitals the right to pursue their DSH Adjustment appeals and the Hospitals ask this Court to order the Secretary to remand the Hospitals appeals to the PRRB with an order that the PRRB to permit the Hospitals to pursue such appeals.

As an alternative to ordering the Secretary to remand the Hospitals' appeals to the PRRB with an order that the PRRB permit the Hospitals to pursue their DSH Adjustment appeals, this Court should issue a writ of mandamus ordering that the Secretary remand the Hospitals' FY 1998 cost reports to the Intermediary with an order that the Intermediary conduct a reopening that permits the Hospitals to submit their support for an increased DSH Adjustment. The Court clearly has authority to do so in light of *Monmouth* and *Baystate*, *supra*.

## V.    CONCLUSION

Given the foregoing, the Hospitals respectfully request that this Court:  (1) grant their Motion for Summary Judgment; (2) reverse the PRRB's decisions disallowing the Hospitals' right to pursue their DSH Adjustment appeals either in their pending individual appeals or in group appeals; (3) issue a writ of mandamus requiring Defendant to order the Intermediary to reopen the Hospitals' FY 1998 Medicare cost reports and recalculate the Hospitals' Medicare disproportionate share hospital adjustment determinations for the fiscal year ending in 1998; (4) award the Hospitals their costs and attorneys' fees incurred in bringing this Motion; and (5) grant the Hospitals any further relief this Court deems just and necessary.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:    /s/ Kenneth R. Marcus
       Kenneth R. Marcus (DC Bar No MI 0016)
       660 Woodward Avenue
       2290 First National Building
       Detroit, Michigan 48226
       Phone:  313 465 7470
       Fax:  313 465 7471
       kmarcus@honigman.com

       and

       ALDERMAN & DEVORSETZ, PLLC

       /s/ Leslie D. Alderman III
       1025 Connecticut Ave., NW
       Suite 1000
       Washington, D.C. 20036
       Tel. 202-969-8220
       Fax 202-969-8224
       lalderman@a-dlaw.com

       COUNSEL FOR PLAINTIFFS

Date:  April 6, 2007

DETROIT.2579449.1