# EX.13



**Medicare**
Provider Reimbursement
Part A Intermediary
(423) 755-5906

www.cms.gov

*Formerly
Health Care Financing
Administration (HCFA)*

March 27, 2002    **Certified Mail**

Mr. Amrish C. Mathur
Provider Representative
Quality Reimbursement Services
150 N. Santa Anita Avenue, Suite 570A
Arcadia, California 91006

RE: Intermediary's Preliminary Position Paper
Baptist Memorial Hospital-St Joseph
Provider No: 44-0071
FYE: 12/10/98
Case # 01-3359

Dear Mr. Mathur:

Enclosed is a copy of the intermediary's preliminary position paper for your review. The issues addressed in the intermediary's preliminary paper has been forwarded and are subject to review and/or revision by the Blue Cross and Blue Shield Association.

If you have any questions, please contact me at (423) 752-7547.

Sincerely,

Mike Shaver
Appeals Coordinator
Provider Reimbursement

Enclosure

c: Lorri Frewert, Blue Cross & Blue Shield Association
c: Mr. Steven Kirsh, Provider Reimbursement Review Board (without enclosure)

Riverbend Government Benefits Administrator
730 Chestnut Street, Chattanooga, Tennessee 37402-1790
www.riverbendgba.com

A CMS Contracted Intermediary

)

**BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD**

BAPTIST MEMORIAL HOSPITAL-ST JOSEPH

PROVIDER NO. 44-0071

FYE 12/10/98

vs

)

BLUECROSS BLUESHIELD ASSOCIATION

RIVERBEND GOVERNMENT BENEFITS ADMINISTRATOR

Case No. 01-3359

INTERMEDIARY'S PRELIMINARY POSITION PAPER

)

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| I. INTRODUCTION | 1 |
| II. ISSUES AND ADJUSTMENTS IN DISPUTE | 3 |
| III. INTERMEDIARY'S POSITION | |

Issue 1: Whether the Intermediary determined Medicare Reimbursement for Disproportionate Share Payments in accordance with Medicare statute 42 U.S.C. Section 1395ww(d)?

| | |
|---|---|
| A. Facts | 4 |
| B. Argument | 5 |
| C. Conclusion | 12 |
| IV. EXHIBITS | 13 |

## I. INTRODUCTION

BMH-St. Joseph Hospital (Provider) is a 210 bed, general, short-term, voluntary, non-profit hospital located in Memphis, Tennessee. The Hospital operates a rehab unit certified 12/31/83, a skilled nursing facility certified 10/21/96 and a home health agency certified 1/01/96. The hospital is a component of Baptist Memorial Health Care Corporation, which is located in Memphis, TN.

**STATEMENT OF FACTS**

Relevant statistical information is as follows:

<u>Hospital</u>

| | |
|---|---:|
| Date Certified for Program Participation | 6/30/66 |
| Number of Total Hospital Beds | 210 |
| Total Hospital Days | 43,903 |
| Percent of Occupancy | 55.75% |
| Medicare Patient Days | 28,033 |
| Medicare Utilization | 63.85% |

<u>Rehab Unit</u>

| | |
|---|---:|
| Date Certified for Program Participation | |
| Number of Total Beds | 25 |
| Total Patient Days | 5707 |
| Medicare Utilization | 95.39% |

1

| | |
|---|---:|
| **Skilled Nursing Facility** | |
| Number of Total Beds | 30 |
| Total Patient Days | 7231 |
| Medicare Utilization | 99.76 |
| **Home Health Agency** | |
| Total Visits | 29,713 |
| Medicare Utilization | 96.43 |
| Date of Notice of Amount of Program Reimbursement | 7/26/01 |
| Date of Appeal Request | 08/16/01 |

## II. ISSUES AND ADJUSTMENTS IN DISPUTE

Issue 1: Whether the Intermediary determined Medicare Reimbursement for Disproportionate Share Payments in accordance with Medicare statute 42 U.S.C. Section 1395ww(d)?

