EX.17

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop N2-04-27
Baltimore, Maryland 21244-1850



CENTERS for MEDICARE & MEDICAID SERVICES

**DPCDD/EDG/OIS**

July 8, 2004

Mr. Paul Tower
Baptist Memorial Health Care Corp. – St. Joseph
350 N. Humphreys
Memphis, TN 38120-2177

Dear Mr. Tower:

Enclosed is an official copy of the signed Data Use Agreement (DUA) you have entered into with the Centers for Medicare & Medicaid Services (CMS). This copy is for your records so that you may refer to it for information regarding the use of the **disproportionate share data** you have received from CMS. Please refer to DUA number **14061** for your project entitled, "**SSI Detail Support**" when addressing inquiries of any nature concerning this agreement. Please note this agreement is in effect until May 31, 2005 or until completion of the project, which ever comes first. If you have any questions about this DUA or the use of the CMS data, you may contact me at (410) 786-4285.

Sincerely,

Jeannette Pleines
Div. Privacy Compliance Data Development
Enterprise Databases Group
Office of Information Services

Enclosures

cc: Joann Cerne, CMS Representative
    J.C. Ravindran, Quality Reimbursement Services

| From: | Jeannette Pleines |
|---|---|
| To: | Cerne, Joann; Giles, Judith |
| Date: | 7/8/04 11:24AM |
| Subject: | **Round 13: Disproportionate Share DUAs** |

Hello Judy & Joann -

Here are 8 DUAs for the DSH request received on 07/07/04.

| **EDG Contrl No.** | **DUA No.** | **Hospital** |
|---|---|---|
| 7254 | 14063 | INTEGRIS Baptist Medical Center Inc. |
| 7831 | 14060 | St. Mary's Medical Center, Inc. |
| 7832 | 14059 | Meriter Hospital |
| 7833 | 14058 | Saint Alphonsus Regional Medical Center |
| 7834 | 14057 | Gateway Medical Center |
| 7865 | 14061 | Baptist Memorial Health Care Corp. - St. Joseph |
| 7866 | 14062 | Harborview Medical Center |
| 7876 | 14056 | Paradise Valley Hospital |

I will be sending copies to the Hospital and the contractor. Judy, I have added La Faithia Earles to the DUA as user.

Thanks,


CC:        Earles, La Faithia; Franey, Maribel

designated will be responsible for the observance of all conditions of use and for establishment and maintenance of security arrangements as specified in this Agreement to prevent unauthorized use. User is responsible for any non-observance of the conditions of use, and/or failure to establish or maintain security arrangements, on the part of any Custodian. User agrees to notify CMS within fifteen (15) days of any change of custodianship. The parties mutually agree that CMS may disapprove the appointment of a custodian or may require the appointment of a new custodian at any time.

J. C. Ravindran
(Name of Custodian – e.g., consultant or attorney or other representative acting on behalf of Provider)

Quality Reimbursement Services
(Company/Organization)

150 N Santa Anita Ave., Ste 570A
(Street Address)

Arcadia, CA  91006
(City/State/ZIP Code)

(626) 445-5092, corporate@qualityreimbursement.com
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

(Attach separate sheet of paper with above information if listing more than one Custodian)

5.  The parties mutually agree that the following named individual will be designated as point-of-contact for the Agreement on behalf of CMS.

Joann Cerne
(Name of Contact)

Health Insurance Specialist, CMM, Division of Acute Care
(Title/Component)

7500 Security Boulevard
(Street Address)

C4-08-06
(Mail Stop)

Baltimore, Maryland 21244-1850
(City/State/ZIP Code)

410-786-4530
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

DSH Data Use Agreement (65 Federal Register Notice 50548-01, August 18 2000)
June 24, 2004
Page 4 of 7

year), per provider; Where cost year includes part of both FFY 1995 and FFY 1996, charge is $900.

The above file(s) are being disclosed to User under routine use 2 of the "Medicare Provider Analysis and Review (MEDPAR), HHS/HCFA/OIS, 09-70-0009" Privacy Act system of records, published at 65 Fed. Reg. 50548 (Aug. 18, 2000).

