# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BAPTIST MEMORIAL HOSPITAL - | ) | |
| GOLDEN TRIANGLE, BAPTIST | ) | |
| MEMORIAL HOSPITAL-ST. JOSEPH | ) | |
| HOSPITAL, AND BAPTIST | ) | |
| MEMORIAL HOSPITAL-DESOTO | ) | |
| HOSPITAL | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV01413 (CKK) |
| | ) | |
| MICHAEL O. LEAVITT, | ) | |
| Secretary of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(b), Defendant Michael O. Leavitt,

Secretary of Health and Human Services, by and through his undersigned counsel, respectfully

moves this court for summary judgment on the grounds that there are no material facts in dispute

and that Defendant is entitled to judgment as a matter of law.  In support of the instant motion,

the Court is respectfully referred to the accompanying Statement of Material Facts Not in

Genuine Issue, and Memorandum of Points and Authorities in Support of Defendants' Motion

for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_____/s/_____
MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7220/FAX:(202) 514-8780


BRIDGETTE L. KAISER
(D.C. Bar No. 492406)
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare and Medicaid Services Division
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 205-5872/FAX: (202) 260-0490


OF COUNSEL:

DANIEL MERON
General Counsel

JANICE L. HOFFMAN
Acting Associate General Counsel

MARK D. POLSTON
Deputy Associate General
  Counsel for Litigation

United States Department of
Health and Human Services

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL - | ) |
| GOLDEN TRIANGLE, BAPTIST | ) |
| MEMORIAL HOSPITAL-ST. JOSEPH | ) |
| HOSPITAL, AND BAPTIST | ) |
| MEMORIAL HOSPITAL-DESOTO | ) |
| HOSPITAL | ) |
| | ) |
|         Plaintiffs, | ) |
| | ) |
|       v. | )       Case No. 1:06CV01413 (CKK) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| Secretary of Health and Human Services, | ) |
| | ) |
|         Defendant. | ) |
| _____ | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs Baptist Memorial Hospital-St. Joseph Hospital ("BMH-St. Joseph"), Baptist

Memorial Hospital-Golden Triangle ("BMH-Golden Triangle") and Baptist Memorial Hospital-

DeSoto ("BMH-Desoto") (collectively "the Hospitals" or "the Providers"), are hospitals that

participate in the Medicare program.   In 2002 the Providers formed two group appeals before the

Provider Reimbursement Review Board ("PRRB" or "the Board"), an administrative tribunal

within HHS that hears Medicare reimbursement disputes.  Both group appeals were dismissed in

2003 for failure to meet Board deadlines.  Then, in 2004, the Providers formed new group

appeals addressing the same issues for the same fiscal year.  The Board properly found it had no

jurisdiction over these issues due to the dismissal of the 2002 group appeals.  The Hospitals now

challenge the Board's actions in refusing to permit them to pursue one of these 2004 group

appeals.  Plaintiff BMH-St. Joseph further challenges the Board's actions denying (1) its request to transfer the issues from both 2004 group appeals back into its pending individual appeal and (2) its request to add these same issues (rather than transfer them) into that same individual appeal.

Resolution of this matter does not turn on any substantive nuances of Medicare reimbursement but on the straightforward question of the Board's authority to manage its heavy docket by refusing to hear previously dismissed appeals.  The PRRB followed valid procedural rules and acted firmly within its authority in denying the disputed requests.  As a result, the Court should affirm the Secretary's decisions, grant the Secretary's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

## STATUTORY AND REGULATORY BACKGROUND

### I.    Medicare and the DSH Adjustment

This case arises under Part A of the Medicare program, which provides payments for inpatient hospital services and related care.  42 U.S.C. §§ 1395C et seq.  Since 1983, the operating costs of inpatient hospital services have been paid primarily through the Prospective Payment System ("PPS"), 42 U.S.C. § 1395ww(d).  Generally speaking, a hospital's PPS payment is based on prospectively determined national rates for each discharge, rather than on the actual operating costs incurred by the hospital.   42 U.S.C. §§ 1395ww(d)(1)-(4).  The PPS also contains a number of provisions that adjust payments on the basis of hospital-specific factors.  See, e.g. id. § 1395ww(d)(5).  This case involves one of those hospital-specific adjustments, the Medicare disproportionate share hospital adjustment ("DSH adjustment"),

which is intended to provide increased PPS payments to hospitals that serve a "significantly disproportionate number of low-income patients."  42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives if it does qualify, depend primarily on the hospital's "disproportionate patient percentage."  See 42 U.S.C. § 1395ww(d)(5)(F)(v). In turn, the disproportionate patient percentage is the sum of two fractions, the "Medicare and Medicaid fractions." The Medicare fraction, which is also referred to as the "SSI fraction," captures the percentage of Medicare patients who were also eligible for Supplemental Security Income ("SSI") benefits at the time of their hospital stays. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  The Medicaid fraction uses Medicaid eligibility as a proxy for low income.  It is defined as

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid program], but who were not entitled to benefits under Part A of this subchapter [i.e. the Medicare program], and the denominator of which is the total number of the hospital's patient days for such periods.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The Centers for Medicare and Medicaid Services ("CMS"), a component within HHS, is responsible for determining the reimbursement amount due a service provider.  42 U.S.C.§ 1395g.  CMS, in turn, contracts with private insurance companies to act as "fiscal intermediaries" and assist in the day-to-day operations of the Medicare program.  See 42 U.S.C.§ 1395h.  To receive payment from Medicare for services rendered, a provider is required to file a Medicare cost report with its fiscal intermediary at the end of a cost reporting year.  42 C.F.R. § 413.20.  The intermediary is responsible for reviewing the cost reports and issuing a Notice of

Program Reimbursement which sets forth the amount of allowable Medicare payments. 42 C.F.R. § 405.1803.

## II.    The Administrative Appeals Process

The Medicare statute establishes the review mechanisms available to providers of services under Medicare Part A. See 42 U.S.C. § 1395oo. A provider dissatisfied with a Medicare reimbursement decision of its fiscal intermediary may appeal to the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a)(3). If jurisdictional prerequisites are satisfied and the PRRB has the authority to decide the matter at issue, it may hold a hearing and issue a decision.

A decision of the PRRB is final, unless the Secretary, on his own motion, reverses, affirms or modifies the Board's decision. See 42 U.S.C. § 1395oo(f). The Secretary has delegated his authority to review PRRB decisions to the Administrator of CMS. 42 U.S.C.§ 1395oo(f)(1); 42 C.F.R. § 405.1875(a)(1). A provider dissatisfied with a decision of the PRRB or the Secretary (if the Secretary reviews a Board decision) may seek judicial review of that decision by filing a civil action within 60 days of the date that notice of the final decision is received. 42 U.S.C. §1395oo(f)(1); 42 C.F.R. § 405.1877(b).

## III.   The PRRB's Procedures

The PRRB comprises five members (two of whom are provider representatives) who are knowledgeable about Medicare provider reimbursement and who serve staggered three-year terms. 42 U.S.C. § 1395oo(h). Each of the "tens of thousands of sophisticated Medicare-provider[s]," Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 456 (1999), may bring a separate appeal to the PRRB each year. The focus of these appeals – the cost report

submitted by the provider for that year "is a lengthy document consisting of numerous schedules, worksheets, and supplemental worksheets" which, "when completed, is approximately three-quarters of an inch thick." Athens Cmty. Hosp. v. Schweiker, 743 F.2d 1,3 (D.C. Cir. 1984).

