UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED HOME CARE,

Plaintiff,

v.

TOMMY G. THOMPSON, Secretary of
Health and Human Services,

Defendant.

Civil Action No. 99-3123 (CKK)

FILED

SEP 3 0 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION
(September 30, 2002)

This case comes before the Court on the parties' cross-motions for summary judgment. Plaintiff, United Home Care ("UHC" or "Plaintiff"), filed suit seeking review, pursuant to the Medicare Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, of a final decision of Defendant Tommy G. Thompson, Secretary of Health and Human Services ("Secretary"), dismissing Plaintiff's administrative appeal to the Provider Reimbursement Review Board ("PRRB" or "Board") for reasonable costs incurred by Plaintiff in providing home health care services to Medicare beneficiaries.

The Board dismissed Plaintiff's appeal because Plaintiff failed to file a position paper with the Board, as required by a Board rule. It is undisputed that Plaintiff was aware of this rule and aware of the deadline for submission of its papers. Seeking to have this Court diverge with relevant precedent from the Fourth and Sixth Circuits, Plaintiff alleges that the Board's denial of Plaintiff's appeal, as memorialized in a letter dated November 10, 1999, constituted unlawful rulemaking and was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance

with law. Defendant responds that the Board properly complied with both the Medicare Act and the APA, and that the Board's actions were not arbitrary or capricious. Having considered both parties' cross motions, oppositions, replies, and the entire record presently before it, the Court shall deny Plaintiff's motion, grant Defendant's motion, and dismiss Plaintiff's action from the Court with prejudice. Although the Court has considered all of Plaintiff's arguments in its voluminous briefing, it has not sought to address each contention in this Memorandum Opinion because not all of Plaintiff's arguments were meritorious of discussion by the Court.

## I. BACKGROUND

*A. Statutory and Regulatory Framework of the Medicare Program*

The Secretary of Health and Human Services is granted the authority to promulgate rules and regulations implementing and interpreting Title XVIII of the Social Security Act, also commonly known as the Medicare Act. *See* 42 U.S.C. § 1395-1395ggg. This case involves only Part A of the Medicare Act, which covers "home health services" provided to Medicare beneficiaries. 42 U.S.C. § 1395c. Under Part A, Medicare authorizes payment for, *inter alia*, home health services to Medicare beneficiaries. 42 U.S.C. §§ 1395c, 1395d. A home health agency may participate in the Medicare program as a "provider" of services by entering into a provider agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc. In order to obtain reimbursement for services furnished to Medicare beneficiaries, a provider must file an annual cost report. 42 U.S.C. § 1395g(a); 42 C.F.R. §§ 413.20(b), 413.24(f). The Secretary contracts out certain audit, administrative and payment functions to external organizations (usually a private insurance company) known as "fiscal intermediaries," who audit the cost report of the providers. 42 C.F.R. § 405.1803. The fiscal intermediary issues a

-2-

determination of the total amount of Medicare reimbursement due in the form of a Notice of Program Reimbursement (NPR). *Id.*

If a fiscal intermediary denies a reimbursement and the amount in controversy is greater than $10,000.00, the provider may appeal the decision by filing, within 180 days after being notified of the denial, a request for a hearing with the PRRB, an administrative body within the Department of Health and Human Services established by statute to resolve Medicare payment disputes. 42 U.S.C. § 1395oo(a). Practices of the Board are detailed in regulations promulgated by the Secretary and codified at 42 C.F.R. Part 405, Subpart R. Moreover, the Board has "full power and authority to make rules and establish procedures, not inconsistent with" the Medicare Act or regulations, as long as they are "necessary or appropriate to carry out" its duties. 42 U.S.C. § 1395oo(e). In addition, the Provider Reimbursement Manual ("PRM") specifically describes the procedures for appeals before the PRRB. According to the PRM, the provider pursuing an appeal before the Board and the provider's intermediary are each required to submit position papers in compliance with the schedule established by the PRRB. Def.'s Mot., Ex. 1, PRM § 2921.5 (hereinafter only cited to the PRM).

