IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL-GOLDEN
TRIANGLE, BAPTIST MEMORIAL HOSPITAL-ST.
JOSEPH HOSPITAL, AND BAPTIST MEMORIAL
HOSPITAL-DESOTO HOSPITAL
350 N. HUMPHREY'S BLVD.
MEMPHIS, TN 38120

                Plaintiffs,

VS.

MICHAEL O. LEAVITT, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF HEALTH AND HUMAN SERVICES,

                Defendant.

_____/

CIVIL ACTION NO.1:06CV01413
Hon. Colleen Kollar-Kotelly

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
SUMMARY JUDGMENT**

I.      <u>INTRODUCTION</u>

      Plaintiffs Baptist Memorial Hospital –Golden Triangle, Baptist Memorial Hospital – St.

Joseph Hospital and Baptist Memorial Hospital – DeSoto (the "Hospitals") have demonstrated in

their prior pleadings[1] that the Provider Reimbursement Review Board ("PRRB") unlawfully

_____

[1] Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary
Judgment ("Hospitals' Opening Brief") and Plaintiffs'' Supplemental Memorandum of Points of Authorities in
Support of Plaintiffs' Motion for Judgment ("Hospitals' Supplemental Brief")

deprived the Hospitals of their right to add to their individual appeals their claims regarding various components of the Medicare disproportionate share hospital adjustment ("DSH Adjustment").

In this brief, Plaintiff's oppose and reply to the Motion for Summary Judgment and accompanying Memorandum of Points and Authorities (the "Secretary's Brief") filed by the Defendant Secretary of Health and Human Services (the "Secretary") and further brief the Court in support of the Hospitals' Motion for Summary Judgment, as renewed following Hospitals' filing of Second Amended Complaint for Judicial Review of Final Adverse Agency Decision on Medicare Reimbursement. (the "Second Amended Complaint").

II.     ARGUMENT

A.     The Hospitals' Claims Are Properly Before This Court

The claims of the Hospitals alleged in their Complaint, as amended, are properly before this Court. The Hospitals reply as follows to the Secretary's assertions that the Hospitals have waived certain of their claims (Secretary's Brief at 20-21, and 21 n.10):

1.     BMH-St. Joseph

In Secretary's Brief at 21, n.10, the Secretary stated "that the May 16, 2007 Board decision is not properly before this Court as it occurred after the October 20, 2006 filing of the Amended Complaint." Although the Hospitals did not concede the Secretary's challenge, with the consent of the Secretary, and to avoid any question, whether certain claims were before this Court, the Hospitals have filed with the Court the Second Amended Complaint (Docket No. 30.) Paragraphs 45-53 of the Second Amended Complaint set forth the claims of BMH-St. Joseph in light of the May 16, 2007

2

decision of the PRRB (which became final as of June 1, 2007).   Moreover, the Hospitals have briefed the Court regarding the claims of BMH-St. Joseph in the Hospitals' Supplemental Brief at 3-7.   Finally, the Secretary has responded to the Hospitals' briefing regarding BMH-St. Joseph. (Secretary's Brief at 25, n.11, and 29-30.) Thus, at this stage of these proceedings these claims are clearly before the Court.

Prudence dictated that BMH-St. Joseph appeal the PRRB's September 5, 2006 letter.  That decision was interlocutory, because the PRRB had not issued a final decision disposing of that case in its entirety.   The PRRB stated in no uncertain terms, however, that the decision was final (Statement of Material Facts, Paragraph 70 (Docket No. 21)); Administrative Record, 51-53).  At this stage of these proceedings, however,  the Court should confine its review regarding the claims of BMH-St. Joseph to the final decision of the PRRB, as stated in its May 16, 2007 correspondence, which became final as of June 1, 2007.

The Hospitals have briefed the Court regarding the final decision of the Board.  Hospitals' Supplemental Brief at 3-7.  In summary, the Hospitals have demonstrated that BMH-St. Joseph filed a request with the PRRB to add to its individual appeal DSH Adjustment issues which were not or should not have been included in group appeals.

The Secretary seeks to fault BMH-St. Joseph  regarding prior proceedings before the PRRB by making such disparaging, and misleadingly, statements as "this Provider has twice requested the Board to withdraw these very issues from its individual case"  and "It seems that this Provider has lost track  of its own multiple appeals for fiscal year 1998. "  Secretary's Brief at 29-30.

The Hospitals are compelled to respond to the Secretaries comments. As the Hospitals have briefed the Court, BMH-St. Joseph "withdrew" certain of the DSH Adjustment components from its individual appeal when it added these issues to a group appeal. (Statement of Material Facts Paragraphs 37, 38, 41 and 42.) Thus, BMH-St. Joseph followed the appropriate PRRB procedure by withdrawing certain issues from its individual appeal and transferring them to certain group appeals. The Secretary's criticism of this withdrawal is without merit.

