## BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD

|  |  |
|---|---|
| BAPTIST MEMORIAL HOSPITAL - GOLDEN TRIANGLE (NO. 25-0100, 25-S100, 25-5230) <br><br> Provider, <br><br> vs. <br><br> RIVERBEND GOVERNMENT BENEFITS ADMINISTRATOR, <br><br> Intermediary. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> PRRB CASE NO. 02-0958 <br><br> FYE 9/30/98 <br><br> PROVIDER'S FINAL POSITION PAPER |

Submitted By:

**BENNETT BIGELOW & LEEDOM, P.S.**
Susan L. Fine
999 Third Avenue, Suite 2150
Seattle, Washington 98104-4036
(206) 622-5511

Designated Representative for
Provider Baptist Memorial Hospital –
Golden Triangle

February 28, 2003

# Table of Contents

Page

CITATION OF LAW, REGULATIONS AND PROGRAM INSTRUCTIONS .......................... ii

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

ISSUES ..................................................................................................................... 2

DISCUSSION OF ISSUES ......................................................................................... 2

   1.  The Intermediary Improperly Reduced the Provider's As-filed Home Office Costs By 15%. ........................................................................................................ 2

   2.  The Intermediary Incorrectly Determined the Amount of Reimbursable Bad Debt. .......... 3

   3.  The Intermediary Erred in Determining the Hospital's Number of Medicaid Days for Purposes of the DSH Calculation and Payment ........................................................... 4

   4.  The Intermediary Erred in Determining the Hospital's SSI Percentage for Purposes of the DSH Calculation and Payment ............................................................................ 5

   5.  The Intermediary Erred In Its Determination of Home Office Collection Costs. ............. 5

CONCLUSION ............................................................................................................ 9

LIST OF EXHIBITS .................................................................................................. 10

## Citation of Law, Regulations and Program Instructions

### 1. Law

42 U.S.C. § 1395oo – Provider Reimbursement Review Board

42 U.S.C. § 1395ww – Payment to Hospitals for Inpatient Hospital Services

### 2. Regulations

42 C.F.R. § 405.1835 – Right to Board Hearing

42 C.F.R. § 412.106 – Special Treatment – Hospitals that Serve a Disproportionate Share of Low-income patients

42 C.F.R. § 413.17 – Cost to Related Organizations

42 C.F.R. § 413.80 – Principles of Reasonable Cost Reimbursement

### 3. Program Instructions

PRM-I § 300 – Principles of Bad Debt

PRM-I § 310 – Reasonable Collection Effort

PRM-I § 312 – Indigent or Medically Indigent Patients

PRM-I § 1000 – Principles of Cost to Related Organizations

PRM-I § 2150 – Home Office Costs – Chain Operations

PRM-I § 2150.2 – Determination of Allowable Costs

PRM-I § 2153 – Reporting of Home Office Costs and Equity Capital

### 4. Cases

*Maple Crest Care Center v. Mutual of Omaha Insurance Co.,*
PRRB Dec. No. 2003-D4 (Nov. 7, 2002), Medicare & Medicaid Guide (CCH) ¶ 80,942

*Sacred Heart Medical Center v. Blue Cross of WA and AK,*
PRRB Dec. No. 99-D2 (Oct. 16, 1998), Medicare & Medicaid Guide (CCH) ¶ 80,085

*Santa Marta Hospital v. Blue Cross of CA,*
PRRB Dec. No. 97-D16 (Dec. 5, 1996), Medicare & Medicaid Guide (CCH) ¶ 44,937

5. Other

HCFA Ruling 97-2 (February 27, 1997)

Program Memorandum A-99-62 (December 1999)

## INTRODUCTION

Baptist Memorial Hospital–Golden Triangle ("BMH-Golden Triangle" or the "Provider") submits this Final Position Paper in connection with the above-referenced appeal of the FYE 9/30/98 finalized cost report. The Provider's fiscal intermediary, Riverbend Government Benefits Administrator ("Riverbend" or the "Intermediary"), erred in its determination of home office costs, Medicare bad debt, and the disproportionate share calculation and payment.

