IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST MEMORIAL HOSPITAL-GOLDEN
TRIANGLE, BAPTIST MEMORIAL HOSPITAL-ST.
JOSEPH HOSPITAL, AND BAPTIST MEMORIAL
HOSPITAL-DESOTO HOSPITAL
350 N. HUMPHREY'S BLVD.
MEMPHIS, TN 38120                                            CIVIL ACTION NO.1:06CV01413
                                                             Hon. Colleen Kollar-Kotelly
            Plaintiffs,

VS.

MICHAEL O. LEAVITT, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF HEALTH AND HUMAN SERVICES,

            Defendant.
_____/


**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER OF THE COURT
DATED JANUARY 29, 2008**

I.   INTRODUCTION

Plaintiffs Baptist Memorial Hospital –Golden Triangle ("BMH-Golden Triangle"), Baptist Memorial Hospital – St. Joseph Hospital ("BMH-St. Joseph") and Baptist Memorial Hospital – DeSoto ("BMH-DeSoto") (collectively, the "Hospitals") file this Supplemental Brief as ordered by the Court. (Minute Order dated January 29, 2008.) Specifically, the Court has ordered as follows:

> In order to assist the Court with resolution of the currently pending Motions for Summary Judgment, the Court seeks additional discrete and targeted briefing from the Parties on the following issue. Plaintiffs raise the argument that three DSH Adjustment components were raised as issues in appeals 04-0554G and 04-0553G and were not included in earlier terminated group appeals 02-1735G and 02-1736G, see Pl.'s Mot. for Summ. J. at 32, and Defendant responds by discussing the issues raised in two of these appeals, see Def.'s Mot. for Summ. J. at 27-28. Neither Party is sufficiently specific with respect to which issues it

1

believes were raised in which group appeals. The Parties shall submit supplemental briefing on that issue, including specific (i.e., pinpoint) citations to the administrative record.

This Supplemental Brief addresses only the single, narrow issue ordered by the Court.[1]

II.   ARGUMENT

The Hospitals have briefed the Court regarding the various components of the Medicare disproportionate share hospital adjustment (the "DSH Adjustment"). (Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 5-10.) The Hospitals will not repeat that discussion here. In response to the order of the Court, the following discussion details the DSH Adjustment components the Hospitals appealed in Case Numbers 02-1735G and 04-0554G.[2]

A.   Case No. 02-1735G

The Hospitals appealed the Medicaid Eligible Days Component as follows: "Are services to patients eligible for Medicaid, as well as patients eligible for general assistance to be included as Medicaid-Eligible days? Are patient days associated with general assistance and TennCare (Section 115), other than State-only health programs, charity care, Medicaid DSH, and/or ineligible waiver or demonstration population days to be included in the Medicaid days factor ….?" (Letter dated April

---

[1] The Court's decision should be based on all of the arguments regarding which the Hospitals briefed the Court in their prior pleadings, including, without limitation, that transfer of an issue to a group appeal does not extinguish the right to add issues to an otherwise jurisdictionally proper individual appeal, that the transfer of BMH-DeSoto to a group appeal was never perfected, and that the PRRB did not properly consider the DSH Adjustment Component issues presented by BMH-St. Joseph in proceedings before the PRRB that became final as of June 1, 2007.

[2] The Hospitals do not contend that substantively different issues were presented in Case Numbers 02-1736G and 04-0553G although, as the Hospitals have briefed the Court, the individual appeal of BMH-St. Joseph properly presented the issue of the SSI% Component.

24, 2003 from Quality Reimbursement Services ("QRS") to Provider Reimbursement Review Board ("PRRB") Administrative Record ("AR") 417).

    B.    <u>Case No. 04-0554G</u>

    1.    In their preliminary filing with the PRRB, the Hospitals appealed the Medicaid Eligible Days Component as follows: "The intermediary, contrary to the regulation, failed to include as Medicaid Eligible Days services for Medicaid, as well as patients eligible for general assistance." (Letter dated January 23, 2004 from QRS to PRRB, AR 420-421.)

    2.    Upon cursory review, the preliminary statement of the issue in Case Number 04-0554G may appear to be similar to the statement of issue for Case Number 02-1735G. In fact, however, in Case Number 04-0554G the Hospitals appealed Section 1115 Waiver Days (AR 157-159), Expanded Waiver Days (AR 159-160), and Stated Funded days pursuant to CMS Program Memorandum A-99-62 (December 1999). (AR 160-161.)

    3.    The Intermediary's Final Position Paper responded to the Hospitals' arguments regarding Section 1115 Waiver Days, and Expanded Waiver Days. (AR 210-215.) Moreover, in addition to these two DSH Adjustment components, the Intermediary stated as follows: "Based on the Intermediary's review of the provider's preliminary position paper, the provider appears to have disputed regarding Medi-Medi days not considered in the Medicare or Medicaid fraction of the hospital's DSH payment." (AR at 215.) The Intermediary's Final Position Paper included CMS Program Memorandum A-99-62 (December 1999) as an Exhibit. (AR 219-232.) Lest there be any doubt regarding the multiplicity of the DSH Adjustment components, the Court is referred to the list

at the end of that document, which identifies the many categories of days that potentially may be included in the DSH Adjustment. (AR 229-232.)

4.     By letter dated April 17, 2006 from QRS to the PRRB, QRS explained to the PRRB "that the DSH adjustment appealed in group appeal PRRB Case No. 04-0554G was significantly different than the DSH adjustment appealed in PRRB Case No. 02-1735G that was closed. In the captioned Group Appeal as is evident from the Provider's and Intermediary's position paper, several components of the DSH adjustment were included in the appeal. These additional items were the inclusion of Waiver days under Section 1115 of the Medicaid proxy, the application of the Hold Harmless provision under HCFAR Ruling 99-62, inclusion of General Assistance and Waiver days under the doctrine of Equity between Providers, the inclusion of Medi-Mal days in either the Medicare or Medicaid proxy, etc." (AR 28-30.)

5.     Accordingly, it is clear that the DSH Adjustment component issues the Hospitals presented in Case Number 04-0554G, and to which the Intermediary responded, were different than the issues identified in Case Number 02-1735G.

### III. CONCLUSION

Given the foregoing and the Hospitals prior pleadings in support of their Motion for Summary Judgment, the Hospitals respectfully request that this Court: (1) grant their Motion for Summary Judgment; (2) reverse the PRRB's decisions disallowing the Hospitals' right to pursue their DSH Adjustment appeals either in their pending individual appeals or in group appeals; (3) issue a writ of mandamus requiring Defendant to order the Intermediary to reopen the Hospitals'

FY 1998 Medicare cost reports and recalculate the Hospitals' Medicare disproportionate share hospital adjustment determinations for the fiscal year ending in 1998; (4) award the Hospitals their costs and attorneys' fees incurred in bringing this Motion; and (5) grant the Hospitals any further relief this Court deems just and necessary.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: <u>Kenneth R. Marcus</u>

/s/ Kenneth R. Marcus (DC Bar No MI 0016)
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226
Phone:  313 465 7470
Fax:  313 465 7471
kmarcus@honigman.com

and

ALDERMAN & DEVORSETZ, PLLC

<u>/s/ Leslie D. Alderman III (DC Bar No. 477750)</u>
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@a-dlaw.com

COUNSEL FOR PLAINTIFFS

Date: February 5, 2008

DETROIT.2966461.2