Adjustment Numbers 8, 24

Reimbursement Effect                                            $ 125,000

3

)

## III. INTERMEDIARY'S POSITION

**Issue 1: Whether the Intermediary determined Medicare Reimbursement for Disproportionate Share Payments in accordance with Medicare statute 42 U.S.C. Section 1395ww(d)?**

**A. Facts**

On the as filed cost report, the Provider reported disproportionate share payments of $7,585,375. The Provider's calculation was based on an allowable DSH percentage of 49.95% and was calculated based on reported Medicaid days of 13,326 days. (Exhibit 1) At audit, the Intermediary obtained a copy of the Provider's out of state Medicaid reports and Tennessee Department of Finance's report of Medicaid Vs Uninsured/Uninsurable days, which reports Medicaid eligible days as confirmed by the state of Tennessee. Based on these reports, Medicaid eligible days were adjusted by the Intermediary to 9,092 days. (Exhibit 2) The Provider is dissatisfied with the Intermediary's adjustments made to the Medicare and Medicaid fractions of the DSH calculation and requested a hearing before the Board on August 16, 2001 (Exhibit

)

4

3). The Provider contends that the Intermediary has not complied with Medicare statute 42 U.S.C. Section 1395ww(d) and CMS issued Ruling 97-2 by considering all eligible Medicaid days. The Provider's final notice of program reimbursement (NPR) was issued by the Intermediary on July 26, 2001 (Exhibit 4), which is within the 180 day regulatory requirement for filing a jurisdictionally proper appeal.

**B. Argument**

The Medicare disproportionate share hospital (DSH) adjustment calculation, which is set forth in section 1886(d)(5)(F) of the Social Security Act, has been the subject of litigation. The adjustment is calculated by determining a hospital's disproportionate patient percentage, which is the sum of two fractions, the Medicare fraction and the Medicaid fraction commonly referred to as the Medicare and Medicaid proxy.

> In the Medicare fraction, the number of patient days for patients who were entitled to both Medicare Part A and Supplemental Security Income (SSI) under Title XVI of the Act is divided by the total number of patient days for patients entitled to Medicare

5

Part A for that same period. The Medicaid fraction consists of the number of patient days who for those days "were eligible for medical assistance under a State plan approved under title XIX (Medicaid) but who were not entitled to benefits under Medicare Part A" (Section 1886(d)(5)(f)(vi)(II) of the Act), divided by the total number of patient days for that same period. (Exhibit 5) The Provider is challenging the Intermediary's determination as it relates to both fractions. The SSI proxy used by the Intermediary to calculate the Medicare fraction and the number of Medicaid days used by the Intermediary in its determination of the Medicaid fraction.

**CALCULATION OF MEDICAID DAYS**

The Provider indicates in its preliminary position paper that the Intermediary erred in its adjustment to the hospital's Medicaid days because it did not consider all eligible days in accordance with Medicare statute 42 U.S.C §1395ww(d) and CMS Ruling 97-2. CMS issued its Ruling on February 27, 1997 which changed its interpretation of statutory and regulatory provisions concerning the treatment of Medicaid days in calculating the Medicare DSH adjustment under PPS.

CMS Ruling 97-2 states:

> " That the DSH adjustment should be determined by including as part of the calculation all inpatient hospital days of service for which a patient was eligible for assistance under a state Medicaid plan, whether or not the hospital actually received payment for those days." (Exhibit 6)

Based on our review of the audit workpapers, the Intermediary considered all Medicaid eligible days determined on the Provider's Tennessee state listing and out of state reports. There was no evidence from our review of the audit workpapers that unpaid days were not considered by the Intermediary in its determination of Medicaid days for DSH reimbursement. (Exhibit 7) The auditor's workpapers further indicate that the Provider submitted two different logs to the Intermediary. The first log included dually eligible (Medicare and Medicaid eligible) days and days relating to PPS exempt units. When the Intermediary determined that these types of days were included in the original listing, the Provider was asked to correct its listing and resubmitted the information to the state of Tennessee so that a revised report could be obtained at audit. It was the revised report (the log

7

excluding dually eligible and PPS exempt days) that was tested by the Intermediary. As was noted on the workpapers, the Intermediary determined no errors; therefore, the Intermediary allowed all Medicaid eligible days of 9,039 as reported on the states' reports. It is the Intermediary's opinion that the significant differences noted between Medicaid days reported on the as-filed cost report and the Intermediary's determination were due primarily to the days which were erroneously reported by the Provider for dually eligible patients and/or related to non-PPS areas of the hospital. Because dually eligible patients have already been considered in CMS's SSI proxy calculation, the inclusion of these days in the Medicaid fraction of the calculation is inappropriate. Consequently, in accordance with 42 CFR 412.106(a)(ii), days associated with patients who were not treated in the PPS areas of the hospital should also be excluded from the Medicaid proxy. (Exhibit 8) As stated in this section, 1115 waiver days were also addressed:

> "Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(I) of this section, hospitals may include all days attributable to

populations eligible for Title XIX matching payments through a waiver approved under Section 1115 of the Social Security Act." Since the Provider had only 18 reported uninsurable and uninsured days on its state's report, the 1115 waiver days were not a significant consideration in this appeal or the cause of the difference noted in reported Medicaid days.

In accordance with Medicare regulations and CMS's issuance of Ruling 97-2, the Intermediary has properly considered all of the Provider's Medicaid eligible days irrespective of whether the days were actually paid by the program.

**SSI PROXY**

The Provider contends that the SSI ratio published by CMS was incorrectly computed and does not consider all of the hospital's eligible SSI recipients. The Provider also argues that its Intermediary would not furnish the matching data from which the SSI Proxy had been derived because the Intermediary indicated that it is protected by the Privacy Act as stated in the 1995 final rule for inpatient PPS 60 <u>Fed. Reg</u> 45811-12.

CMS is responsible for computing each hospital's SSI ratio, which is furnished to servicing Intermediaries on an annual basis. The data sources for computation of the SSI percentage is obtained from a database of Medicare inpatient discharges from the Common Working File (CWF) and is compiled on a Federal fiscal year. Records from the discharge files are then matched with the Social Security Administration's SSI recipient's records to compute the SSI ratio for each hospital based on the federal fiscal period. The Intermediary does not have available the detailed information used by CMS to derived the SSI ratios for each hospital or access to the database for SSI recipients as determined by the Social Security Administration. Therefore, the Intermediary could not furnish the Provider the detailed information that it requests in the appeal. Because CMS compiles the SSI ratios based on its federal year instead of a hospital's own cost reporting period, a hospital can request that the SSI proxy be calculated on its own cost reporting period. This written request should be made through the Intermediary in accordance with 42 CFR 412.106(3). An exception if granted, will be performed once per hospital per cost reporting period and the resulting percentage becomes the hospital's official Medicare

Part A/SSI percentage for that period. (Exhibit 8) The hospital must use the recalculated SSI ratio regardless of whether its SSI ratio may result in a lesser percentage.

There is no documentation in the Intermediary's records that the Provider formally requested that its own cost reporting data be used in lieu of CMS's published SSI ratio. Since a request to use the Provider's cost report data was never initiated for this Provider during the audit, the auditor's use of the SSI ratio as determined by CMS was both appropriate and required in order to determine the hospital's DSH reimbursement. Even if the hospital wishes to use the SSI recipients as determined by the facility, this information would have to matched by CMS to the SSI recipient database to ensure that each patient was eligible for the applicable dates of service determined by the hospital. Eligibility for SSI can be very volatile. SSI recipient's eligibility can change on a month by month basis. Therefore, if a patient's hospitalization resulted in a lengthy hospital stay, the patient may not be eligible during certain portions of that time. The Intermediary has appropriately used the correct SSI ratio as determined by CMS and has not received a formal request from the Provider to the contrary. Until

CMS grants the Provider its request to use the hospital's own records in determining the SSI ratio and recalculates the SSI percentage based on the revised information, the Intermediary cannot change the SSI ratio used to calculate the hospital's DSH payments.

### C. Conclusion

Due to the reasons stated above, the Intermediary respectfully requests the Board to affirm its adjustments to Medicaid days as all eligible days whether paid or unpaid have been considered during the audit process.

## IV. EXHIBITS

1. Excerpts for the Provider's as-filed cost report (Worksheets S-3, E)
2. Intermediary Workpaper for DSH and Medicaid days F-630, F-610.
3. Request for Hearing dated August 16, 2001
4. Notice of Program Reimbursement (NPR) dated July 26, 2001.
5. Social Security Act Section 1886(d)(5)
6. CMS Ruling 97-2
7. TN state Listing of Medicaid eligible days.
8. 42 CFR 412.106