8. The parties mutually agree that the aforesaid file(s) (and/or any derivative file(s) (which includes any file that maintains or continues identification of individuals)) may be retained by User until the "retention date", which shall be no more than 90 days after the date of termination of User's appeal of CMS's calculation of its disproportionate patient percentage. For purposes of this paragraph, "date of termination of User's appeal" shall be the date upon which any of the following events occur: (1) the User abandons its appeal; (2) an order rendered by the PRRB, the CMS Administrator or court upholding CMS's calculation of User's disproportionate patient percentage has become final and non-appealable; (3) an order rendered by the PRRB, the CMS Administrator or court awarding additional payment to User with respect to the disproportionate patient percentage (including an order approving a settlement) has become final and non-appealable and such payment has been made to User; (4) an administrative resolution satisfactory to User and to the fiscal intermediary is reached on the appeal, and any additional payment provided for by such resolution, with respect to the disproportionate patient percentage, has been made to User. User agrees to notify CMS in writing within 30 days of after the date of termination of User's appeal that its appeal has terminated, attach a copy of this DUA to its letter, and request instructions regarding return or destruction of the aforesaid files(s) and any derivative file(s) (all files"). Upon receipt of such notice from User, CMS will notify User either to return all data files to CMS at User's expense or to destroy such data. If CMS elects to have User destroy the data, User agrees to certify the destruction of the files in writing within 30 days of receiving CMS's instruction. A statement certifying this action must be sent to CMS. If CMS elects to have the data returned, User agrees to return all files to CMS within 30 days of receiving notice to that effect. If CMS does not notify User within 30 days of the date of User's letter notice to CMS, User agrees to return all files to CMS prior to the retention date. User agrees that no data from CMS records, or any parts thereof, shall be retained when the aforementioned file(s) are returned or destroyed unless authorization in writing for the retention of such file(s) has been received from the appropriate Systems Manager or the person designated in paragraph 19. of this Agreement. User acknowledges that strict adherence to the aforementioned retention date is required.

The Agreement may be terminated by either party at any time for any reason upon 30 days written notice. Upon such notice, CMS will cease releasing data to User under this Agreement and will notify User either to return all previously released data files to CMS at User's expense or destroy such data, using the same procedures stated above in this paragraph. Sections 3, 6, 8, 11, 12, 14, 15 and 16 shall survive termination of this Agreement.

9. User agrees to establish appropriate administrative, technical, and physical safeguards to protect the confidentiality of the data and to prevent unauthorized use or access to it. The safeguards shall provide a level and scope of security that is not less than the level and scope of security established by the Office of Management and Budget (OMB) in OMB

have taken place, CMS may refuse to release further CMS data to User for a period of time to be determined by CMS.

15. User hereby acknowledges that criminal penalties under § 1106(a) of the Social Security Act (42 U.S.C. § 1306(a)), including a fine not exceeding $5,000 or imprisonment not exceeding 5 years, or both, may apply with to disclosures of information that are covered by § 1106 and that are not authorized by regulation or by Federal law. User further acknowledges that criminal penalties under the Privacy Act (5 U.S.C. § 552a(i) (3)) may apply if it is determined that the Requestor, User or Custodian, or any individual employed or affiliated therewith, knowingly and willfully obtained the file(s) under false pretenses. Any person found guilty under the Privacy Act shall be guilty of a misdemeanor and fined not more than $5,000. Finally, User acknowledges that criminal penalties may be imposed under 18 U.S.C. § 641 if it is determined that the User, or any individual employed or affiliated therewith, has taken or converted to his own use data file(s), or received the file(s) knowing that they were stolen or converted. Persons convicted under § 641 shall be fined under Title 18 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $1,000, they shall be fined under Title 18 or imprisoned not more than one year, or both.

16. By signing this Agreement, User agrees to abide by all provisions set out in this Agreement for protection of the data file(s) specified in paragraph 7., and acknowledges having received notice of potential criminal or administrative penalties for violation of the terms of the Agreement.

17. On behalf of User the undersigned individual hereby attests that he or she is authorized to enter into this Agreement and agrees to all the terms specified herein.