PRRB practices are described in part in agency regulations located at 42 C.F.R. Part 405, Subpart R. The PRRB is vested by the Medicare statute with "full power and authority to make rules and establish procedures, not inconsistent with" the statute or regulations, "which are necessary or appropriate to carry out" its duties. 42 U.S.C. § 1395oo(e). Pursuant to that authority, the PRRB has established procedural rules for effectively managing its heavy case load. The PRRB Instructions are posted on the internet and provided in hard copy on request to parties to PRRB proceedings.[1]

> The PRRB Instructions stress the importance of provider compliance with Board rules.
>
> Your appeal must also meet specific jurisdictional requirements and you must follow Board procedures. The Board wants to stress that it follows the practice of other appeal avenues by not reminding the parties of their responsibilities to manage their own appeals. The parties themselves, once informed of Board procedures and due dates, are responsible for complying with all Board requirements.

PRRB Instructions (March 1, 2002) Part I.B.I.a., Ex. 1. at 2. The Instructions also provide that "[d]ue dates can only be changed or eliminated by written confirmation of the Board. Because you are the moving party, if you do not meet a due date, the Board will dismiss your appeal." Id. Part I.C.XIV, Ex. 1, Part I at 16 (emphasis added).

A provider may either file an individual appeal or join with other providers to file a group appeal. See id. Part I.B.I., Ex. 1, Part I at 4-5. In an individual appeal, the provider appeals one

---

[1]The PRRB Instructions are attached as Exhibit 1.

or more issues from the same fiscal year. Id. Part I.B.I.c., Ex. 1, Part I at 4. A group appeal also

concerns a single fiscal year, but consists of one issue only, which involves a question of fact or

an interpretation of law, regulation, or CMS ruling common to all the providers in the appeal.

PRRB Instructions Part I.B.I.d, Ex. 1, Part 1 at 5. Providers "must file a separate request for a

group hearing for each fiscal year end and each issue." Id. Such requests "must be clearly

structured so that [they are] easily reviewable." and "must explain the specific common issue in

sufficient detail to understand the complete substance of the issue." Id. In certain circumstances,

participation in a group appeal is mandatory; when providers are under common ownership or

control they must bring as a group appeal any "issue common to the providers ... for which the

aggregate amount in controversy is $50,000 or more." Id.; 42 C.F.R. § 405.1841(a)(2).

　　　In some cases, a provider that has an issue pending in an existing individual appeal will

transfer the issue to a group appeal. See PRRB Instructions Part I.C.VI, Ex. I, Part I at 10. In

addition, although the Instructions do not specifically address withdrawal from pending group

appeals, in practice the Board has permitted providers to withdraw from group appeals and

transfer withdrawn issues to their individual appeals. See e.g. A.R. 86 (July 31, 2006 letter from

the Board to BMH-St. Joseph) (granting provider's request to transfer issue from group appeal

back into its individual appeal).

　　　To facilitate Board deliberations and to promote the effective management of its caseload,

the PRRB Instructions require that providers and fiscal intermediaries submit both preliminary

and final position papers. See PRRB Instructions, Part II.B., Ex. 1, Part II at 5. The provider

must submit a preliminary position paper to the intermediary, but not the Board. See PRRB

Instructions, Part II., B., I. The provider also must submit a letter to the Board certifying that it

- 6 -

has met its preliminary position paper due date and provide the Board with a copy of the first

page of that paper. See id. If the provider "fail[s] to meet the preliminary position paper due

date and fail[s] to supply the Board with the required documentation, the Board will dismiss [the

provider's] appeal for failure to follow Board procedure." Id.

Although the Board will dismiss the appeal if the provider fails to file timely a

preliminary position paper, the Instructions provide a procedure for reinstatement of dismissed

appeals. See PRRB Instructions, Part I.C.XIII.b, Ex. 1, Part I at 15. Under this procedure, the

Board will consider requests for reinstatement that "explain in detail the reasons" why the

provider "missed a position paper due date." Id.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**I.    Proceedings Before the PRRB**

**A.    Individual Appeals**

Each of the Providers initiated an individual appeal of its Notice of Program

Reimbursement for its fiscal year ending in 1998. Pls' Statement of Material Facts ("Pls' Stmt")

(Docket No. 21), Ex. 11 (BMH-St. Joseph's request); A.R. 404-07 (BMH-Golden Triangle);

A.R. 181-84 (BMH-Desoto). The Board acknowledged each of these individual appeals and

assigned them case numbers 01-3359, 02-0958 and 02-0304, respectively. A.R. 494, 402, 169.

As described in detail below, each participated in two group appeals in 2002, one addressing

what Plaintiffs and the Board referred to as the "eligible days" issue, the other concerning what

they called the "SSI Percentage" issue. In 2003 both group appeals were dismissed. See Infra

p.9, 15. In 2004, the providers formed new group appeals on these same issues. See Infra 9, 15.

- 7 -

For the sake of clarity Defendant will discuss the eligible days and SSI percentage appeals separately.

### B.     Eligible Days Issue (Group Appeals 02-1735G and 04-0554G)

On April 11, 2002, BMH-St. Joseph requested that the Board establish a group appeal titled "BMHCC 1998 Medicaid-Eligible Days Group Appeal".  A.R. 496.  According to the request, the common issue presented in the group appeal was that the intermediary "did not determine the [DSH reimbursement] in accordance with ... 42 USC 1395ww(d)(5)(C)(i)."  A.R. 496.  Specifically, BMH-St. Joseph contended, the intermediary "erred in its calculation of the second computation of the disproportionate patient percentage, set forth at 42 CFR 412.106(b)(4)" by "fail[ing] to include as Medicaid eligible days services to patients eligible for Medicaid as well as patients eligible for general assistance." Id.[2] On April 17, 2002 BMH-Desoto requested that the same issue[3] be transferred from its individual case, 02-0304, to "BMHCC 1998 Medicaid -Eligible Days Group Appeal."  A.R. 203-04.

In a letter to the group representative dated May 21, 2002, the Board acknowledged the eligible days group appeal and assigned it case number 02-1735G.  A.R. 373-74.  The letter set forth various due dates and requirements.  Id.  In relevant part, the letter stated that, by July 1, 2003, the group representative must file: (1) a preliminary position paper with the lead

---

[2]  "General assistance" days are days on which patients are covered by state general assistance programs for low-income individuals even if such programs were not part of approved Medicaid plans.  See St. Joseph's Hospital v. Leavitt, 425 F. Supp.2d 94, 96 (D.D.C. 2006).

[3]  BMH-Desoto's description of the issue was the same as BMH-St. Joseph's.  Compare A.R. 203 with A.R. 496.

intermediary and (2) a letter to the Board certifying that the due date had been met along with a copy of the first page of the paper.  Id.