The PRM expressly states that the Board may dismiss a provider's appeal if the provider fails to submit its position paper in a timely fashion. PRM § 2921.4E. The Board hears requests for reinstatement by a provider after an appeal has been dismissed. PRM § 2924.4B. The Board may reinstate a dismissed request for a hearing on its own motion or upon the request of a party. *Id.*, PRM § 2924.4D. The Board's decisions can be subject to further review by the Secretary.[1]

---

[1] The Secretary has delegated his authority to review Board decisions to the Administrator and Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA").

-3-

42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1871. The decision of the Board becomes final unless the Secretary grants review and reverses, affirms, or modifies the Board's action within 60 days after the provider receives the Board's decision. 42 U.S.C. § 1395oo(f)(1). A provider dissatisfied with the final decision of the Secretary may request judicial review of the decision by filing suit, within 60 days after receiving the Board's decision, in the U.S. District Court for the judicial district in which the provider is located or in the U.S. District Court for the District of Columbia. *Id.*

### B. Specific Facts of the Case

The salient facts of this case are not disputed. Plaintiff is a provider of home health services located in Ohio. Pl.'s Stmt. of Material Facts Not Genuinely at Issue ("Pl.'s Stmt.") ¶ 1. On November 19, 1997, Plaintiff filed a request for a hearing and notice of appeal with the PRRB challenging the final determination of the total Medicare reimbursement made by its fiscal intermediary for the 1995 cost year. Administrative Record ("A.R.") at 292-93. Plaintiff designated the law firm of Powers Pyles Sutter & Verville, P.C. ("PPSV") as its representative before the Board, and Ms. Barbara Straub of PPSV signed and filed Plaintiff's hearing request before the Board. *Id.* at 292-93. The PRRB acknowledged receipt of Plaintiff's appeal and docketed it as Case No. 98-0261. *Id.* at 291. Plaintiff timely submitted a list of issues on appeal to the intermediary as well as to the PRRB, in accordance with the PRRB's procedures. A.R. at 288-90.

On March 6, 1998, the PRRB sent a Notice of Hearing and Request for Position Papers to Plaintiff's law firm, stating that the final position papers in Plaintiff's appeal needed to be filed with the PRRB no later than September 1, 1999. *Id.* at 285. This Notice of Hearing and Request

-4-

for Position Papers provided:

> The due dates for position papers will not be changed regardless of any motions, jurisdictional challenges, discovery requests, requests for subpoenas, etc. *Failure of the Provider to submit its postion [sic] papers by the above deadlines will result in dismissal of the appeal.* Failure of the Intermediary to submit its position papers by the deadlines will result in the Board notifying HCFA and scheduling the case for hearing. NOTE: NO FURTHER REMINDER LETTER OR OTHER NOTICE WILL BE SENT REGARDING THE DEADLINES FOR POSITION PAPERS.

*Id* (italics not in original). There is no dispute that Plaintiff's counsel received the Notice of Hearing and Request for Position Papers. Pl.'s Stmt. ¶ 8. Nevertheless, on September 1, 1999, Plaintiff failed to file its position papers with the Board. Pl.'s Stmt. ¶ 12. Thereafter, on September 30, 1999, the Board dismissed Plaintiff's appeal for failure to submit position papers in a timely manner in accordance with the Board's prior instructions. A.R. at 284.

On October 26, 1999, Plaintiff filed a request for reinstatement of its appeal, explaining why it had failed to file a position paper and asking the PRRB to still accept its position paper for filing. *Id*. at 47-52. Plaintiff's request for reinstatement stated:

> [T]he Provider's failure to file a position paper was attributable to its representative's error, and to confusion and failures in communication within the representative law firm after the previously responsible attorney left employment with that firm. There was no intent by the Provider to abandon its appeal, and no fault on the Provider's part for the untimeliness of its position paper submission.