The second alleged "withdrawal" occurred when legal counsel for BMH-St. Joseph became aware that a letter had been sent to the PRRB requesting *transfer* of the DSH Adjustment issues to the individual appeal from the group appeals that had been terminated. As was its duty, legal counsel then sent correspondence to the PRRB rescinding the request to transfer issues. (Statement of Material Facts Paragraphs 68 and 69.) The PRRB ignored legal counsel's request to rescind the transfer request, and issued a September 5, 2006 final decision denying the request. (Statement of Material Facts Paragraph 70.) Legal counsel for BMH-St. Joseph requested that the PRRB withdraw its September 5, 2006 letter, in light of legal counsel's prior request to rescind the transfer. (Statement of Material Facts Paragraph 71.) By letter dated September 26, 2006, the PRRB denied legal counsel's request. (Statement of Material Facts Paragraph 72.) received but denied Again, the Secretary inappropriately criticizes this action.. (Secretary's Brief at 29-30.)

Thus, BMH-St. Joseph should no be faulted regarding prior "withdrawals." Rather, the Court should focus its attention on the refusal of the PRRB to permit BMH-St. Joseph to add to its individual appeal DSH Adjustment issues that neither were nor should have been part of a group appeal.

2.    <u>BMH-DeSoto</u>

The Secretary asserts that "BMH-DeSoto has no proper claim before this Court." (Secretary's Brief at 21.) The Secretary asserts that BMH-Desoto "never challenged the March 14, 2006 decision denying jurisdiction over all three Providers as to the eligible days issue in group appeal 04-0554G ... Therefore, BMH-Desoto has no proper claim before this Court concerning the Board's refusal to hear its eligible days issue for 1998." (Secretary's Brief at 21). Here the Secretary raises a statute of limitations defense, despite the fact that the Secretary neglected to include the affirmative defense in its Answer to the Plaintiff's Amended Complaint. *See* Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party <u>shall</u> set forth affirmatively accord and satisfaction ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense."). *See also Kroot v. District of Columbia*, 800 F. Supp. 976 (D.D.C. 1992). In *Kroot* , as is the case here, the Secretary failed to assert a statute of limitations defense in its Answer and attempted to raise the defense for the first time in Opposition to Summary Judgment. The District Court in *Kroot* held: "Defendants waived the limitations defenses by failing to raise them in the answer to the complaint. Defendants first raised the statute of limitations and laches in their July 2, 1990, opposition to plaintiffs' motion for summary judgment -- approximately one year after plaintiffs filed the complaint, and there was no request to amend the answer to include such defenses. <u>Affirmative defenses such as the statute of limitations and laches generally must be raised in the answer or they are waived.</u>" (*Citing* Fed. R. Civ. P. 8(c); *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990); *Carey Canada, Inc. v. California Union Ins*. Co., 748 F. Supp. 8, 14 (D.D.C. 1990) (quoting 5 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1278, at 477 (1983 & Supp. 1990)). The District of Columbia Circuit Court of Appeals construes Rule 8(c) strictly. As it stated in *Jones*

*v. D.C. Dep't of Corr.*, 429 F.3d 276, 279 (D.C. Cir. 2005): "we construed Rule 8(c) strictly: In order to preserve the notice purpose of Rule 8(c) and the discretionary structure of Rule 15(a), we hold that Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." (emphasis added)(quoting *Harris v. Secretary, United States Department of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997)).

Nonetheless, the Secretary briefs this Court regarding the claims of BMH-DeSoto. (Secretary's Brief at 32.)  Thus, the Hospitals reply to the Secretary's arguments.  The Hospitals briefed this Court that the final Schedule of Providers for group appeal 02-1735G did not include BMH-DeSoto, and thus the transfer of the DSH Adjustment issues for BMH-DeSoto to that group appeal was never perfected.  Hospitals' Opening Brief at 19).  Specifically, the Hospitals briefed the Court that the List of Providers for PRRB Case Nos. 02-1735G and 02-1736G did not include BMH-DeSoto.  (Statement of Material Facts Paragraph 27.)  Reason dictates, therefore, that the PRRB's rationale-- that transfer of an issue to a group appeal that is subsequently terminated extinguishes the right to appeal that issue—(with which rationale the Hospitals disagree) does not apply to BMH-DeSoto because the issue in question was never transferred to a group appeal.