## FACTUAL AND JURISDICTIONAL BACKGROUND

BMH-Golden Triangle is a church-based, not-for-profit hospital operating 285 acute care beds under Provider No. 25-0100, a Geriatric Psychiatric Unit under Provider No. 25-S100, and a Skilled Nursing Facility under Provider No. 25-5230, in Columbus, Mississippi. Baptist Memorial Health Care Corporation, which is located in Memphis, Tennessee, owns and operates the Provider. Riverbend issued the Provider's fiscal year ending ("FYE") 9/30/98 Medicare cost report Notice of Program Reimbursement ("NPR") and the related Audit Adjustment Report on September 18, 2001. Exhibits P-1; P-2. On February 26, 2002, the Provider timely filed an appeal pursuant to 42 C.F.R. § 405.1835. Exhibit P-3. The appeal issues involved an amount in controversy that exceeded the $10,000 threshold requirement under 42 C.F.R. § 405.1835(a)(3). See Exhibit P-9 for the Provider's calculation of estimated reimbursement impact of the appeal issues. On April 9, 2002, the Board assigned Case No. 02-0958 to the appeal, and issued, pursuant to the Intermediary's request, an order June 20, 2002 to amend the position paper due dates. Exhibit P-4. On October 22, 2002, the Provider added two issues to the appeal: Home Office Collection Costs; Bad Debt. Exhibit P-8. The Provider filed its Preliminary Position Paper with the Intermediary on October 30, 2002. The Provider received the Intermediary's

Preliminary Position Paper on or after December 12, 2002, and the Intermediary's Final Position Paper on February 26, 2003.

## STATEMENT OF ISSUES

The issues included in this Final Position Paper are:

1. Home Office Costs:   Whether the Intermediary Improperly Reduced the Provider's As-filed Home Office Costs by 15%. (Audit Adjustment Nos. 8, 10, and 11; Estimated Reimbursement Effect $40,000.)

2. Bad Debt:   Whether the Intermediary Incorrectly Determined the Amount of Reimbursable Bad Debt. (Audit Adjustment No. 26; Estimated Reimbursement Effect Exceeds $50,000.)

3. Disproportionate Share ("DSH") Adjustment – Medicaid Eligible Days: Whether the Intermediary Erred in Determining the Hospital's Number of Medicaid Days for Purposes of the DSH Calculation and Payment. (Audit Adjustment No. 24; Estimated Reimbursement Effect $150,000.)

4. Disproportionate Share Adjustment – SSI:   Whether the Intermediary Erred in Determining the Hospital's SSI Percentage for Purposes of the DSH Calculation and Payment. (Audit Adjustment No. 25; Estimated Reimbursement Effect $50,000.)

5. Home Office Collection Costs:   Whether the Intermediary Erred In Its Determination of Home Office Collection Costs. (Audit Adjustment Nos. 8, 10, and 11; Estimated Reimbursement Effect exceeds $10,000.)

## DISCUSSION OF ISSUES

1. **The Intermediary Improperly Reduced the Provider's As-filed Home Office Costs By 15%.**

With Audit Adjustment Nos. 8, 10, and 11, the Intermediary adjusted the home office costs to 85% of the 9/30/98 as-filed cost report. Exhibit P-2. In support of its adjustments, the Intermediary cited in its adjustment report and audit workpaper the Provider Reimbursement Manual ("PRM-I") § 2150, the manual provision setting forth the general rules for allowable home office costs. Exhibits P-2 and P-5. The Intermediary's adjustments resulted in an incorrect allocation of home office costs and must be corrected.

Baptist Memorial Hospital – Golden Triangle FYB 9/30/98
Provider's Final Position Paper - 2

The Intermediary conceded this issue in its Position Papers. See Intermediary's Final Position Paper, pp. 6, 7. It agreed with the Provider that the Intermediary erroneously reduced home office costs. *Id.* Under Medicare's rules, providers can include in their cost reports the reasonable costs of home office services. PRM-I § 2150. In general, to be allowable, the home office services must be patient-related and furnished to the provider. PRM-I § 2150.2. The Home Office Cost Report constitutes the documentary support required of the provider to be reimbursed for home office costs. PRM-I § 2153. The Intermediary should allocate home office costs based on an updated and finalized home office cost report. *Id.*