Paul Trower
(Name and Title of Individual - Typed or Printed – Representative for Provider)

System Director of Reimbursement
(Provider Name)

350 N. Humphreys
(Street Address)

Memphis, TN 38120-2177
(City/State/ZIP Code)

(901) 227-4792,
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

Paul Trower        June 25 2004
(Signature) (Date)

04 JUN 28 AM 16:50

INSTRUCTIONS FOR COMPLETING THE DATA USE AGREEMENT (DUA)

(AGREEMENT FOR USE OF CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS) DATA CONTAINING INDIVIDUAL IDENTIFIERS)

This agreement is needed as part of the review of your data request to ensure compliance to the requirements of the Privacy Act, and must be completed prior to the release of specified data files containing individual identifiers.

Directions for the completion of the agreement follow:

*Before completing the DUA, please note the language contained in this agreement cannot be altered in any form.*

- o  Introductory paragraph, enter the User's Organization Name (Provider Name and Provider Number).

- o  Paragraph 1., enter the User's Organization Name (Provider Name and Medicare Provider Number).

- o  Paragraph 4., enter the Custodian Name, Company/Organization, Address, Phone Number (including area code), and E-Mail Address (if applicable). The Custodian of files is defined as that entity or person who will have actual possession of and responsibility for the data files (such as a consulting firm and/or attorney who is prosecuting the appeal on behalf of the User-Provider). This section paragraph should be completed even if the Custodian and Requestor the User are the same. Where more than one Custodian is listed, the data will be mailed to the first one listed.

- o  Paragraph 5. will be completed by a CMS representative.

- o  Paragraph 6. specifies the limited permissible use of the data and the persons and/or entities to whom redisclosure may be made.

- o  Paragraph 7. Unless unavailable, the update version of the MEDPAR file that will be provided will be the update that was used to calculate the User's disproportionate patient percentages for the period covered by the request (e.g., the June 1997 update version of the FFY 1996 MEDPAR file) for a provider's cost year that

- o  Paragraph 13. will be completed by CMS.

- o  Paragraph 17. is to be completed by the User.

- o  Paragraph 18. is to be completed by Custodian.

- o  Paragraph 19. will be completed by a CMS representative.

Once the DUA is received and reviewed for privacy issues, a completed and signed copy will be sent to the User and consultant(s) for their files.

DUA # _____

## DSH DATA USE AGREEMENT

### AGREEMENT FOR USE OF
### CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS)
### DATA CONTAINING INDIVIDUAL-SPECIFIC INFORMATION

In order to secure data that resides in a CMS Privacy Act System of Records, and in order to ensure the integrity, security, and confidentiality of information maintained by the CMS, and to permit appropriate disclosure and use of such data as permitted by law, CMS and
BMHCC St. Joseph Hospital & Health Center, Prov. # 44-0071 enter into this agreement to comply
　　(PROVIDER NAME and PROVIDER NUMBER)
with the following specific paragraphs.

1. 1This Agreement is by and between the Centers for Medicare & Medicaid Services (CMS), a component of the U.S. Department of Health and Human Services (DHHS), BMHCC St. Joseph Hospital & Health Ctr., Prov. # 44-0071, hereinafter termed "User," (PROVIDER NAME and PROVIDER NUMBER). User represents that it currently has pending before the Provider Reimbursement Review Board a jurisdictionally proper appeal(s) on the issue of the calculation of the User's ratio of Medicare/SSI days to total Medicare covered days, (PRRB Case No.(s) 02-1736G
_____, for the following cost reporting period(s) 12/10/98

2. This Agreement addresses the conditions under which CMS will disclose and User will obtain and use the CMS data file(s) specified in paragraph 7. This Agreement supersedes any and all agreements between the parties with respect to the use of data from the files specified in paragraph 7. and preempts and overrides any instructions, directions, agreements, or other understanding in or pertaining to any grant award or other prior communication from the Department of Health and Human Services or any of its components with respect to the data specified herein. Further, the terms of this Agreement can be changed only by a written modification to this Agreement or by the parties adopting a new agreement. The parties agree further that instructions or interpretations issued to User concerning this Agreement or the data specified herein, shall not be valid unless issued in writing by the CMS point-of-contact specified in paragraph 5. or the CMS signatory to this Agreement shown in paragraph 19.