On March 5, 2003, BMH-Golden Triangle requested that the Board transfer the "DSH Medicaid Eligible Days issue" from its individual case, 02-0958, to group appeal 02-1735G. A.R. 408-09.  The transfer request referred to its original request for an individual hearing, A.R. 404-07, which presented the issue for the group appeal in the same terms as had BMH-St. Joseph and BMH-Desoto, namely that the intermediary had purportedly "failed to include as Medicaid-eligible days services to patients eligible for Medicaid, as well as patients for general assistance." A.R. 405

On July 30, 2003 the Board dismissed group appeal 02-1735G  because the group representative had neither filed a preliminary position paper with the fiscal intermediary nor submitted the required information to the Board.  A.R. 378.  No member of group appeal 02-1735G sought to reinstate that appeal before the PRRB.  None of them sought judicial review of the Board's decision in federal district court.

On January 23, 2004, BMH-St. Joseph and BMH-Golden Triangle requested that the Board add an issue to their respective individual appeals and that the issue then be transferred to a new group appeal titled "BMHCC 1998 Medicare DSH Medicaid Proxy Group Appeal."  A.R. 379-80.  The request presented the same issue as the now-dismissed group appeal 02-1735G, namely that the intermediary "failed to include as Medicaid-Eligible days services to patients for Medicaid, as well as patients eligible for general assistance."  A.R. 379 .  On February 23, 2004, the Board acknowledged the group appeal and assigned it a case number of 04-0554G.  A.R. at 381-82. On January 12, 2005, BMH-St. Joseph and BMH-Golden Triangle again requested that

the Board add the eligible days issue to their pending individual cases and transfer it to group

appeal 04-0554G and BMH-Desoto made the same request for the first time. A.R. 467-68. On

January 19, 2005, BMH-Golden Triangle made another request to add the "[DSH] Medicaid

Eligible Days" issue to its individual case, and transfer it to group appeal 04-0554G. A.R. 410

On April 6, 2005, intermediary Riverbend GBA challenged the Board's jurisdiction over

the Hospitals in 04-0554G, arguing that the providers who had been affected by the dismissal of

02-1735G "should not be granted a new opportunity to appeal the same issue" in 04-0554G.

A.R. 193. By letter dated May 5, 2005, the Providers responded to the jurisdictional challenge by

stating that "[t]hese providers were included in the original requests for group appeal dated

February 23, 2004, when the individual appeals on the original NPR were opened." A.R. 194-95.

Also, with respect to BMH-Desoto specifically, the providers stated that its request to transfer the

eligible days issue from its individual case to then-pending group appeal 02-1735G had not

specified the case number. A.R. 195. The letter concluded by stating that "[t]he appeals of the

DSH SSI proxy are therefore properly included in the above referenced appeal [04-0554G]",

A.R. 195, although the SSI proxy was the subject of group appeal 04-0553G (described below),

not 04-0554G.

The Board subsequently requested a more detailed jurisdictional challenge from the

intermediary, which it provided on January 12, 2006. A.R. 14. On February 13, 2006, the

providers responded that BMH-St. Joseph's and BMH-Golden Triangle's appeals were properly

before the Board because their individual appeals were "active when the issue was added and

transferred to" 04-0554G. A.R. 171. They also reiterated that "[t]he transfer of the appeal of

BMH Desoto to the group appeal did not specify the group appeal number at the time of the

transfer.  Consequently, this issue if [sic] properly before the Board" in 04-0554G.  A.R. 172.

In a March 14, 2006 decision, the PRRB concluded that it did not have jurisdiction over

Plaintiffs for the Medicaid eligible days issue for the fiscal year ending in 1998.  A.R. 13-15.

The Board reasoned that the Providers had elected to become a part of group 02-1735G but then

failed to follow Board instructions, resulting in dismissal.  "The dismissal disposed of the

eligible days issue.  The providers cannot now rely on adding the same issue again to their

individual appeals to get a second opportunity to join a group."  A.R. 15.[4]

On April 17, 2006 BMH-Golden Triangle and BMH-St. Joseph (but not BMH-Desoto)

sought reconsideration of the March 14, 2006 Board decision, arguing for the first time that the

issue in 04-0554G was "significantly different" than the issue in 02-1735G. A.R. 28.  BMH-

Golden Triangle and BMH-St. Joseph stated that it was "evident from the Provider's and

Intermediary's position paper" that 04-0554G included several additional issues not presented in

group appeal 02-1735G. A.R. 28.  In a June 14, 2006 decision, the Board declined to reconsider

its March 14, 2006 decision, reiterating that these providers "cannot now rely on adding the same

issue again to their individual appeal to get a second opportunity to join a group."  A.R. 33.

On July 18, 2006 BMH-St. Joseph requested that the Board transfer the eligible days

issue from group appeal 04-0554G back to its individual appeal, 01-3359.  A.R. 36.  The request

did not mention that the Board had already dismissed BMH-St. Joseph from 04-0554G.  On July

31, 2006 the Board "inadvertently granted" the request because, as it would later explain, "the

---

[4]The group appeal was not dismissed in its entirety as providers other than Plaintiffs had
un-defaulted claims. A.R. 15.

previous letters and documentation pertaining to the Board's denial of jurisdiction ... was filed in the group appeal files and was overlooked." A.R. 6. The intermediary challenged the Board's jurisdiction over the eligible days issue for BMH-St. Joseph, arguing that "the Provider's attempt to add th[is] issue to its individual appeal disregard[ed] the Board's jurisdictional ruling." A.R. 52.

In a September 5, 2006 decision, the Board again concluded that it did not have jurisdiction over the eligible days issue raised in 02-1735G and 04-0554G for BMH-St. Joseph and dismissed that issue from its individual case. A.R. 51-53. The PRRB directed BMH-St. Joseph to "stop wasting the Board's time with its multiple requests to add or transfer th[is] issue to any appeal for this fiscal year end" and stated that this was its "'**final decision** regarding [this] issue for this fiscal year end. No further requests will be considered." A.R. 53 (emphasis in original). The Board reminded BMH-St. Joseph that if it was dissatisfied, "its recourse is appeal." Id.

By letter dated September 11, 2006, BMH-St. Joseph requested that the Board withdraw its September 5, 2006 decision. A.R. 2-3. The provider representatives for BMH-St. Joseph's individual appeal stated that, until they received the intermediary's jurisdictional challenge, they had no knowledge of the Board's March 14th, 2006 ruling (denying jurisdiction over Plaintiffs in 04-0554G) or its June 14, 2006 ruling (declining to reconsider the March 14th, 2006 decision). The letter stated that, had they known about these decisions, they "would not have requested that the ... DSH Medicaid eligible days [issue] be transferred from the group appeal[] and added to the ... individual appeal." A.R. 2-3.

- 12 -

BMH-St. Joseph's representatives explained that, when they learned of the Board's earlier decisions they "immediately investigated the matter" and then withdrew the eligible days issues from its individual case.  Id.  The September 11, 2006 letter attached as an exhibit another letter, dated August 14, 2006, to the Board from BMH-St. Joseph which requested the withdrawal of the eligible days issue from its individual case.  A.R. 43-44.  On September 20, 2006, the Board declined to withdraw its September 5, 2006 jurisdiction decision.  A.R. 1.

Group appeal 04-0554G proceeded without Plaintiffs.  On March 7, 2007 the Board issued a decision holding, inter alia, that 04-0554G did not include the issue of "§1115 waiver days."[5] Pls' Stmt, Ex. 24 at 2-3.