*Id*. at 50.[2] On November 10, 1999, the Board refused to grant Plaintiff's request for

---

[2] According to Plaintiff, on February 1, 1999, Ms. Straub left PPSV to travel abroad. Pl.'s Stmt. ¶ 16. Before leaving PPSV, Ms. Straub requested that a secretarial staff member enter the filing date for the final position papers in Plaintiff's appeal into the firm's centralized docket system. *Id*. ¶ 17. In its letter requesting reinstatement of its appeal, PPSV stated that it "has a great deal of experience representing Medicare providers before the PRRB, and is well aware of the importance of complying with the Board's due dates." A.R. at 49. According to the letter,

-5-

reinstatement of the dismissed appeal, stating in its letter:

> As the moving party in the case, the provider is required to file the appropriate documents with the Board by the established due dates. The Provider was notified by a Notice of Hearing and Request for Position Papers, dated March 6, 1998 that final position papers were to be filed with the Board no later than the 1st of September 1999. That same letter warned that the consequence of failing to file position papers timely would result in dismissal of the appeal. You were responsible for taking note of the warning, for accurately recording the deadlines, and for complying with the Board's schedule. The Board does not view clerical oversight within an organization as a sufficient cause for noncompliance with the Board's directions and deadlines.

*Id.* at 45.

On November 23, 1999, Plaintiff requested review of PRRB's decision by the HCFA Administrator. *Id.* at 3-13. On January 7, 2000, the HCFA Deputy Administrator declined to review the Board's action. *Id.* at 1-2. Consequently, the Board's dismissal of and refusal to reinstate Plaintiff's appeal became the final decision of the Department of Health and Human Services. Plaintiff timely filed this suit to overturn the PRRB's dismissal and refusal to reinstate its administrative appeal.

*C. Plaintiff's Claims*

Plaintiff's complaint, as amended on March 2, 2000, states four causes of action against Defendant. In Count I, Plaintiff states that the Board's dismissal of its appeal was contrary to both the Medicare Act, 42 U.S.C. § 1395oo and the implementing regulations at 42 C.F.R. §

---

PPSV maintains a "fail-safe" mechanism for recording due dates by placing them on (1) the individual calendars of the specific attorneys responsible for the matters; and on (2) a firm-wide docket. *Id.* In this case, a clerical error on the part of the person whose job it was to enter the date on the firm-wide docket combined with the departure of the responsible attorney, meant that the due date was not properly recorded. *Id.*

405.1835(a) and a violation of due process. Am. Compl. ¶ 57. In Count II, Plaintiff alleges that rules authorizing dismissal of a provider's appeal for failure to file a timely position paper are invalid because the provisions were not subject to the advance notice and comment rule-making procedures mandated by the APA. *Id.* ¶ 58-60. In Count III, Plaintiff contends that the PRM provisions at issue are contrary to the Medicare Act and its implementing regulations and thus exceed the Board's statutory authority. *Id.* ¶ 61. Lastly, in Count IV, Plaintiff alleges that the Board's dismissal of Plaintiff's appeal and refusal to reinstate the appeal was, for various reasons, arbitrary and capricious, and an abuse of discretion. *Id.* ¶ 62.

## II. STANDARD OF REVIEW

The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C). Although the judiciary bears the responsibility under the APA to set aside agency decisions that meet this description, *see MD Pharmaceutical, Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998), "[t]he scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Nonetheless, this Circuit has held that "where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action." *Petroleum Communications, Inc. v. F.C.C.*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) (citing *American Tel. & Tel. Co. v. F.C.C.*, 974 F.2d). Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue

-7-

of material fact and the moving party is entitled to judgment as a matter of law. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994); Fed. R. Civ. P. 56(c).

## III. DISCUSSION

The Court rejects Plaintiff's claims because the Board properly acted pursuant to its statutory authority in dismissing Plaintiff's appeal. The Court finds persuasive Fourth and Sixth Circuit precedent that have addressed the same issue presently before the Court. The Court shall address each count of Plaintiff's complaint systematically.

*A. Count I: Violation of Statutory and Regulatory Rights*

Plaintiff argues that "the Board's deprivation of the hearing rights granted to plaintiff under the Medicare statute at 42 U.S.C. § 139500(a)(1) and federal regulations at 42 C.F.R. § 405.1835(a) is inconsistent with the Medicare Act and its implementing regulations and deprives plaintiff of its rights to due process." Am. Compl. ¶ 57. Section 139500(a) states that a provider "may" secure a hearing by the Board. The use of the permissive term "may" rather than the required "shall" indicates that Congress deliberately decided to give the agency some discretion. *Appalachian Power Co. v. EPA*, 135 F.3d 791, 807 (D.C. Cir. 1998) ("We have noted that when a statute uses the permissive may rather than the mandatory shall, this choice of language suggests that Congress intends to confer some discretion on the agency, and that courts should accordingly show deference to the agency's determination. However, such language does not mean the matter is committed exclusively to agency discretion.") (internal quotation marks and citation omitted). Confronted with the permissive language in the statute, Plaintiff directs the Court to language in the implementing regulations which state that "[t]he provider (but no other individual, entity, or party) has a right to a hearing before the Board about any matter designated