The Secretary contends that the "record clearly show[s] that BMH-DeSoto participated in 02-1735G."  (Secretary's Brief at 32.)  Thus, the Secretary, who elsewhere argues at length that regulations and Instructions must be followed, dismisses the significant fact that the List of Providers for group appeal 02-1735G did not include BMH-DeSoto.  The Hospitals submit that the record supports their position.  Thus, by letter dated April 17, 2002 to the PRRB, BMH-DeSoto requested transfer of the Medicare percentage issue to the pending group appeal and the case number was not

6

specified. (See AR 185 and 186). By letter dated May 21, 2002, the PRRB notified the Hospitals'

representative that group appeal 02-1735G had been established. (Statement of Material Facts

Paragraph 25.) By letter dated April 24, 2003, the List of Providers in group appeals 02-1735G and

02-1736G was transmitted to the PRRB. (Statement of Material Facts Paragraph 27.)   By letter

dated January 12, 2005, the Provider included the BMH-De Soto Medicaid Eligible days issue in

BMHCC 98 Medicare DSH Medicaid Proxy Group Appeal, PRRB Case No.04-0554G. Although

BMH-De Soto is included in the latter, Case No.04-0554G, it is not included in the former group

appeal, Case No. 02-1735G. Because the Schedule of Provider is the definitive, final and binding

list of providers in a group appeal, clearly BMH-Golden Triangle was not among the providers

included in group appeal no. 02-1735G.

In a letter dated March 7, 2007 Lester E. Cox Medical Center, PRRB Case Nos.00-1137 and

01-1272 the PRRB outlined the Board's policy on group appeal procedures and defined what

constitutes single issues as follows:

> To assure conformity with the single issue requirement, the Provider group must clearly and
> specifically identify the issue and the transfer request must demonstrate that the issue to be
> transferred is identical to that of the existing providers in the prospective group. By way of
> example only, medical assistance programs under Title XIX are unique to each state,
> therefore providers from multiple states should not be combined. (Exhibit 1.)

BMHCC 98 Medicaid Eligible Days Group appeal, Case No.02-1735G did not satisfy the

criteria for a group appeal or for a Common Issue Related Pary ("CIRP") appeal of a single issue.

The issues included are Medicaid Eligible days and General Assistance days. The General

Assistance days covers providers in multiple states who provide care for patients in at least three

States, *viz.* Tennessee, Mississippi and Arkansas. Therefore, BMH-De Soto, which is located in

7

Mississippi, FYE 9/30/98 Medicaid Eligible/General Assistance day issue could not be added to the group.  (See Exhibit 3 for an example of a letter from the PRRB making this exact point.

3.      SSI% Issue

The Secretary asserts that the Hospitals did not seek reversal of the PRRB's May 5, 2006 decision regarding Case No. 04-0553G.   (Secretary's Brief at 20-21.)

The administrative proceedings regarding BMHCC 98 DSH SSI Proxy Group Appeal, Case No. 04-0553G, have not yet come to conclusion, and thus the Hospitals reserve the right to file a separate appeal challenging jurisdictional decisions of the PRRB regarding that appeal when the PRRB issues a final decision disposing of that case.

The SSI% issue regarding BMH-St. Joseph, however, clearly is before the Court, as it was the subject of the PRRB's June 1, 2007 final decision which has been included in the Second Amended Complaint.

B.      To Properly Decide This Case, It Is Necessary For The Court To Familiarize Itself With The Several DSH Adjustment Components And Related Appeal Rights and Appeal Procedures

1.      Understanding of The DSH Adjustment Components Is Necessary

The Hospitals briefed the Court regarding the various DSH Adjustment components (Hospitals' Opening Brief at 5-11.) because it is of vital importance for the Court to recognize that each DSH Adjustment component is subject to a separate appeal.  (Hospitals' Opening Brief at 16-17.) The Hospitals also briefed the Court that the Medicare regulations give the Hospitals the right to add one or more issues to an individual appeal.  42 C.F.R. § 405.1841(a). (Hospitals' Opening

Brief at 14-15.) Finally, the Hospitals briefed the Court that the PRRB has ruled that certain of the DSH Adjustment components cannot be appealed through a group appeal but, instead, must be appealed through an individual appeal. (Hospitals' Opening Brief at 27.)

Upon achieving a firm understanding of the DSH Adjustment components in the context of applicable Medicare appeal principles, the Court should decide in favor of the Hospitals. Certainly it is necessary for the Court to appreciate the substantive components of the DSH Adjustment to discern that the PRRB refused to permit BMH-St. Joseph to add DSH Adjustment components to its individual appeal that either had not or should not have been included in a group appeal.. (Hospitals' Supplemental Brief at 2-7; Second Amended Complaint; Paragraphs 45-53.)