Here, the Intermediary made no allegations that the Provider was not entitled to home office costs. Exhibit P-5. The Intermediary explained in its workpaper and Position Paper that it made its adjustment only because it had not yet finalized the Provider's FYE 98 home office cost statement at the time the Intermediary finalized the Provider's FYE 9/30/98 cost report. *Id.* The Intermediary noted in its Preliminary Position Paper that the Intermediary finalized the home office cost statement on April 2, 2002, and it agreed to incorporate the finalized home office cost statement into the Provider's cost report. *Id.* The Provider maintains this issue in the appeal because the parties have not entered into an administrative resolution agreement on this issue. The Board should require the Intermediary to reverse Adjustment Nos. 8, 10, and 11 and allocate the home office costs based on the audited 1998 home office cost report.[1]

2. **The Intermediary Incorrectly Determined the Amount of Reimbursable Bad Debt.**

As permitted by 42 C.F.R. § 413.80 and PRM-I § 300 et. seq., the Provider claimed Medicare bad debt on its cost report. In general, Medicare reimburses providers for bad debts

---

[1] Note that the Provider does not waive any right to challenge Riverbend's adjustments to home office costs made to the home office cost report once the finalized costs are incorporated into the Provider's cost report.

Baptist Memorial Hospital – Golden Triangle FYE 9/30/98
Provider's Final Position Paper – 3

related to unpaid coinsurance and deductible amounts if certain requirements are met. 42 C.F.R. § 413.80. Exhibit P-11. Providers must, for example, document collection efforts. PRM-I § 310. Medicare provides for an exception to this collection effort requirement for patients the provider deems indigent. PRM-I § 312. Exhibit P-11.

With Audit Adjustment No. 26, the Intermediary reduced the Provider's amount of allowable bad debt, including amounts claimed as indigent bad debt. Exhibit P-2. The Adjustment Report provided no explanation for the adjustment. The Intermediary only cited generally to Chapter 3 of the PRM. *Id.* The workpapers, however, show that the Intermediary reviewed the Provider's inpatient and outpatient indigent bad debts during the audit of the cost report, and disallowed all such bad debt because of insufficient documentation. See Intermediary's workpaper at Exhibit P-10. In its Final Position Paper, at pp. 10-12, the Intermediary agreed with the Provider that indigent bad debts are allowable without having to perform collection efforts, but again stated it could not reimburse the Provider for these indigent bad debts without sufficient documentation.

The Provider intends to supply documentation at or before the hearing that satisfy the requirements of 42 C.F.R. § 413.80 and PRM-I § 312 and establish that some of the patients on this indigent bad debt listing were bankrupt or deceased and, therefore, indigent for Medicare bad debt purposes. The Provider requests the Board to require the Intermediary to reverse its disallowance and reimburse the Provider for its documented indigent bad debts.

3.    **The Intermediary Erred in Determining the Hospital's Number of Medicaid Days for Purposes of the DSH Calculation.**

With Audit Adjustment 24 (Exhibit P-2) and Intermediary Audit Workpapers F-650, F-600, and F-610 (Exhibit P-6), the Intermediary determined the Provider's number of allowable Medicaid days and adjusted the DSH payment adjustment factor. The Provider believes that the

Baptist Memorial Hospital – Golden Triangle FYE 9/30/98
Provider's Final Position Paper - 4

Intermediary failed to finalize the Provider's disproportionate share ("DSH") Medicaid Day portion of the DSH Medicaid proxy in accordance with 42 U.S.C. § 1395ww(d)(5)(C)(i), 42 C.F.R. § 412.106(b)(4), HCFA Ruling 97-2 (February 27, 1997), Program Memorandum A-99-62 (December 1999), and other applicable laws, regulations, manuals, or Medicare Program Memorandum. The Intermediary failed to include all Medicaid-eligible days and general assistance days. The Provider plans to address this issue in a group appeal.

### 4. The Intermediary Erred in Determining the Hospital's SSI Percentage for Purposes of the DSH Calculation.

With Audit Adjustment 25 (Exhibit P-2) and Intermediary Audit Workpapers Workpapers F-650, F-600, and F-610 (Exhibit P-6), the Intermediary reduced the Provider's SSI Percentage from 10.73 to 9.32 and adjusted the DSH payment adjustment factor. The Provider believes that the Intermediary failed to finalize the Provider's DSH Supplemental Security Income proxy in accordance with 42 U.S.C. § 1395ww(d)(5)(C)(i), 42 C.F.R. § 412.106 (b)(2)(i), 65 Fed. Reg. 50548 (August 18, 2000), and other laws, regulations, manuals, and Medicare Program Memorandum. The Intermediary failed to furnish matching data from which the SSI proxy had been derived. The Provider plans to address this issue in a group appeal.