3. The parties mutually agree that CMS retains all ownership rights to the data file(s) referred to in this Agreement, and that User does not obtain any right, title, or interest in any of the data furnished by CMS.

4. The parties mutually agree that the following named individual(s) and/or entities is or are designated as Custodian(s) of the file(s) on behalf of User and each person or entity so

designated will be responsible for the observance of all conditions of use and for establishment and maintenance of security arrangements as specified in this Agreement to prevent unauthorized use. User is responsible for any non-observance of the conditions of use, and/or failure to establish or maintain security arrangements, on the part of any Custodian. User agrees to notify CMS within fifteen (15) days of any change of custodianship. The parties mutually agree that CMS may disapprove the appointment of a custodian or may require the appointment of a new custodian at any time.

_Amrish C. Mathur_____
(Name of Custodian – e.g., consultant or attorney or other representative acting on behalf of Provider)

_Quality Reimbursement Services_____
(Company/Organization)

_150 N. Santa Anita Ave., Suite 570A_____
(Street Address)

_Arcadia, CA 91006_____
(City/State/ZIP Code)

_(626) 445-5092  qrshq@pacbell.net_____
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

(Attach separate sheet of paper with above information if listing more than one Custodian)

5.    The parties mutually agree that the following named individual will be designated as point-of-contact for the Agreement on behalf of CMS.

Joann Cerne
(Name of Contact)
Health Insurance Specialist, CMM, Division of Acute Care
_____
(Title/Component)
7500 Security Boulevard
_____
(Street Address)
C4-08-06
_____
(Mail Stop)
Baltimore, Maryland 21244-1850
_____
(City/State/ZIP Code)
410-786-4530
_____
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

6.      User represents, and in furnishing the data file(s) specified in paragraph 7. CMS relies upon such representation, that such data file(s) will be used solely for the purpose of pursuing an administrative and/or judicial appeal of CMS's calculation of User's disproportionate patient percentage. User represents further that User shall not disclose, release, reveal, show, sell, rent, lease, loan, or otherwise grant access to the data covered by this Agreement to any person. **Exception:** User may disclose, release, reveal or show individually identifiable data to the following entities (including individuals employed by or under contract with such entities) and individuals, to the extent necessary to pursue an administrative and/or judicial appeal of CMS's calculation of its disproportionate patient percentage: (1) CMS; (2) a fiscal intermediary under contract with CMS; (3) The PRRB; (4) a consultant or attorney or other representative under contract with User to prosecute, or assist in the prosecution of, an administrative and/or judicial appeal of CMS's calculation of its disproportionate patient percentage; (5) the Department of Justice (6) a Federal court. Any such grant of access by User to individually identifiable data under the foregoing Exception shall be strictly limited to the extent necessary for User to pursue its administrative and/or judicial appeal of CMS's calculation of its disproportionate patient percentage – User is expected to redact individually identifiable data and/or use code indentifiers wherever possible. User further agrees that, within the User organization, access to the data covered by this Agreement shall be limited to the minimum number of individuals necessary to achieve the purpose stated in this section paragraph and to those individuals on a need-to-know basis only.

7.      The following CMS data file(s) is/are covered under this Agreement.

MEDPAR File Extract

| Provider Number(s) | Year(s) (specify FFY or cost reporting period, and update version) | Charge Per Yr.* |
|---|---|---|
| 44-0071 | 12-10-98 | $ 900 |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  | Total | $ 900 |

- For pre-FFY1996, charge is $1,200 per year (FFY or provider cost year), per provider; For FFY 1996 to present, charge is $900 per year (FFY or provider cost year), per provider; Where cost year includes part of both FFY 1995 and FFY 1996, charge is $900.

The above file(s) are being disclosed to User under routine use 2 of the "Medicare Provider Analysis and Review (MEDPAR), HHS/HCFA/OIS, 09-70-0009" Privacy Act system of records, published at 65 Fed. Reg. 50548 (Aug. 18, 2000).