On May 03, 2007, BMH-St. Joseph requested that the Board add three issues into its individual appeal: section 1115 waiver days, "Medicaid Proxy Percentage: eligible paid and unpaid days", and "SSI Proxy."  Pls' Suppl. Mem. (Docket No. 27), Ex. 1 at 2.  The letter distinguished the Board's September 5, 2006 decision on the basis that the decision addressed whether the provider could *transfer* issues whereas the provider now wished instead  to *add* issues.  Id. at 5.  BMH-St. Joseph argued that eligible days issue could not properly be presented in a group appeal.  Id. at 4.  On May 16, 2007, the Board noted that the BMH-St. Joseph had been directed to "cease requesting to add these issues to the appeal" and stated that its decision

---

[5]  Section 1115 Waiver days are days on which patients are enrolled in certain research and demonstration programs. These programs are approved by the Secretary pursuant to § 1115 of the Social Security Act.  42 U.S.C. § 1315.

- 13 -

concerning the eligible days issue remained unchanged from September 5, 2006.  Pls' Suppl.

Mem., Ex. 2 at 1.[6]

### C.    SSI  Percentage Issue (Group Appeals 02-1736G and 04-0553G)

On April 11, 2002, BMH-St. Joseph added to its individual appeal an issue that came to

be called the supplemental security income percentage ("SSI %") or "SSI Proxy" issue.

Plaintiffs' Statement, Ex. 14.[7]  Along with another provider, BMH-St. Joseph requested a group

appeal to resolve the SSI percentage issue and transferred it from its pending individual appeal to

the new group appeal.  The group appeal was assigned case number 02-1736G.  A.R. 51.  BMH-

Desoto and BMH-Golden Triangle each added the SSI % issue to its individual appeal and

transferred it to group appeal 02-1736G.  A.R. 17.

---

[6]  In its May 16, 2007 letter, the Board also denied BMH-St. Joseph's request to add § 1115 waiver days to its appeal on the ground that the Board had already issued a final determination for the Baptist Memorial Hospital system on that issue.  "Since all of the providers in the group were commonly owned the formation of a group appeal was mandatory."  Pls' Suppl. Mem., Ex. 2 at 2.  Since a final determination had been made for the Baptist corporate entity for 1998, BMH-St. Joseph could not pursue this issue in its individual case.  Id.

[7]  The request stated that the common issue before the Board would be that:

the provider disagrees with the calculation of the disproportionate patient percentage set forth at 42 CFR 412.106(b)(2)(i) . . . . [and] contends that the intermediary did not furnish the matching data from which the SSI proxy had been derived, and that this validation information has been withheld on the basis of a statement in the commentary to the 1995 final rule for Inpatient Prospective Payment System (PPS) . . . .The statement indicates that the SSI eligibility data used for this DSH calculation is not available to verify provider's disproportionate patient percentage because it is protected by the Privacy Act. The Intermediary cannot support its reliance on a statement that occurs in the preamble of a published rule but is not supported by the regulatory text or by the authorizing statute.

(Pls' Stmt, Ex. 14 at 1.)

On July 30, 2003 the Board dismissed 02-1736G for failure to comply with the Board's deadlines for submitting a preliminary position paper with the fiscal intermediary and required paperwork with the Board. Pls' Stmt, Ex. 3. None of the providers requested reinstatement of 02-1736G before the Board. Id. None of them appealed the Board's decision in federal district court.

On January 23, 2004, BMH-St. Joseph and BMH- Golden Triangle requested the Board form another group appeal to resolve the SSI percentage issue for 1998. A.R. 17. The group appeal was assigned case number 04-0553G. A.R. 51. On January 12, 2005, each of the three providers added the SSI percentage issue to its individual appeal and transferred it to the group appeal.[8] A.R. 17-18.

On April 6, 2005, intermediary Riverbend GBA challenged the Board's jurisdiction over the Hospitals as part of 04-0553G. A.R. 65. The Intermediary argued that, because they were originally included in group appeal 02-1736G which had been dismissed by the Board for failure to submit a preliminary position paper, they should not be granted another opportunity to appeal the SSI% issue in group appeal 04-0553G. Id. On May 5, 2005 the Providers responded to the jurisdictional challenge, arguing that they were properly included in 04-0553G because their individual appeals were open when they joined 04-0553G. Id.

In a May 5, 2006 decision, the Board dismissed the members of group appeal 02-1736G, including Plaintiffs, from group appeal 04-0553G. A.R. 19-20. The Board stated that:

> A group appeal is limited to a single issue. Each of these providers chose to become part of a group to resolve the SSI % issue but then failed to follow the Board's Instructions, which resulted in the dismissal of the group appeal. The dismissal disposed of the SSI%

---

[8] BMH-St. Joseph and BMH- Golden Triangle requested the transfer more than once.

issue.  The providers cannot now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group.  The issue has been determined by a valid judgment.  The providers did not pursue the decision with the Board and they did not appeal it to the next level of review.

A.R. 20.

On July 18, 2006 BMH-St. Joseph requested that the SSI % issue be transferred from group appeal 04-0553G back to its individual appeal, 01-3359.  A.R. 38.  The request did not mention that BMH-St. Joseph had been dismissed from that appeal.  The intermediary challenged the Board's jurisdiction over the SSI% and eligible days issues for BMH-St. Joseph "because the Board has already determined that it does not have jurisdiction over these issues."  A.R. 57-58. The intermediary urged the Board not to allow BMH-St. Joseph to "bootstrap these issues to their individual appeal." A.R. 58.  However, on July 31, 2006 the Board inadvertently granted the Provider's request because, as it would later explain, "the previous letter and documentation pertaining to the Board's denial jurisdiction" over this issue "was filed in the group file[] and was overlooked." A.R. 6.  On September 5, 2006,  the Board again concluded that it did not have jurisdiction over the SSI percentage issue for BMH-St. Joseph for fiscal year ending December 10, 1998.  A.R. 6.[9]

On September 11, 2006, BMH-St. Joseph requested that the Board withdraw its September 5, 2006 decision.  A.R. 2-3.  The provider representatives for BMH-St. Joseph's individual appeal stated that, until the intermediary's challenge, they had no knowledge of the Board's May 2006 ruling denying jurisdiction over BMH-St. Joseph in 04-0553G.  A.R. 2. BMH-St. Joseph's representatives explained that, when they learned of the Board's earlier

---

[9]  This finding was set forth in the same decision that addressed BMH-St. Joseph's request to transfer the eligible days issue from 04-0554G back to its individual appeal.

decisions they "immediately investigated the matter" and then withdrew the SSI percentage issue

from its individual case.  Id.  The request attached as an exhibit a letter dated August 14, 2006 to

the Board from BMH-St. Joseph's representative which requested the withdrawal of the SSI

Proxy issue.  A.R. 41-42. On September 20, 2006, the Board declined to withdraw its September

5, 2006 jurisdiction decision.  A.R. 1.

On May 3, 2007, BMH-St. Joseph again sought to add the SSI % issue into its individual

appeal, this time on the ground that it was not an issue that could properly be pursued in a group

appeal.  Pls' Suppl. Mem., Ex. 1 at 4.  The Board refused to add the issue, stating that its

September 5, 2006 decision remained unchanged.  Pls' Suppl. Mem., Ex. 2 at 1.