-8-

in § 405.1801(a)(1)." 42 C.F.R. § 405.1835(a). Plaintiff seizes upon this language as proof that the Board was required to give Plaintiff a hearing. Pl.'s Mot. at 29-30 ("While Congress' permissive language admittedly left the agency some discretion in construing and applying the provision, the agency filled the statutory 'gap' and exercised that discretion by promulgating the formal, legislative rule codified at § 405.1835(a)."). The Court is not persuaded.

There is simply no statutory "gap" to fill and the clear text of the Medicare Act states that the Board "may" provide a hearing at its discretion. Indeed, as the Fourth Circuit has noted, "the right to a hearing must be read in conjunction with the statutory provision that allows the Board to establish procedures to implement the section providing for appeals (or hearings)." *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001) (citing 42 U.S.C. § 1395oo(e)).[3] *Inova* also involved a Medicare provider who brought suit against the Board for dismissing its appeal for failure to file a position paper. *Id.* at 345. The plaintiff in *Inova*, like Plaintiff in the instant case, claimed that the Medicare Act gave providers an absolute right to a hearing regardless of whether the provider neglected to file its positions paper by the due date. *Id.* at 349. The Fourth Circuit disagreed and concluded that the provision in the Medicare Act permitting the Board to establish procedures "surely empowers the Board to adopt rules that govern the dismissal of provider appeals." *Id.* As such, the *Inova* Court held that the Medicare Act does not give providers an "unqualified right to a hearing," and that "the Act is not offended by a rule that allows for dismissal when position papers are not filed on time." *Id.*

The Fourth Circuit's analysis is persuasive. The right to a hearing provided in the

---

[3] Plaintiff argues that this case contains "glaring deficiencies in legal analysis." Pl.'s Reply at 13. The Court notes that Plaintiff's counsel represented the losing party in *Inova*.

agency's implementing regulations is obviously tempered by the agency's statutorily provided right to create rules governing the filing of appeals. *See* 42 U.S.C. § 139500(e) ("The Board shall have full power and authority to make rules and establish procedures."). It is not disputed that Plaintiff would have been provided a hearing had its position papers been timely filed. However, in order to have enjoyed the right to the hearing, Plaintiff needed to have complied with the Board's procedural rules. When Plaintiff failed to comply with those rules, the appeal was dismissed. The Court finds no transgression of either the Medicare Act or the implementing regulations by the Board's action in this case. In fact, Plaintiff's argument would suggest that the Board could never dismiss an appeal for failure to follow a procedural rule established by the Board. Such an extreme position would effectively eviscerate any control the Board had over its docket. Indeed, under Plaintiff's interpretation of the Medicare Act and its implementing regulations, if a provider failed to file a position paper, the Board would be powerless to act to dismiss the appeal because the provider's right to hearing, under Plaintiff's view, is absolute. The Court disagrees with this untenable view of the Medicare Act and finds that the Board's action in this case was not in contravention of the Medicare Act or its implementing regulations.[4]

*B. Count II: Unlawful Rulemaking*

Plaintiff also claims that the "provisions of the PRM purporting to authorize dismissal of a provider's appeal to the Board for failure to file a timely pre-hearing position paper are invalid

---

[4] Although in its briefing it appears to abandon the claim, Plaintiff did assert in its amended complaint that the Board's dismissal of its appeal violated due process because it did not have an opportunity to be heard before the dismissal. The Court disagrees. As previously noted, the Medicare Act does not confer upon Plaintiff an absolute right to a hearing regarding provider reimbursement. As the Fourth Circuit in *Inova* aptly stated, "just as the Medicare Act does not provide an unqualified right to a hearing, neither does the Due Process Clause provide such a right." *Inova*, 244 F.3d at 352. Thus, the Court dismisses Plaintiff's due process claim.