The Secretary asserts, however, that "[r]esolution of this matter does not turn on any substantive nuance so Medicare reimbursement but on the straightforward question of the Board's authority to manage its heavy docket . . . ." (Secretary's Brief at 2.) This statement encapsulates the flaws in the Secretary's position. First , the Secretary would have the Court ignore the DSH Adjustment "nuances" which, in the context of the Medicare appeals process, are necessary for this Court to understand in order to properly decide this case. Second, the Secretary seeks to divert the attention of this Court to the authority of the PRRB to manage its docket consistent with governing law, which the Hospitals do not challenge and which is not an issue in this case. Rather, the Court should focus its attention on the issue presented to this Court: whether the PRRB has unlawfully deprived the Hospitals of their appeal rights.

Although the Secretary urges the Court to disregard the DSH Adjustment nuances, the Secretary nonetheless attempts to persuade the Court that the Hospitals appealed the identical issues in Group Appeal Nos. 02-1735G and 04-0554G. (Secretary's Brief at 27-29.)

The Hospitals have briefed the Court on the distinction between these appeals. In short, the appeal letter for the initial group appeal describes two basic issues, the Medicaid Eligible days and the General Assistance days. This appeal letter is in sufficient detail to identify the issues under appeal.

The position papers filed by both the Intermediary and the Hospitals included multiple issues, such as the Medicaid Eligible days, the application of the hold harmless provision, Section 1115 waiver days, Medi-Medi days etc.

Both group appeals violated the Board's policy of a single common issue to constitute a group appeal. They were also significantly different. The General Assistance program varies by States. The group appeals included Providers that provide care to patients in several States such as Tennessee, Mississippi and Arkansas. The Board should have dissolved these cases and instructed the Provider to pursue these issues through individual appeal. DSH' position that it is a Provider's responsibility is not supported by the Board's own actions where they have taken action to rectify these defects. (Exhibits 2, 3 & 4.) Clearly, it was the PRRB's responsibility to monitor the compliance with its policies on group appeals as is evident in the attached letters from the PRRB.

C.    The PRRB Is Not Entitled To Deference In This Case

The Hospitals have briefed the Court that "[a]lthough the standard of review is deferential, this Court 'must ensure that the agency action was based on a consideration of the relevant factors,

and that the agency has exercised a reasoned discretion, with reasons that do not deviate from or ignore legislative intent.'" (Citing *Grancare, Inc. v. Shalala*, 93 F. Supp. 2d 24, 29 (D.D.C. 2000.).(Hospital's Opening Brief at 23.)   The Secretary cites authority in agreement with this principle. (Secretary's Brief at 19.) Thus, the PRRB is not entitled to deference as a matter of law. Rather, the PRRB is entitled to deference if it has acted in accordance with the law. The Hospitals have demonstrated that, by denying the Hospitals the right to add issues to their pending appeals, as prescribed by 42 C.F.R. § 405.1841(a), the PRRB has not acted in accordance with law.

In reliance on inapposite authority, the Secretary erroneously asserts that the actions of the PRRB are entitled to deference as a matter of law. Thus, the Secretary cites leading decisions which have nothing to do with judicial review of the actions of the PRRB. (Secretary's Brief at 18.).  The Court should not be misled by the Secretary's citations.  *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842045 (1984) is the oft cited, leading case regarding statutory interpretation.  The instant case, however, does not present the Court with a statutory interpretation issue, and thus *Chevron* does not apply.  *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 21 (2000) addresses exhaustion of administrative remedies, which is not at issue in the instant case. Indeed, the Administrative Record and the Statement of Material Facts demonstrate that the Hospitals have exhausted remedies before the PRRB, and then some.  *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456 (1999) stands for the proposition that the decision of the fiscal intermediary whether to reopen a cost report is within the discretion of the intermediary, which is not an issue presented in the instant case, which involves PRRB action, not the action of the fiscal intermediary.  Finally, the Secretary relies on *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504

11

(1994) which presented an issue to interpretation of a regulation that is not presented to the Court in the instant case.

      D.      <u>The Hospitals In The Instant Case Should Receive The Relief Granted In *Rhode Island Hospital*</u>

The Hospitals have briefed the Court that the Hospitals are entitled to the relief the Secretary requested and which the Court granted to the plaintiff in *Rhode Island Hospital v. Michael O. Leavitt, Secretary of Health and Human Services*, United States District Court for the District of Rhode Island, Case No. 06-260ML. (Hospitals' Supplemental Brief at 7-8.) As review of the remand order reveals, the Court ordered that the PRRB had jurisdiction of the hospital's DSH Adjustment claims regarding Medicaid eligible days and regarding the SSI percentage. Moreover, the Court ordered that "the Plaintiff be afforded a full administrative hearing before the PRRB on these issues." (Hospitals' Supplemental Brief, Exhibit 7.) [2]