### 5. The Intermediary Erred In Its Adjustment to Home Office Collection Costs.

In the finalized cost report, the Intermediary erred in its adjustment to determine the Provider's home office collection agency costs. With Audit Adjustment Nos. 8, 10, and 11, the Intermediary adjusted the Worksheet A-8-1 to determine home office costs, including collection agency costs. Exhibit P-2. See also Exhibit P-5 for the Intermediary's audit workpaper in which the Intermediary showed its comparison of expensed costs and related party costs for various cost items, including collection agency costs. The Provider listed in column 5 of the Worksheet A-8-1 (provider expense from the trial balance) the amount of $442,059. This amount included

patient account collection agency fees the Provider paid both to Medical Financial Services Inc. ("MFSI"), a related entity, and a non-related collection agency. The amount attributed to payments to MFSI was only $267,907.91. See Exhibit P-7 for a copy of the Provider's listing of monthly payments to MFSI for the FYE 1998. The remaining amount represented collection agency payments made to non-related entities. Because MFSI and the Provider are related according to Medicare principles, Medicare will reimburse the Provider for the actual costs of MFSI to provide the services, rather than MFSI's billed costs. 42 C.F.R. § 413.17; PRM-I § 1000. In determining the reimbursement to the Provider for its related party collection costs, the Intermediary removed the entire expense amount of $442,059 reported by the Provider in Column 5 of the cost report, and offset this entire amount of cost. See Exhibit P-7 for a copy of the worksheet A-8-1 from the finalized cost report showing the Intermediary's adjustment. The Intermediary removed an excessive amount of cost, however, because the Provider's actual related party collection costs were only $267,907.91. Exhibit P-7. The Intermediary should have removed only $267,907.91, not $442,059. The Provider requests the Intermediary to correct its adjustment.

In its Final Position Paper, at 16, the Intermediary agreed that, if in fact a portion of the $442,059 represented non-related party costs, its adjustment resulted in the removal of excessive cost, writing "[t]he Intermediary would agree in accordance with cost report instructions, that only related party expenses should be reported on A-8-1. Therefore, any non-related expenses erroneously reported on this schedule **would inappropriately remove expense that could be claimed as allowable costs.**" (Emphasis added.) The Intermediary further stated that it needed to review additional documentation to establish the amounts of costs the Provider incurred for related and non-related collection agencies. *Id.* The Intermediary requested the Provider to supply general ledger documents and invoices. *Id.* The Provider already supplied its accounting

of monthly payments made to MFSI. It will supply the additional requested documentation to the Intermediary at or before the hearing.

Despite its agreement that its adjustment resulted in a removal of excessive costs, the Intermediary, in its Final Position Paper, objected to correcting its adjustment because it claimed the Board lacked jurisdiction. The Board should disregard this argument because intermediaries may not embed jurisdictional objections in position papers. Board Instructions, Part II.B.IV.d. If the Intermediary is serious about a jurisdictional objection, it must raise it and brief it in a document separate from its Position Paper.

In addition, the Intermediary's jurisdictional position lacks merit. The Intermediary argued that it made no "adjustments to total collection costs in the final determination which were adverse to the Provider." Intermediary's Position Paper, 17. This position has no factual basis because the Intermediary in fact determined the amount of the Provider's home office collection cost reimbursement. Exhibit P-2 and P-5. The Adjustment Report provides, "to adjust home office cost," a part of which is collection costs. Exhibit P-2. In so doing, the Intermediary offset an excessive amount of expensed costs, which it did not dispute. Exhibit P-5 and P-7. This adjustment was certainly "adverse to the Provider" with respect to collection cost reimbursement.