8.    The parties mutually agree that the aforesaid file(s) (and/or any derivative file(s) (which includes any file that maintains or continues identification of individuals)) may be retained by User until the "retention date", which shall be no more than 90 days after the date of termination of User's appeal of CMS's calculation of its disproportionate patient percentage. For purposes of this paragraph, "date of termination of User's appeal" shall be the date upon which any of the following events occur: (1) the User abandons its appeal; (2) an order rendered by the PRRB, the CMS Administrator or court upholding CMS's calculation of User's disproportionate patient percentage has become final and non-appealable; (3) an order rendered by the PRRB, the CMS Administrator or court awarding additional payment to User with respect to the disproportionate patient percentage (including an order approving a settlement) has become final and non-appealable and such payment has been made to User; (4) an administrative resolution satisfactory to User and to the fiscal intermediary is reached on the appeal, and any additional payment provided for by such resolution, with respect to the disproportionate patient percentage, has been made to User.  User agrees to notify CMS in writing within 30 days of after the date of termination of User's appeal that its appeal has terminated, attach a copy of this DUA to its letter, and request instructions regarding return or destruction of the aforesaid files(s) and any derivative file(s) (all files"). Upon receipt of such notice from User, CMS will notify User either to return all data files to CMS at User's expense or to destroy such data. If CMS elects to have User destroy the data, User agrees to certify the destruction of the files in writing within 30 days of receiving CMS's instruction.  A statement certifying this action must be sent to CMS. If CMS elects to have the data returned, User agrees to return all files to CMS within 30 days of receiving notice to that effect.  If CMS does not notify User within 30 days of the date of User's letter notice to CMS, User agrees to return all files to CMS prior to the retention date. User agrees that no data from CMS records, or any parts thereof, shall be retained when the aforementioned file(s) are returned or destroyed unless authorization in writing for the retention of such file(s) has been received from the appropriate Systems Manager or the person designated in paragraph 19. of this Agreement. User acknowledges that strict adherence to the aforementioned retention date is required.

The Agreement may be terminated by either party at any time for any reason upon 30 days written notice. Upon such notice, CMS will cease releasing data to User under this Agreement and will notify User either to return all previously released data files to CMS at User's expense or destroy such data, using the same procedures stated above in this paragraph. Sections 3, 6, 8, 11, 12, 14, 15 and 16 shall survive termination of this Agreement.

9. User agrees to establish appropriate administrative, technical, and physical safeguards to protect the confidentiality of the data and to prevent unauthorized use or access to it. The safeguards shall provide a level and scope of security that is not less than the level and scope of security established by the Office of Management and Budget (OMB) in OMB Circular No. A-130, Appendix III--<u>Security of Federal Automated Information Systems</u> (http://www.whitehouse.gov/omb/circulars/a130/a130.html), which sets forth guidelines for security plans for automated information systems in Federal agencies. User acknowledges that the use of unsecured telecommunications, including the Internet, to transmit individually identifiable or deducible information derived from the file(s) specified in paragraph 7. is prohibited. Further, User agrees that the data must not be physically moved or transmitted in any way from the site(s) indicated in paragraph 4., except as provided in paragraph 6., without written approval from CMS.

10. User agrees that the authorized representatives of CMS or DHHS Office of the Inspector General will be granted access to premises where the aforesaid file(s) are kept for the purpose of inspecting security arrangements confirming whether the User is in compliance with the security requirements specified in paragraph 9.

11. User agrees that, except as provided in paragraph 6., no findings, listing, or information derived from the file(s) specified in paragraph 7., with or without identifiers, may be released if such findings, listing, or information contain any combination of data elements that might allow the deduction of a beneficiary's identification without first obtaining written authorization from the appropriate System Manager or the person designated in paragraph 19. of this Agreement. Examples of such data elements include but are not limited to geographic indicator, age, sex, diagnosis, procedure, admission/discharge date(s), or date of death. User agrees further that CMS shall be the sole judge as to whether any finding, listing, information, or any combination of data extracted or derived from CMS's files identifies or would, with reasonable effort, permit one to identify an individual or to deduce the identity of an individual to a reasonable degree of certainty.