## II.    Plaintiff's Claims in this Court

The Amended Complaint alleges jurisdiction under the Medicare and federal question

statutes.  42 U.S.C. § 1395oo(f); 28 U.S.C. §§ 1331; Am. Compl. (Docket No. 5) ¶ 3. Plaintiffs

allege that they had an unfettered right to add issues to their pending individual appeals, even

issues arising in group appeals from which they had been dismissed for failure to follow Board

rules.  Pls' Mem. of Points and Auth. in Supp. of Pls' Motion for S.J. ("Pls' Mem. in Supp. of

S.J.") (Docket No. 21) at 4.  They claim that PRRB's denial of jurisdiction over previously

dismissed claims is arbitrary and capricious, unsupported by substantial evidence and an abuse of

discretion. Id. at 5.

Plaintiffs seek to reverse: (1) the Board's June 14, 2006 decision declining to reconsider

its March 14, 2006 decision denying jurisdiction over BMH-St. Joseph and BMH-Golden

Triangle in group appeal 04-0554G, Pls' Motion for S.J. at 1; (2) the Board's September 5, 2006

decision refusing to permit St. Joseph to transfer the issues dismissed in 04-0554G and in 04-

0553G back into its individual appeal.  Id.; (3) the Board's May 16, 2007 refusal to add (rather

than transfer) these issues into BMH-St. Joseph's individual case.  Pls' Suppl. Mem. at 7.  In the

alternative, Plaintiffs seek a writ of mandamus ordering the Secretary to remand the Providers'

cost reports back to the fiscal intermediary. Pls' Mem. in Supp. of S.J. at 36.   They also seek

costs and attorneys' fees.  Pls' Motion for S.J. at 2.

### ARGUMENT

I.    **The standard of review under the Administrative Procedure Act is
highly deferential**

By statute, judicial review of Medicare reimbursement disputes is governed by the

standards in the Administrative Procedure Act ("APA").  See 42 U.S.C. § 1395oo(f)(1).  In

general, the APA permits agency action to be set aside if it was "in excess of statutory

jurisdiction, authority or limitations, or short of statutory right," "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law," or "unsupported by substantial

evidence."  See 5 U.S.C. § 706(2)(A), (C), (E).

Under the standards of deference in Chevron USA, Inc. v. Natural Resources Defense

Council, Inc., 467 U.S. 837, 842-45 (1984), the Secretary's interpretation of the Medicare statute

must be upheld so long as it represents a "permissible" construction, Shalala v. Illinois Council

on Long Term Care, 529 U.S. 1, 21 (2000), "within the bounds of reasonable interpretation,"

Your Home, 525 U.S. at 450.  It is "settled law that the rule of deference applies even to an

agency's interpretation of its own statutory authority or jurisdiction."  Mississippi Power & Light

Co. v. Mississippi, 487 U.S. 354, 381 (1988) (Scalia, J., concurring).  Moreover, the Secretary's

interpretation of his own regulations is entitled to "substantial deference," and "must be given

'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas

Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (internal citation omitted).

Generally, agency action may be invalidated as arbitrary or capricious under the APA

only if it is "not rational and based on consideration of the relevant factors."  FCC v. Nat'l

Citizens Comm. for Broad., 436 U.S. 775, 803 (1978); see also Motor Vehicle Mfrs. Ass'n v.

State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Similarly, agency action may not be

invalidated as "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), if it is supported by

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 619-20 (1966) (internal quotation omitted).

Furthermore, in determining whether agency action was arbitrary or capricious or unsupported by

substantial evidence, the court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 416 (1971); see also Universal Camera

Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Summary judgment is appropriate if the record, viewed in the light most favorable to the

nonmoving party, reveals that there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Tao v. Freeh, 27 F.3d 635, 638

(D.C. Cir. 1994).

The Secretary submits that, in this case, there is not a genuine issue of material fact: as a

matter of law, the Board's actions were not arbitrary or capricious or an abuse of discretion, and

certainly did not rise to a clear abuse of discretion as required to sustain Plaintiffs' appeal.  To

the contrary, the Board acted reasonably and in full compliance with all statutory and  regulatory

requirements under any standard of review.

## II.     Plaintiffs Have Waived Some of Their Claims

As a threshold matter, and because of the complicated factual background of this case, it is necessary to clarify certain issues that are _not_ properly before this Court.  First, the SSI percentage issue is not properly before the Court as to any of the Providers because none of them has appealed the Board's May 5, 2006 denial of jurisdiction over them as to that issue.  Second, BMH-Desoto has no claim before this Court because the decisions challenged by the Plaintiffs relate to requests made by BMH-St. Joseph and BMH-Golden Triangle, but not BMH-Desoto.

### A.     None of the Plaintiffs Timely Appealed the Board's May 5, 2006 Decision Denying Jurisdiction Over Them as to the SSI Issue in Group Appeal 04-0553G

On May 5, 2006 the Board issued a decision holding that it did not have jurisdiction over Plaintiffs in group appeal 04-0553G, which presented the SSI percentage issue for 1998.  A.R. 17-20.  The Board found that the SSI percentage issue in 04-553G had been raised previously in 02-1736G by the same providers and that the issue had already been resolved for those Providers in that earlier group appeal.  A.R. 20.  The Board pointed out that group appeal 02-1736G had been dismissed for failure to follow its Instructions and that "[t]he dismissal disposed of the SSI% issue."  Id.  "The providers did not pursue the [02-1736]decision with the Board and they did not appeal it to the next level of review."  Id.

The Providers do not seek the reversal of the May 5, 2006 decision as to 04–0553G.  See Pls' Motion for S.J. at 1 (requesting that the Court dismiss Board decisions dated June 14, 2006 and September 5, 2006).  Such an appeal would be untimely in any event because more than 60 days have elapsed since the Board's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. § 405.1877(b).  Therefore, the Board's May 5, 2006  holding that it had no jurisdiction over the

SSI percentage issue as to any of these Providers for 1998 is not properly before this Court for any of the Plaintiffs, including BMH-St. Joseph which seeks the right to add this issue back into its individual appeal.

> **B.**    **BMH-Desoto Never Challenged the Board's Decision Denying Jurisdiction Over it Concerning the Eligible Days Issue**

BMH-Desoto never challenged the March 14, 2006 decision denying jurisdiction over all three Providers as to the eligible days issue in group appeal 04-0554G. BMH-St. Joseph and BMH-Golden Triangle, but not BMH-Desoto, sought reconsideration of the March 14, 2006 decision and now seek review of the June 14, 2006 denial of reconsideration. Therefore, BMH-Desoto has no proper claim before this Court concerning the Board's refusal to hear its eligible days issue for 1998.[10]

**III.    The Board Reasonably Concluded that When Issues Have been Dismissed, Providers May Not Add Those Same Issues Back Into Their Appeals.**

Turning to issues that actually are before the Court, it is undisputed that the Hospitals failed to file timely position papers in group appeals 02-1735G and 02-1736G and that they never appealed the dismissal of those appeals. Pls' Mem. in Supp. of S.J. at 18 n.3. They also do not, and cannot, challenge the Board's authority to dismiss cases when Providers fail to meet its deadlines. The Providers argue instead that they were entitled to add previously-dismissed

---

[10]    The Secretary also believes that the May 16, 2007 Board decision is not properly before this Court as it occurred after the October 10, 2006 filing of the Amended Complaint, which has not been re-amended to include it. See City of New Orleans v. SEC, 137 F.3d 638, 639 (D.C. Cir. 1998)(subsequent "agency action does not cure the jurisdictional defect" of premature filing of complaint). Nonetheless, the Secretary responds to the arguments made concerning this ruling by the Plaintiffs as those arguments constitute a significant portion of Plaintiffs' Supplemental Memorandum.

claims back into their pending individual appeals.  As explained below, Plaintiffs' position is

without basis in the Medicare statute, the relevant regulations or the Board's Instructions.