-10-

rules issued by the Secretary without the advance notice and comment procedures required by the Administrative Procedure Act." Am. Compl. ¶ 58. The APA generally mandates that an agency first publish notice of a proposed rule in the Federal Register to give interested parties a chance to comment upon it before it becomes final. 5 U.S.C. § 551 *et seq*. However, the APA expressly waives procedural rules from the notice and comment rulemaking process. 5 U.S.C. § 553. Section 553 specifically exempts "rules of agency organization, procedure, or practice" from the notice and comment requirements of the APA. 5 U.S.C. § 553(b)(A).[5]

Plaintiff erroneously contends that the rule permitting the Board to dismiss Plaintiff's appeal is not a procedural rule. Pl.'s Mot. at 36 ("Those rules are more than merely procedural, and they required notice and comment rulemaking to be valid under the law."). The Court of Appeals for the District of Columbia Circuit has held that a rule is procedural, and hence exempt from the notice and comment provisions of the APA, if it does not "alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (internal quotation marks and citation omitted). "Rules that 'prescribe [ ] a timetable for asserting substantive rights' are procedural. And unless such rules 'foreclose effective opportunity to make one's case on the merits,' they need not be promulgated pursuant to notice-and-comment rulemaking." *National Whistleblower Center v. NRC*, 208 F.3d 256, 262 (D.C. Cir. 2000) (quoting *Lamoille Valley R.R. Co. v. ICC*, 711 F.2d 295, 328 (D.C. Cir. 1983)).

In the case at bar, the PRM provision authorizing the Board to dismiss a provider's appeal

---

[5] 5 U.S.C. § 553 states that the notice and comment procedures apply only to "legislative" or "substantive" rules, as differentiated from the rules of procedure that are at issue here.

-11-

for failure to timely submit final position papers is a time-based procedural rule that need not pass through the notice and comment process. The relevant PRM rules do not change the substantive standards by which the Board evaluates Medicare reimbursement issues. As the Court in *Inova* concluded, the Board "adopted a procedural rule for handling appeals." *Inova*, 244 F.3d at 350. Thus, the Court rejects Plaintiff's claim that the PRM provisions were unlawfully promulgated without following the APA's notice and comment requirements. The PRM provision at issue is a valid procedural rule.

C. *Count III: Action in Excess of Statutory Authority*

Plaintiff argues that "[t]he provisions of the PRM purporting to authorize dismissal of a provider's appeal to the Board for failure to file a timely pre-hearing position paper are inconsistent with the Medicare Act . . . and its implementing regulations . . . insofar as they are applied to deny providers the hearing rights conferred by the above-cited statutory and regulatory provisions." Am. Compl. ¶ 61. This Count of Plaintiff's Amended Complaint is essentially another formulation of the losing argument made by Plaintiff in Count I. The Medicare Act provides the Board, under 42 U.S.C. § 1395oo(e), the authority to establish rules and procedures as it deems necessary. Thus, a rule authorizing dismissal of a provider's appeal for failure to submit a position paper is not in excess of its statutory authority. Thus, the Court summarily dismisses Count III.[6]

---

[6] Plaintiff makes a series of arguments throughout its pleadings that allowing it to submit a final position paper after the deadline would not inconvenience the Board's proceedings. This argument is not germane to the legal question of whether the Board can promulgate such rules. The Board clearly is within its right to make such rules and Plaintiff's various contentions are inapplicable to the question at bar. The Court notes that it also denies Plaintiff's Motion for Leave to File Supplementary Documents and Memorandum in Support Thereof. The documents Plaintiff wishes to file involve this issue of inconvenience to the Board and were filed outside of

D. *Count IV: Arbitrary and Capricious Agency Action and Abuse of Discretion*

Plaintiff argues in its final count that the Board's dismissal of Plaintiff's appeal and denial of its request for reinstatement was arbitrary and capricious and an abuse of discretion. Am. Compl. ¶ 62. The Sixth Circuit addressed this same issue and concluded that "[b]oth the procedural requirement itself, as well as the Department's application of it, are reasonable and necessary to the smooth functioning of the agency appellate process, and therefore cannot be considered arbitrary and capricious or an abuse of agency discretion." *UHI, Inc. v. Thompson*, 250 F.3d 993, 996-97 (6th Cir. 2001). In its Amended Complaint, Plaintiff identifies seven reasons why the agency's action was arbitrary and capricious and an abuse of discretion. Despite the Court's concurrence with the analysis of the Sixth Circuit, the Court briefly considers Plaintiff's arguments in the interest of completeness.