The Secretary contends that, under Fed. R. Evid 408, "evidence of such settlement is irrelevant to the propriety of the Secretary's conduct in this case." (Secretary's Brief at 31.) First, the undersigned does not construe Fed. R. Evid. 408 as applying to a different case, *i.e.*, the instant case, than the case in which the settlement occurred. But more to the point, the Secretary's statements regarding *Rhode Island Hospital* in this case brings into question the "propriety of the Secretary's conduct in this case." First, the Secretary asserted to this Court that *Rhode Island Hospital* presented "factual and legal circumstances that are completely virtually identical to those

---

[2] The Hospitals sought, but the Secretary successfully opposed, and the Court denied, discovery in the instant case. That the *Rhode Island* decision was issued during the proceedings in the instant case is serendipitous. As the Hospitals briefed the Court in support of its discovery request, there likely are other, unpublished decisions on

presented here." Secretary's Opposition to Plaintiff's Motion to Amend Scheduling Order and to Permit Discovery at 14, n.3 (Docket No. 18). Subsequently, however, the Secretary states to the Court as follows: "In any event, the cases are in no way comparable." (Secretary's Brief at 33.) The Hospitals respectfully suggest that, in light of these contradictory statements, *Rhode Island Hospital* is relevant "to the propriety of the Secretary's conduct in this case." In light of such conduct, the Court should carefully consider the Secretary's credibility and any claim to entitlement to deference.

Moreover, in an attempt to distinguish *Rhode Island Hospital* from the instant case, the Secretary's legal counsel offers a *post hoc* rationalization. The Secretary's legal counsel explains that, in *Rhode Island Hospital,* the hospital made its request to add or transfer the DSH Adjustment issue to the individual appeal prior to the failure to file a position paper. (Secretary's Brief at 33.) Although the Secretary has submitted no evidence supporting this purported distinction, the Hospitals and the Court have no choice but to take the Secretary at his word. In any event, the rationale the Secretary expresses for settlement of *Rhode Island* would apply in the instant case regarding BMH-St. Joseph and BMH-Golden Triangle. The Intermediary and BMH-St. Joseph submitted position papers to the PRRB in the individual appeal regarding DSH Adjustment issues on March 27, 2002 and April18, 2002, respectfully. (Statement of Material Facts Paragraphs 36 and 40). BMH-Golden Triangle submitted its position paper to the PRRB on February 28, 2003. (Exhibit 5) Thus, BMH-St. Joseph and BMH-Golden Triangle had filed their position papers regarding the DSH Adjustment issues in their individual appeals prior to July 30, 2003, when the

---

point which would assist the Court in judging whether the PRRB and the Secretary have acted consistently in cases similar to the instant case.

PRRB terminated group appeals 02-1735G and 02-1736G (Statement of Material Facts Paragraph 44. The rationale the Secretary states for the settlement of *Rhode Island Hospital* would be applicable to BMH-St. Joseph.

The Secretary likely will contend that the explanation of *Rhode Island Hospital* does not apply to BMH-St. Joseph or BMH-Golden Triangle. In that event, the Court should not overlook that it appears from the Secretary's explanation that  the hospital in *Rhode Island Hospital* concurrently pursued an individual and group appeal on the same issues, which is entirely contradictory to the Medicare regulations and the Board's *Instructions*. Indeed, the Secretary states to this Court as follows: "A provider  may either file an individual appeal or join with other providers to file a group appeal." (Secretary's Memorandum at 5.) Despite this violation of the rules, the Secretary granted the hospital in *Rhode Island* relief. And, according to the Secretary if the Secretary contends that *Rhode Island Hospital* does no apply, the Secretary denies relief to the Hospitals in the instant case did not similarly violate the rules. Moreover, if the Secretary contends that BMH-St. Joseph and BMH-Golden Triangle pursued only certain issues in their individual appeals that were different from the issues in the group appeals, such a contention would verify the Hospitals' argument to this Court that even if the right to appeal certain DSH Adjustment issues in a group appeal that is dismissed is waived, the Hospitals continue to have the right to pursue DSH Adjustment issues that were not or should not have been included in the group appeal. Thus, *Rhode Island Hospital*, and the Secretary's agreement to grant relief, is extremely instructive to the Court in the instant case.

Finally, in attempting to rationalize settlement of *Rhode Island Hospital*, the Secretary's legal counsel articulates the "rule" that it is unnecessary for a hospital to comply with PRRB requirements if the hospital files a position paper in its individual appeal addressing the issues that should have been addressed in a position paper that was not filed in the group appeal. This argument ignores the well established principle that an agency's action must be upheld, if at all, on the basis articulated by the agency itself. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156 (1962). Because this argument is advanced by the Secretary's legal counsel and is not based on any regulation or other published guidance, the Court should disregard this basis for distinguishing *Rhode Island Hospital* from the instant case.