Further, this case differs significantly from the case relied upon by the Intermediary, *Maple Crest Care Center v. Mutual of Omaha Insurance Co.*, PRRB Dec. No. 2003-D4 (Nov. 7, 2002), Medicare & Medicaid Guide (CCH) ¶ 80,942. In *Maple Crest*, the provider conceded it failed to claim any bad debt and that the intermediary made no audit adjustments to any of the other costs in dispute. In fact, the intermediary made no adjustments at all to the cost report. In contrast, here, no party disputed that the Provider requested reimbursement in the cost report for related party collection costs, the costs at issue here. Further, no party disputed that the

Baptist Memorial Hospital – Golden Triangle FYE 9/30/98
Provider's Final Position Paper – 7

Intermediary made adjustments to determine and compute the proper amount of home office costs, including collection costs. *Maple Crest* does not apply to this case.

The Medicare appeal statute requires Board jurisdiction in this case. Pursuant to 42 U.S.C. § 1395oo(a), jurisdiction exists because the Provider is "dissatisfied with a final determination" in that the Provider disputed the Intermediary's adjustments to home office costs. In addition, even if the Board were to find no jurisdiction under Section (a), jurisdiction lies under Section (d), which extends Board jurisdiction, once jurisdiction under Section (a) is satisfied, over "matters covered by such cost report ... even though such matters were not considered by the intermediary." The Board clearly had jurisdiction over the Intermediary's adjustments to home office costs. The specific collection agency home office costs were covered by the cost report because they were included in the cost report. Under these circumstances, the Board routinely takes jurisdiction. *See, e.g., Sacred Heart Medical Center v. Blue Cross of WA and AK*, PRRB Dec. No. 99-D2 (Oct. 16, 1998), Medicare & Medicaid Guide (CCH) ¶80,085 (PRRB jurisdiction lied over NICU beds in the IME bed count because the beds were on the cost report and used by the intermediary to calculate the IME reimbursement)[2]; and *Santa Marta Hospital v. Blue Cross of CA*, PRRB Dec. No. 97-D16 (Dec. 5, 1996), Medicare & Medicaid Guide (CCH) ¶44,937 (PRRB jurisdiction existed over Part B Bad Debt when provider included Part A Bad Debt on cost report and intermediary adjusted the bad debt, even though there was no specific adjustment to Part B Bad Debt).

Because the Intermediary has conceded the merits of the issue, subject to the Provider's submission of additional documentation, the Provider requests the Board to require the Intermediary to correct its adjustment to home office collection costs. The Provider has no

---

[2] Note that the CMS Administrator affirmed the Board's jurisdiction decision, but on different grounds, specifically *Bethesda's* self-disallowance rule. CMS Dec. 12/21/98, Medicare & Medicaid Guide (CCH) ¶80,154.

problem with supplying the Intermediary with any addition information or documentation it would like in order to resolve this issue.

## CONCLUSION

BMH-Golden Triangle respectfully requests the Board require the Intermediary reverse or otherwise modify its adjustments to bad debt, home office costs, and disproportionate share.

Respectfully submitted this 28 day of February, 2003.

BENNETT BIGELOW & LEEDOM, P.S.

Susan L. Fine
Designated Representative for Baptist –
Golden Triangle

## LIST OF EXHIBITS

Baptist Memorial Hospital – Golden Triangle
FYE 9/30/98
PRRB Case No. 02-0958

P-1     Notice of Medicare Program Reimbursement Issued September 18, 2001

P-2     Applicable Pages of the Audit Adjustment Report

P-3     Hospital's February 26, 2002 Request for Hearing filed with the PRRB

P-4     PRRB Hearing Acknowledgment Issued April 9, 2002, and Notice of Amended Due Dates Issued on June 20, 2002

P-5     <u>Home Office Costs</u>:  Intermediary Audit Workpapers C-100

P-6     <u>DSH Medicaid Days and SSI Percentage</u>:  Intermediary Workpapers F-650, F-600, F-610

P-7     <u>Home Office Collection Costs</u>:   Finalized Cost Report Worksheet A-8-1;  Provider's summary of collection agency fees paid

P-8     Provider letter dated October 22, 2002 adding the bad debt and home office collection cost issues to the appeal

P-9     Provider's calculations of estimated reimbursement impact for the appeal issues

P-10    <u>Bad Debt</u>: Intermediary's Indigent Bad Debt Workpapers (Redacted)

P-11    <u>Bad Debt</u>: 42 C.F.R. § 413.80; PRM-I § 312

w:\wdclient\1789\00042\mm301729.doc