12. User understands and agrees that it may not reuse original or derivative data file(s) without prior written approval from the appropriate System Manager or the person designated in paragraph 19. of this Agreement.

13. The parties mutually agree that the following specified Attachments are part of this Agreement:

                         NO ATTACHMENTS

_____
_____
_____

14. User agrees that in the event CMS determines or has a reasonable belief that User has made or may have made disclosure of the aforesaid file(s) that is not authorized by this Agreement or other written authorization from the appropriate System Manager or the person designated in paragraph 19. of this Agreement, CMS in its sole discretion may require User to: (a) promptly investigate and report to CMS User's determinations regarding any alleged or actual unauthorized disclosure, (b) promptly resolve any problems identified by the investigation; (c) if requested by CMS, submit a formal response to an allegation of unauthorized

disclosure; (d) if requested by CMS, submit a corrective action plan with steps designed to prevent any future unauthorized disclosures; and (e) if requested by CMS, return data files to CMS. User understands that as a result of CMS's determination or reasonable belief that unauthorized disclosures have taken place, CMS may refuse to release further CMS data to User for a period of time to be determined by CMS.

15.  User hereby acknowledges that criminal penalties under § 1106(a) of the Social Security Act (42 U.S.C. § 1306(a)), including a fine not exceeding $5,000 or imprisonment not exceeding 5 years, or both, may apply with to disclosures of information that are covered by § 1106 and that are not authorized by regulation or by Federal law. User further acknowledges that criminal penalties under the Privacy Act (5 U.S.C. § 552a(i) (3)) may apply if it is determined that the Requestor, User or Custodian, or any individual employed or affiliated therewith, knowingly and willfully obtained the file(s) under false pretenses. Any person found guilty under the Privacy Act shall be guilty of a misdemeanor and fined not more than $5,000. Finally, User acknowledges that criminal penalties may be imposed under 18 U.S.C. § 641 if it is determined that the User, or any individual employed or affiliated therewith, has taken or converted to his own use data file(s), or received the file(s) knowing that they were stolen or converted. Persons convicted under § 641 shall be fined under Title 18 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $1,000, they shall be fined under Title 18 or imprisoned not more than one year, or both.

16.  By signing this Agreement, User agrees to abide by all provisions set out in this Agreement for protection of the data file(s) specified in paragraph 7., and acknowledges having received notice of potential criminal or administrative penalties for violation of the terms of the Agreement.

17.  On behalf of User the undersigned individual hereby attests that he or she is authorized to enter into this Agreement and agrees to all the terms specified herein.

_Mr. Paul Trower, System Director of Reimbursement_____
(Name and Title of Individual - Typed or Printed – Representative for Provider)

_BMHCC St. Joseph Hospital & Health Center_____
(Provider Name)

_350 N. Humphreys _____
(Street Address)

_Memphis, TN  38120-2177_____
(City/State/ZIP Code)

_(901) 227-4792  paul.trower@BMHCC.org_____
(Phone No. - Including Area Code and E-Mail Address, If Applicable)

_____   01/15/04 _____
(Signature)                                                  (Date)

18.  Each Custodian, as named in paragraph 4, hereby acknowledges his/her appointment as

Custodian of the aforesaid file(s) on behalf of User, and agrees and in his or her capacity as an employee or contractor (including consultant, attorney or other representative) of the User to comply with all of the provisions of this Agreement on behalf of User.

__Amrish C. Mathur_____

(Typed or Printed Name and Title of Custodian of File(s))

_Amrish Mathur_ (Signature)   _01/15/04_ (Date)

19. On behalf of CMS the undersigned individual hereby attests that he or she is authorized to enter into this Agreement and agrees to all the terms specified herein.

Joann Cerne, CMS/CMM - Health Insurance Specialist

(Typed or Printed Name and Title of CMS Representative)

_____   _____
(Signature)                      (Date)

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0734. The time required to complete this information collection is estimated to average 30 minutes per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, N2-14-26, Baltimore, Maryland 21244-1850 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.