    **A.**      **The PRRB's Authority to Control its Docket by Dismissing Claims for Failure to Meet its Deadlines is Well Established and Undisputed**

By statute, the Board has authority to order its own affairs.  42 U.S.C. 1395oo(e) ("The

Board shall have full power and authority to make rules and establish procedures, not

inconsistent with the provisions of this title or regulations of the Secretary, which are necessary

or appropriate to carry out the provisions of this section.")  Courts, including this Court,  have

unanimously upheld the Board's right to promulgate and apply procedural rules that permit

appeals to be dismissed for failure to meet its deadlines.  See e.g. <u>United Home Care v.</u>

<u>Thompson</u>, No. 99-3123, slip. op. at 9 (D.D.C. Sept. 30, 2002)(upholding Board dismissal of

Plaintiff's appeal where Plaintiff failed to file a position paper)(copy included as Exhibit 2);

<u>Novacare v. Thompson</u>, 357 F. Supp.2d 268, 272 (D.D.C. 2005) (same); <u>Inova Alexandria Hosp.</u>

<u>v. Shalala</u>, 244 F.3d 342, 351 (4th Cir. 2001)(same).

The Board's procedural requirements "help manage a docket both by encouraging timely

filing and by allowing the adjudicater to ignore late or improperly presented claims."  <u>High</u>

<u>Country Home Health v. Thompson</u>, 359 F.3d 1307, 1311 (10th Cir. 2004). The Board's

procedural requirements, including its practice of dismissing cases for failure to meet filing

deadlines are "reasonable and necessary to the smooth functioning of the agency appellate

process."  <u>UHI v. Thompson</u>, 250 F.3d 993, 996-997 (6th Cir. 2001).  The courts have recognized

the urgency of the Board's ability to manage its own docket by rejecting challenges to the

dismissal of defaulted claims, in light of its massive backlog of cases.  <u>See</u> <u>e.g.</u> <u>High Country</u>

<u>Home Health</u>, 359 F.3d at 1310.

**B.     When Read as a Whole, the Statute, Regulations and Instructions Together do <u>not</u> Permit the Re-Filing of Previously Dismissed Claims**

The crux of Plaintiffs' argument is that, while the Board may properly dismiss procedurally defaulted claims, nothing in the regulations, statute or Instructions explicitly forbids Providers from re-filing dismissed claims.  See. Pls' Mem. in Supp. of S.J. at 16 ("that the Hospitals transferred an issue to a group appeal that was terminated does not eliminate the right of the Hospitals to add that same issue" to their individual appeals); <u>id</u>. at18, n.3 (explaining that Plaintiffs did not appeal the dismissal of group appeals 02-1735G and 02-1736G because they understood the regulations "to allow [them] to add dismissed issues to their pending individual appeals"); <u>id</u>. at 26 (arguing that "[t]here is no authority" for the proposition that "a provider's right to appeal an issue in an individual appeal is extinguished if ... the issue is transferred to a group appeal which ultimately is terminated"); <u>id</u>. at 28 (claiming that the PRRB's decisions were arbitrary and capricious because the regulations and Instructions permit addition of issues to individual appeals "with no restriction that exclude[s] issues which were previously dismissed on nothing more than a technicality." ) Plaintiffs rely on 42 C.F.R. § 405.1841(a).  Section 405.1841(a), provides, in relevant part, that after filing its hearing request but "[p]rior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied."

The principal flaw in the Providers' argument is that they fail to consider this regulation (or the Instructions) within the context of the statute and regulations (and Instructions) governing Board appeals as a whole.  The Medicare statute vests the Board with "full power and authority to make rules and establish procedures, not inconsistent with" the statute or regulations, "which are necessary or appropriate to carry out" its duties.  42 U.S.C. § 1395oo(e).  As just discussed,

the Board's authority to dismiss procedurally defaulted cases is uncontroversial.  Any

interpretation of providers' ability to add claims to their appeals must be read against the

background of this authority.  So read, the more natural and sensible understanding of section

405.1841(a) is that a provider may add any *otherwise jurisdictionally proper* issues to a pending

individual appeal.  Because this interpretation of the Board's rules is at least permissible under

the language of those rules, and is in fact the most sensible reading thereof, the Court must give it

controlling weight.  Thomas Jefferson Univers., 512 U.S. at 512.

Plaintiffs correctly state that the PRRB Instructions likewise provide for the addition of

new issues to pending appeals without explicitly excluding previously-dismissed issues.  See Pls'

Mem. in Supp. of S.J. at 16.  PRRB Instructions do indeed provide, in relevant part, that "[i]n an

individual appeal, you may add issues to the appeal prior to the commencement of the hearing."

PRRB Instructions, Part I.C.VI, Ex. 1, Part I at 10.  However, Plaintiffs have isolated one part of

the Instructions, out of the context of other provisions which are collectively inconsistent with

Plaintiffs' interpretation.  Specifically, Plaintiffs' reading of the Instructions does not harmonize

with the Board's procedures for reinstatement of dismissed claims.

When a claim is dismissed for failure to meet a Board deadline, the Instructions provide

that the Board will consider a request to reinstate the claim, but only where providers follow a

certain procedure.  The Instructions provide, in relevant part, as follows:

> The Board may consider provider requests to reinstate an appeal that it has dismissed.
> These ... require you to follow specific Board procedures....(b). Reinstatement of Appeal
> Dismissed by Board –If you are requesting reinstatement because the Board dismissed
> your appeal for failure to comply with its procedures, **you must explain in detail the
> reasons why you failed to comply**.  In general, this means the reasons you missed a
> position paper due date...".

PRRB Instructions, Part I.C.XIII. Ex. 1, Part I at 15. (emphasis added). If Plaintiffs were correct, and providers could simply add claims dismissed in group appeals into pending individual appeals, the Board's requirements for reinstatement would be meaningless, at least as to group appeals. On Plaintiffs' view, providers need never even explain to the Board why they missed a deadline in a group appeal, so long as they have pending individual appeals that remain open. Indeed, Plaintiffs have never explained why they did not timely file their position papers in 02-1735G and 02-1736G.[11]

    The statutory grant of authority to the Board to control its docket, the regulations and Instructions, when read as a whole are more sensibly construed together to exclude the addition of previously-dismissed claims in pending appeals. The Board's authority to control its docket by dismissing cases where providers fail to meet its deadlines would be severely undermined if providers could simply add issues presented in group appeals from which they have been dismissed to their pending individual appeals. Plaintiffs' interpretation of the regulations would render the Board powerless to enforce its own rules concerning deadlines for group appeals. Effective case management "would dissipate if claimants could ignore procedural rules." <u>Little</u>

---

    [11] In their Supplemental Memorandum, Plaintiffs make an argument in the same vein concerning the Board's Instructions related to mandatory group appeals. Pls' Suppl. Mem. at 6 (arguing that "there is no published authority for the proposition" that when an issue is presented in a mandatory group appeal this "divests the provider of its" right to pursue the same issue in another appeal). On May 16, 2007 the Board refused to hear BMH-St. Joseph's section 1115 waiver days claim in light of the provider's failure to participate in a mandatory group appeal. Pls' Suppl. Mem., Ex. 2. Plaintiffs argue that the requirements concerning mandatory group appeals do not impinge on the ability of providers to add issues to their pending individual appeals. Pls' Suppl. Mem. at 6. This reading is inconsistent with the Instructions' and regulation's direction that certain appeals "must" be brought as group appeals. PRRB Instructions Part I.B.I.d, Ex 1, Part I, Part I at 5; 405.1841(a)(2). If, as Plaintiffs believe, providers can add any issue they want to individual appeals, there is no sense in which they "must" bring them as group appeals, as required by the governing rules.