First, Plaintiff argues that the Board's dismissal of Plaintiff's appeal was inconsistent with a previous Board decision in *St. Francis Hospital*, PRRB Case No. 96-1787. Am. Compl. ¶ 62a. Plaintiff's reliance on this case is misguided. *St. Francis* was decided according to the PRRB's Hearing Manual provisions which were no longer in effect or modified at the time of Plaintiff's complaint. Def.'s Mot. at 14. Specifically, *St. Francis* was decided under an "intent to abandon" standard that authorized the Board to deny a provider appeal only in the event that it became evident that the provider has abandoned its intention to have a hearing in the dispute. Def.'s Mot., Ex. 2, PRRB Hearing Manual §§ 1300.62(c), 1300.623. By November 19, 1997, the date on which Plaintiff filed its appeal to the Board, the "intent to abandon" standard had been

---

the original pleadings and did not contain any evidence "just learned." Thus, the Court denies Plaintiff's motion for leave to file.

publicly rescinded and replaced in September 1993 by revised PRM procedures. Def. Mem. at 15; 58 Fed. Reg. at 60,458. Therefore, the Board was not required to follow an outdated standard in deciding Plaintiff's case. Again, there is no dispute that Plaintiff was aware that the Board would dismiss its appeal if it failed to file in a timely manner its position papers.

Second, Plaintiff argues that "[t]he Board has given preferential treatment to the Secretary's representative by severely penalizing plaintiff for its failure to meet a deadline, while intermediaries guilty of the same failure are routinely permitted to escape any sanction of similar severity." Am. Compl. ¶ 62b. The Board's differential treatment of fiscal intermediaries and providers is not arbitrary and capricious and is not an abuse of discretion. Although the Board can report fiscal intermediaries who fail to timely submit position papers to HCFA, while it can dismiss providers' appeals for failure to do the same, the Medicare program distinguishes these parties because providers have a vested interest in obtaining reimbursement. The Medicare program requires that providers affirmatively prove their eligibility and right to Medicare reimbursement. *See* 42 U.S.C. § 1395g; 42 C.F.R. §§ 413.20, 413.24. Fiscal intermediaries, on the other hand, merely determine the reimbursement amounts that are challenged before the Board and have no stake in the outcome of the case. *See* 42 U.S.C. § 1395(h); 42 C.F.R. §§ 405.1801-405.1833, 421.5(a). As a result, only providers, and not fiscal intermediaries, are allowed to request a hearing before the Board, or judicial review of the Board's decision. 42 U.S.C. § 1395oo(a), (f)(1). Thus, the Court finds that the agency's different treatment of providers and fiscal intermediaries is not arbitrary and capricious, and is not an abuse of

-14-

discretion.[7]

Third, Plaintiff alleges that the Board should have considered a variety of factors before dismissing Plaintiff's appeal. Am. Compl. ¶ 62c. This argument is unavailing. Defendant was acting within its authority to promulgate rules of procedure regarding dismissing appeals. There is no requirement that the Board install some sort of balancing test that Plaintiff seeks to impose unilaterally on the Board.[8] In this case, the Board specifically considered Plaintiff's reason for its failure to meet the filing due date, including the detailed circumstances of PPSV's clerical oversight, and concluded, based upon these rational and relevant factors, that Plaintiff's reason lacked sufficient merit. The Board offered a "rational connection between the facts found and the choice made," *see State Farm*, 463 U.S. at 43, and in this way provided a satisfactory

---

[7] Such different treatment is similar to Federal Appellate Rule of Procedure 31(c) which treats similar failures by appellants and appellees differently. If an appellant fails to file a timely brief, the appellee may move for dismissal. Fed. R. App. P. 31(c). If an appellee fails to file a timely brief, the only result is that the appellee will not be heard at oral argument except by permission of the Court. *Id.*