In any event, the Court should find that the significance of *Rhode Island Hospital* is that, in a case which the Secretary has described to this Court as presenting "factual and legal circumstances that are completely virtually identical to those presented here," the Secretary consented to the very relief the Hospitals seek in the instant case. The Court should further find that the Secretary has failed to provide a principled explanation as to why the Court should not reach that conclusion in the instant case. Accordingly, the Court should order the Secretary to grant to the Hospitals the relief that was granted in *Rhode Island Hospital*.

E.    <u>The Claims Of The Hospitals Do Not Implicate The PRRB's Authority To Control Its Docket</u>

The Secretary argues that the PRRB has the authority to control its docket and suggests that the Hospitals challenge that authority. (Secretary's Brief at 22.) While the Secretary briefs the Court on this point, it is not an issue in this case because the Hospitals do not challenge the PRRB's authority to control its docket. On the contrary, the record of these proceedings demonstrates, and

15

the Secretary acknowledges (Secretary's Memorandum at 21), that the Hospitals did not challenge but, rather, acquiesced to, the PRRB's termination of group appeals 02-1735G and 02-1736G. Since the Hospitals reasonably believed that they had the right to add the DSH Adjustment issues to their pending appeals before the PRRB, the Hospitals did not challenge or appeal the PRRB's action.

Thus, the Secretary simultaneously faults the Hospitals for not having filed an appeal of the termination of group appeals 02-1735G and 02-1736G, and accuses the Hospitals of challenging the PRRB's authority to control its docket. The very authority cited by the Secretary makes it eminently clear that the Hospitals were unlikely to have succeeded in an appeal of such terminations. *United Home Care v. Thompson*, No. 99-3132, slip. op. at 9 (D.D.C. September 30, 2002 (attached as Exhibit 2 to Secretary's Brief) ; *Inova Alexandria Hosp. v Shalala*, 244 F.3d 342, 351 (4th Cir. 2001) (attached as Exhibit 2 to Secretary's Brief).

Moreover, the Court should find that there is a fatal logic flaw in the Secretary's argument. The Hospitals did not request that the PRRB establish new cases, which was the type of request that would implicate the PRRB's authority to control its docket. Nor did the Hospitals ask the PRRB to reinstate terminated cases, which also would have implicated the PRRB's authority to control its docket. Rather, the Hospitals took the least invasive approach with respect to the PRRB's authority, and simply requested, as was their right under 42 C.F.R. § 1841(a), to add the DSH Adjustment issues to their respective pending appeals which were already pending on the PRRB's docket.

Thus, while the Secretary briefs this Court regarding authority supporting the right of the PRRB to control its docket, such authority is inapposite since the PRRB's authority is not in question in this case. At issue is whether the PRRB has complied with the law.

16

F.     The Hospitals Did Not Seek To Re-File Previously Dismissed Claims

The Hospitals did not seek to re-file previously dismissed claims, contrary to the Secretary's arguments.  (Secretary's Memorandum at 23-26.)  The Hospitals sought to add to their respective individual appeals DSH Adjustment components that were not, or in certain instances should not have been, included in group appeals.  (Hospital's Opening Brief at 31-35; Hospitals' Supplemental Brief at 4-5.)

As the Secretary acknowledges, the Hospitals rely on 42 C.F.R. § 405.1841(a) for the right to add the DSH Adjustment issues to their respective individual appeals.  (Secretary's Brief at 23.)  The PRRB, below, did not state a basis for ignoring this regulation.  The Secretary attempts to rationalize the PRRB's action fail.  Because the Secretary cannot identify an exception, limitation or qualification to the rights of the Hospitals under 42 C.F.R. § 405.1841(a), the Secretary urges the Court to divine such an exception, limitation or qualification "within the context of the statute and regulations (and Instructions) governing Board appeals as a whole."  (Secretary's Brief at 23.)

The Secretary's arguments regarding this point amount to a repackaging of the Secretary's argument, addressed *supra,*  that the Hospitals are challenging the authority of the PRRB to control its docket: "As just discussed, the Board's authority to dismiss procedurally defaulted cases is incontrovertible.  Any interpretation of the providers' ability to add claims to their appeals must be read against a background of this authority."  (Secretary's Memorandum at 23-24.)  For the reasons discussed, *supra,* the Court should dismiss this argument because the Hospitals do not challenge the authority of the PRRB to control its docket.