Company of Mary Hosp. and Health Care Ctr. v. Shalala, No. 98 C. 8232, slip op. at 9 (N.D. Ill. March 30, 2000)(copy included as Ex. 3). [12]

For these reasons, this Court should reject Plaintiff's allegation that the Board was without authority to refuse to hear claims it had previously dismissed. The Secretary's interpretation of the Statute, regulations and Board Instructions to allow the Board to decline to hear in individual cases issues previously disposed of in group appeals is wholly reasonable and consistent with those authorities. The Court should uphold the Board's June 14, 2006 decision declining to reconsider its conclusion that the Medicaid eligible days issue in group appeal 04-0554G was disposed of as to BMH-St. Joseph and BMH-Golden Triangle[13] because they failed to follow its instructions in group appeal 02-1735G and that they "cannot now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group" in group appeal 04-0554G. A.R. 33.

---

[12]  Plaintiffs' reliance on Bethesda Hosp. v. Bowen, 485 U.S. 399 (1988), Pls' Mem. in Supp. of S.J. at 25, is misplaced. Bethesda addressed whether a provider who had not made a claim for reimbursement could nonetheless be "dissatisfied with a final determination of ... its fiscal intermediary" within the meaning 42 U.S.C. 1395oo, where "dissatisfaction" is a jurisdictional prerequisite for Board proceedings. See Bethesda Hosp. 485 U.S. at 404. Bethesda Hospital did not involve claims that were previously dismissed due to procedural default and is therefore irrelevant here.

[13]  As discussed above, supra p.11, BMH-Desoto did not seek reconsideration of group appeal 04-0554G and the June 14, 2006 decision does not apply to it.

IV.    **Plaintiffs' Argument That the Issue in Group Appeal 02-1735G Was Not the Same as the Issue(s) in Group Appeal 04-0554G is Without Merit.**

Plaintiffs argue in the alternative that, even if they do not have the right to add previously dismissed claims into pending appeals, the issue(s) raised in 04-0554G were not the same as those in dismissed group appeals 02-1735G.  Pls' Mem. in Supp. of S.J. at 32.  Plaintiffs rely on the final position papers filed by the Providers and the Intermediary in 04-0554G to demonstrate that several DSH adjustment components that "were not identified" in 02-1735G were present in 04-0554G.  Id.  Specifically, they identify three issues that were purportedly included in 04-0554G but not 02-1735G:  charity care days[14], Section 1115 Waiver days, and "Medi-Medi" days.  Pls' Mem. in Supp. of S.J. at 32.  This argument is without merit.

First, the Board rejected BMH-St. Joseph's attempt to add the Section 1115 waiver days issue to its individual case on the ground that this issue was raised in a different group appeal, a mandatory group appeal which BMH-St. Joseph failed to join.  Pls' Suppl. Mem., Ex. 2.  The Providers claim that BMH-St. Joseph "may not have been eligible to participate in the group appeal", Pls' Suppl. Mem. at 6, but submit no evidence of this fact.

In any event, Section 1115 waiver days is a separate issue that was not a part of the eligible days appeal in 04-0554G.  The Board specifically found that section 1115 waiver days were not included in 04-0554G in a March 7, 2007 decision concerning a related provider that had remained in that group appeal after Plaintiffs were dismissed from that case.  Pls' Stmt, Ex. 24 at 2-3.  The PRRB stated:

---

[14]    Charity care days are days for "patients not eligible for Medicaid or any other third-party payer, and claimed as uncompensated care by a hospital."  A.R. 230 (H.C.F.A. Pub. 60A, No. A-99-62)(December 1, 1999).

> The Board finds that the § 1115 waiver days issue was not the issue under dispute in this group appeal. The statute, regulation and Board Instructions limit group [sic] to a single issue. The issue identified in the hearing request is the Medicaid eligible/paid days issue ...

Id.

Second, it is impossible to compare the position papers in 02-1735G with the position papers in 04-0554G precisely because Plaintiffs failed to file even a preliminary position paper in 02-1735G. Moreover, the group hearing requests in 02-1735G and 04-0554G described the same common issue. Compare A.R. 496 (request that led to 02-1735G) with A.R. 379 (request that led to 04-0554G). Plaintiffs offer no basis for thinking that they would have presented different issues in 02-1735G, had they filed a position paper, than were presented in the position paper for 04-0554G. Plaintiffs continue even now to use the same descriptions for both appeals throughout their papers before this Court. See e.g. Pls' Stmt at ¶ 7 (describing the issue in 02-1735G as "the eligible days component"); id.at ¶ 45 (describing 04-0554G as arising from appeal of "DSH Medicaid eligible days component").

Third, Plaintiff Hospitals, not the Board, are to blame if Plaintiffs have not adhered to the Board's Instructions requiring that each group appeal request be limited to a single issue and easily reviewable. Plaintiffs have not been consistent in their descriptions of these various group appeals over time. Compare e.g. A.R. 36 (BMH-St. Joseph's request to transfer issue from 04-0554G) (referring to charity care, county general assistance, Section 1115 waiver days, bad debt and other issues) with A.R. 379 (original request that led to group appeal 04-0554G) (referring to none of these topics). In fact, Plaintiffs themselves have even identified at least two of the issues purportedly exclusive to 04-0554G as present in 02-1735G. In an April 23, 2003 letter to the Board Chairman, the group representative added new providers to Group Appeal 02-1735G and

"describ[ed] in detail the issues under appeal." Pls' Stmt ¶ 11 (citing A.R. 416-418). Plaintiffs' description of 02-2735G referred explicitly to charity care and Section 1115, two issues they now claim were present only in 04-0554G. A.R. 417.

Plaintiffs even complain that the Board erred in refusing to permit BMH-St. Joseph to pursue the SSI percentage issue in its individual case, Pls' Mem. in Supp. of S.J. at 27,  because that issue was not one that could properly be pursued in a group appeal, even though it was they who formed two group appeals on that issue.  However, the Board never reached the underlying issue in 04-0553G or 02-1736G because of Plaintiffs' failure to file a position paper in 02-1736G.  It is not the Board's responsibility to opine on the issues underlying procedurally defaulted cases, nor is that an efficient use of its time.

Plaintiffs' lengthy discussion of various potential DSH issues that could potentially form the basis of an appeal to the Board is therefore beside the point.