[8] In a similar vein, Plaintiff argues that, as a general matter, the abuse of discretion standard the Court should use in reviewing Plaintiff's claims is the same abuse of discretion standard an appellate court would use to review a district court's dismissal of a case for want of prosecution under Federal Rule of Civil Procedure 41(b). Pl.'s Mot. at 13. This argument lacks merit on its face. There is absolutely no basis for importing the Rule 41(b) standard to the present case, and Plaintiff offers no caselaw to support such a position. Plaintiff confuses the different functions of district courts and agencies, and relies on case law involving federal rules rather than the appropriate doctrines of administrative law. The FRCP plainly does not apply in the agency context. As the Supreme Court stated, courts and agencies occupy different roles that "preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts." *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940). Further, "to assimilate the relation of these administrative bodies and the courts to the relationship between lower and upper courts is to disregard the origin and purposes of the movement for administrative regulation." *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 281 (D.C. Cir. 1972) (quoting *Pottsville*, internal quotations omitted). For this same reason, Plaintiff's attempt to interpose a Rule 41(b) standard on these proceedings is not permitted.

-15-

explanation for its decision. The Board did not abuse its discretion in an arbitrary or capricious manner, but used well-supported reasoning to come to its decision.

Fourth, Plaintiff charges that the "PRRB's grounds for denying the request for reinstatement lack a rational basis supportable by the administrative record before the Board." Am. Compl. ¶ 62d. The Court summarily rejects this contention. The Board found that Plaintiff failed to meet the known procedural requirements as memorialized in the Notice of Hearing and Request for Position Paper sent to Plaintiff's law firm, PPSV, on March 6, 1998. A.R. at 285. In this same letter, the Board also notified PPSV, in capital block letters, that this would be the last notice sent on the matter of position papers. *Id.* As stated in *Inova*, "a provider's statutory right to a hearing is not unduly burdened by a rule allowing dismissal for failure to file a timely position paper." *Inova*, 244 F.3d at 349. The Board properly invoked its discretionary authority when it explained that it did "not view clerical oversight within an organization as a sufficient cause for noncompliance with the Board's directions and deadlines." A.R. at 45. The Court finds that nothing more was required of the Board.

The final three arguments Plaintiff makes as to why the agency's decision was arbitrary and capricious and an abuse of discretion fare no better. Plaintiff claims that the Board failed to exercise discretion and used a "hard-and-fast" rule, Am. Compl. ¶ 62e, that the Board's decision was based on invalid rules, *id.* ¶ 62f, and that the Board's decision amounts to the application of an "irrebuttable presumption of fault on the part of the Provider." *Id.* ¶ 62g. The Court finds no need to address these other points, as they have been adequately covered at various other points in this Memorandum Opinion. Each of these contentions is meritless. In sum, the Court finds that the Board's decision was not arbitrary and capricious and not an abuse of discretion.

## IV. CONCLUSION

Based upon the foregoing, the Court shall deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. Defendant has demonstrated that the decision to deny Plaintiff's provider appeal was rational and well-supported by the evidence, not arbitrary and capricious or an abuse of discretion. Moreover, Defendant properly promulgated, pursuant to the Medicare Act, the PRM provisions regarding Medicare provider reimbursement. The Board did not act unreasonably in exercising this power to reject Plaintiff's appeal. At bottom, this appeal is nothing more than a meager attempt by a law firm to distract from its own errors. As such, the case is dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
9/30/02

Copies to:

Edith Sophia Marshall
James Calvin Pyles
12th Floor
POWERS, PYLES, SUTTER & VERVILLE, P.C.
1875 I Street, NW
Washington, DC 20006-5409

Miranda B. Jones
Department of Health and Human Services
Office of the General Counsel
Health Care Financing Division
7500 Security Boulevard, Room C2-05-23
Baltimore, MD 21244

Peter Blumberg, AUSA
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20001

FROM U.S. A Case 1:06-cv-01413-CKK Document 28-5 Filed 07/13/2007 Page 18 of 18