17

Moreover, the Secretary alleges that the Hospitals would ask this Court to ignore that the issue to be added must be "otherwise jurisdictionally proper." (Secretary's Brief at 24.) Review of the Hospitals' Opening Brief at 14 reveals the heading: "3. The Provider's Right To Add Issues To A Jurisdictionally Proper Appeal." Thus, the Hospitals do not contend that a jurisdictionally "improper issue" may be added to an appeal. Rather, the question is whether the Hospitals sought to add DHS Adjustment issues to their individual appeals that were not "otherwise jurisdictionally proper." The Secretary cites no authority to support the contention that issues transferred to a group appeal which is subsequently dismissed are not jurisdictionally proper. In any event, in addition to such issues, Hospitals have demonstrated in their Opening Brief and Hospitals' Supplemental Brief that they have sought to add DSH Adjustment issues that were not, or should not have been, included in a group appeal. (Hospital's Opening Brief at 31-35;  Hospitals' Supplemental Brief at 4-5.)

The Court should not overlook that the Secretary's legal counsel again offers to this Court its *post hoc* rationalization of the PRRB's action. As stated by the court in *Inova Alexandria Hosp,* on which the Secretary relies, *supra,* the burden is on the PRRB to explain its action:

> First off, the agency must provide an adequate explanation for its actions, and the explanation must show a "rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). The required explanation must be articulated by the agency at the time of its action; neither we nor the agency may supply the explanation on appeal. See *SEC v. Chenery Corp., 318 U.S. 80, 87, 87 L. Ed. 626, 63 S. Ct. 454 (1943); Am. Trucking Ass'ns v. Fed. Highway Admin., 51 F.3d 405, 411 (4th Cir. 1995)*. In reviewing the adequacy of the agency's explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State Farm, 463 U.S. at 43* (internal quotation marks omitted). The explanation, however, does not have to be a "model of analytic precision." *Dickson, 68 F.3d at 1404*. Rather, we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys., 419 U.S. 281, 286, 42 L. Ed. 2d 447, 95 S. Ct. 438 (1974)* .244 F.3d 342; 2001 U.S. App. LEXIS 4569 at 5.

In the instant case, review of the Administrative Record reveals that the PRRB did not satisfy this standard, which the Secretary now seeks to satisfy belatedly in its pleadings. The Hospitals will not repeat their prior pleadings. It should be noted, however, that the PRRB's most recent action demonstrates that it has failed to satisfy its burden to explain its actions. Thus, as briefed in the Hospitals' Supplemental Brief and as set forth in the Second Amended Complaint, BMH-St. Joseph requested that the PRRB permit BMH-St. Joseph to add to its individual DSH Adjustment issues which either were not or should not have been included in group appeals. BMH-St. Joseph took some pains to explain that, previously, it had requested that issues be *transferred* but that it was asking for issues to be *added*. Further, BMH-St. Joseph carefully explained that the issues requested to be added either were not or should not have been included in group appeals. (Hospitals' Supplemental Brief, Exhibit 1.)

The PRRB summarily denied this request, with the entirety of its explanation as follows:

> In both [previous] letters, the Board advised the Provider that they [sic] could not have a second opportunity to appeal these issues. and the request to add the issues was dismissed. In addition, the Provider was asked to cease requesting to add these issues to the appeal. The Board's decision on this matter remains unchanged. (Hospitals' Supplemental Brief, Exhibit 2. p.1.)

It is clear from the PRRB's response that it all but ignored the request of BMH-St. Joseph. Clearly, the PRRB did not consider the explanation distinguishing between the prior request to transfer issues and the more recent request to add issues not properly included in a group appeal. It is also clear that the PRRB did not consider the explanation why the several DSH Adjustment issues could be added because they had not, or should not have been, in a group appeal under the PRRB's own group appeal rules.

19

The Secretary, however, seeks to explain the PRRB's decision. (Secretary's Brief at 25, n.11.) but the Secretary's explanation contradicts the very authority on which the Secretary relies, e.g., *Inova Alexandria Hosp,* which requires the PRRB, not the Secretary's legal counsel, to explain the basis for its actions. And, once again, the Secretary's argument ignores the well established principle that an agency's action must be upheld, if at all, on the basis articulated by the agency itself. *Burlington Truck Lines, Inc., supra.* The "basis" articulated by the PRRB regarding the BMH-St. Joseph request to add the DSH Adjustment issues certainly should not be upheld by this Court, since it is clear that the PRRB entirely ignored the request. The Court should conduct a similar analysis and make an identical finding rewarding the PRRB's other decisions which the Hospitals have appealed to this Court.

G.     The PRRB Is Responsible To Enforce Its Own Policies Regarding Group Appeals

The Secretary in its brief asserts that the Hospitals, not the PRRB, are to blame if Hospitals have not adhered to Board instructions. (Secretary's Brief at 28.) Thus, the Secretary would have this Court find that the Hospitals waived rights to appeal DSH Adjustment issues in their respective individual appeals which the PRRB should not have been permitted to be included in group appeals. It is important, therefore, for the Court to appreciate that the PRRB is responsible for ensuring that its policies with regard to group appeals are followed.