## V.    BMH-St. Joseph Now Demands the Right to Add Issues to Its Individual Case When it Requested the Board Withdraw These Same Issues.

BMH-St. Joseph has appealed the Board's September 5, 2006 decision refusing to permit the provider to transfer the issues in 04-0553G and 04-0554G back into its individual appeal. BMH-St. Joseph also challenges the Board's May 16, 2007 decision refusing to permit it to add these same issues to its case. Yet, this Provider has twice requested the Board to withrdraw these very issues from its individual case.

The September 5, 2006 decision directed BMH-St. Joseph to stop wasting its time "with its multiple requests to add or transfer these issues to any appeal for this fiscal year end."  A.R. 53.  Undeterred, by letter dated September 11, 2006, BMH-St. Joseph requested that the Board withdraw the September 5, 2006 decision – but not on the basis of its purported right to add these

issues to its individual appeal. Rather, the provider representative for BMH-St. Joseph in its individual appeal explained that, until it received the intermediary's challenges to its attempt to add the eligible days and SSI percentage issues to its individual case, it had no knowledge of the Board's rulings dismissing group appeals 04-0553G and 04-0554G. A.R. 2-3. The September 11, 2006 letter stated that when it learned of these rulings, BMH-St. Joseph had sought to have the eligible days and SSI percentage issues withdrawn from its individual appeal in August 2006. A.R. 3, A.R. 41-43 (August 14, 2006 letter to the Board seeking to withdraw SSI Proxy from 01-3359); A.R. 43-44 (August 14, 2006 letter to the Board seeking to withdraw eligible days from 01-3359). On September 20, 2006, the Board declined to withdraw its September 5, 2006 decision. A.R. 1.

On May 3, 2007, BMH-St. Joseph sought to add the Medicaid eligible days and SSI Proxy issues to its individual appeal. Pls' Suppl. Mem., Ex. 1. The Board rejected this request in its May 16, 2007 decision. Pls' Suppl. Mem., Ex. 2

Remarkably, BMH-St. Joseph now asks this Court to order the Board to permit it to add to its individual appeal the very issues that it had asked the Board to withdraw. It seems that this Provider has lost track of its own multiple appeals for fiscal year 1998. By asking the Board to recognize its withdrawal of the eligible days and SSI issues from its individual appeal, BMH-St. Joseph has waived any right to claim that the Board was unreasonable in refusing to permit it to add or transfer these same issues to that appeal.

**VI.      The <u>Rhode Island Hospital</u> Case is Irrelevant**

Plaintiffs argue that, because the Secretary moved to remand a case to the PRRB in another matter, <u>Rhode Island Hospital v. Leavitt, United States District Court of Rhode Island</u>, No. 06-260ML (D. R.I.), that they are entitled to the same relief and that the Secretary has acted arbitrarily and capriciously in withholding a remand motion in this matter.  Pls' Suppl Mem. at 9. First, the remand of <u>Rhode Island Hospital</u> back to the Secretary was in the nature of a settlement of that action and evidence of any such settlement is irrelevant to the propriety of the Secretary's conduct in this case.  <u>See</u> Fed. R. Evid. 408.  In any event, the cases are in no way comparable. Although <u>Rhode Island Hospital</u> involved a provider that had been part of a group appeal that was later dismissed for failure to file a position paper, in that case, the provider argued that it had made its request to add or transfer the issue from the group appeal to its individual case "*prior* to the dismissal" of the group appeal "for failure to file a position paper."  <u>Rhode Island Hospital v. Leavitt</u>, 2007 WL 294026, *1 (D. R.I., Jan. 26, 2007) (emphasis added), Pls' Suppl. Mem. Ex 5 at 1.   Here, Plaintiffs do not, and cannot, argue they sought to transfer the eligible days or SSI Proxy issues before 02-1735G and 02-1736G were dismissed.  Therefore, the disposition in <u>Rhode Island Hospital</u> offers no support for Plaintiffs' claims in this case.[15]

_____

[15]   The Secretary's discussion of the <u>Rhode Island Hospital</u> case in an earlier brief concerned only the propriety of discovery**.**  See Defs' Opp'n to Pls' Motion to Amend Sch. Order and Permit Discovery at 14 (Docket No. 18).  Nothing in the Secretary's reliance on the discovery ruling in <u>Rhode Island Hospital</u> means that the Secretary must treat that case and this one the same on the merits.

## VII.    BMH-DeSoto Participated in Group 02-1735G

Plaintiffs argue that BMH-Desoto was never a party to 02-1735G because it failed to include a group number in its correspondence requesting to join that group appeal, Pls' Mem. in Supp. of S.J. at 19.  Case numbers are a matter of administrative convenience for the Board and for parties.  Plaintiffs point to no statute, regulation or Board instruction providing that the invocation of a group appeal number is a prerequisite to Board jurisdiction. The fact that some correspondence from the group representative failed to list BMH-Desoto as a provider involved in that group, Id.,  suggests only that Plaintiffs' lost track of their own appeals.  It has no other significance and certainly fails to outweigh the evidence of record clearly showing that BMH-Desoto participated in 02-1735G.

## VIII.   Mandamus is Not Available

As an alternative to remanding these appeals back to the PRRB, Plaintiffs ask this Court to issue a writ of mandamus "ordering that the Secretary remand the Hospitals' FY 1998 cost reports to the Intermediary with an order that the Intermediary conduct a reopening."  Pls' Mem. in Supp. of S.J. at 36.  This Court lacks mandamus jurisdiction.   "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owed him a clear and nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616-17 (1984) (citations omitted); accord Your Home, 525 U.S. at 456-67.  Plaintiffs have not identified, and cannot identify,  any nondiscretionary duty owed to it that the Secretary failed to perform.  Rather, it is Plaintiff Providers who failed to comply with the Board's rules and who thereby forfeited their right to be heard on the disputed claims.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that this Court deny Plaintiffs' motion and enter judgment for the Secretary, affirming on the merits the June 14, 2006 Board order refusing to reconsider its jurisdiction over BMH-St. Joseph and BMH-Golden Triangle's in group appeal 04-0554G and the September 5, 2006 Board order refusing to permit BMH-St. Joseph to transfer the issues dismissed in group appeals 04-0554G and 04-0553G back into its individual appeal.  The Secretary further requests that, even if the Court reaches the May 16, 2007 decision refusing to permit BMH-St. Joseph to add these issues or section 1115 waiver days to its individual appeal, the Court affirm this decision as well.


Respectfully submitted,


_____/s/_____

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


_____/s/_____

MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7220/FAX:(202) 514-8780


– 33 –

BRIDGETTE L. KAISER
(D.C. Bar No. 492406)
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare and Medicaid Services Division
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 205-5872/FAX: (202) 260-0490


OF COUNSEL:

DANIEL MERON
General Counsel

JANICE L. HOFFMAN
Acting Associate General Counsel

MARK D. POLSTON
Deputy Associate General
  Counsel for Litigation

United States Department of
Health and Human Services

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2007, an electronic copy of the foregoing Motion for

Summary Judgment and Memorandum of Points and Authorities in Support of Summary

Judgment and in Opposition to Plaintiff's Motion for Summary Judgment will be served on

plaintiffs' counsel via the United States District Court's Electronic Case Filing program.


_____/s/_____

Megan L. Rose