The PRRB has not issued clear instructions as to what constitutes a single issue that should be included in a group appeal. One such example is the decision on March 7, 2007 in BMHCC 98 DSH Medicaid Eligible Days Group Appeal, PRRB Case No.04-0554G, in which the PRRB finds that Section 1115 Waiver days is not the issue in dispute in the group appeal since it did not meet the

criteria for a single issue and constituted a separate issue. (Hospital's Opening Brief, Exhibit 24.) However, in its letter of September 5, 2006 the Board stated that the Section 1115 Waiver day issue was part of the Medicaid Eligible day group appeal and met the single issue criteria. The Board denied the Provider's right to include this issue in the BMH-St. Joseph individual appeal. (See AR 51, 52 and 53.)

The Board has actively monitored the Providers' compliance of its policies on group appeals. (Exhibits 2 , 3 and 4) The Board dissolved group appeals and established individual appeals where they did not meet the criteria for group appeals, denied the right to include an SSI issue in a group appeal where the issue was Provider specific and required a reconciliation of the Provider's and CMS' data etc.

The PRRB clearly did not fulfill its responsibility in ensuring that the BMHCC group appeals complied with its policy on group appeals as it is required to do.

The group appeal, BMHCC 98 DSH Medicaid Eligible Days Group, PRRB Case No. 02-1735G, did not meet the criteria of a group appeal per the statute 42 U.S.C. § 1395oo(b), regulation 42 C.F.R. § 405.1841(a)(2) and PRRB *Instructions.*[3] which limit a group to a single issue. In accordance with the PRRB's policy and practice, this group should have been dissolved and the issues transferred to the respective individual appeals and if necessary, the individual appeals reinstated.

H.    In The Absence Of A Remedy At Law The Hospitals Are Entitled To And This Court Has The Authority To Grant, And This Court Should Grant, Mandamus Relief

_____

[3] http://www.cms.hhs.gov/PRRBReview/02PRRBinstructions.asp

The Hospitals have briefed the Court that, in light of leading decisions of the United States Court of Appeals for the District of Columbia, it is well settled that under certain circumstances the fiscal intermediary has a duty to reopen hospital cost reports to assure that the DSH Adjustment is determined in compliance with HCFA Ruling 97-2. *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001); *In Re Medicare Reimbursement Litigation Baystate Health Systems v. Leavitt*, 414 F.3d 7 (D.C. Cir. 2005) , *cert. denied*, (2006 U.S. LEXIS 2717; 74 U.S.L.W. 3559 (April 3, 2006). (Hospital's Opening Brief at 8.)  Thus, the Hospitals have asked this Court, as an alternative to ordering the Secretary to remand the Hospitals' appeals to the PRRB with an order that the PRRB permit the Hospitals to pursue their DSH Adjustment appeals, this Court should issue a writ of mandamus ordering that the Secretary remand the Hospitals' FY 1998 cost reports to the Intermediary with an order that the Intermediary conduct a reopening that permits the Hospitals to submit their support for an increased DSH Adjustment.

Notwithstanding the Secretary's assertions (Secretary's Brief at 32), which fail to cite either *Monmouth* or *In re Medicare*, mandamus relief clearly is available and within the authority of this Court  to grant.

### III. CONCLUSION

Given the foregoing and the Hospitals prior pleadings in support of their Motion for Summary Judgment,  the Hospitals respectfully request that this Court:  (1) grant their Motion for Summary Judgment; (2) reverse the PRRB's decisions disallowing the Hospitals' right to pursue their DSH Adjustment appeals either in their pending individual appeals or in group appeals; (3) issue a writ of mandamus requiring Defendant to order the Intermediary to reopen the Hospitals'

FY 1998 Medicare cost reports and recalculate the Hospitals' Medicare disproportionate share

hospital adjustment determinations for the fiscal year ending in 1998; (4) award the Hospitals

their costs and attorneys' fees incurred in bringing this Motion; and (5) grant the Hospitals any

further relief this Court deems just and necessary.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:     Kenneth R. Marcus

/s/ Kenneth R. Marcus (DC Bar No MI 0016)
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226
Phone: 313 465 7470
Fax: 313 465 7471
kmarcus@honigman.com

and

ALDERMAN & DEVORSETZ, PLLC

/s/ Leslie D. Alderman III (DC Bar No. 477750)
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@a-dlaw.com

COUNSEL FOR PLAINTIFFS

Date: August 17, 2007

DETROIT.2737098.2