UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BAPTIST MEMORIAL HOSPITAL -
GOLDEN TRIANGLE, *et al.*,

    Plaintiffs,

      v.

MICHAEL O. LEAVITT,
Secretary of Health and Human Services,

    Defendant.

---

Civil Action No. 06-1413 (CKK)

**MEMORANDUM OPINION**
(February 21, 2008)

Plaintiffs in this action are three hospitals challenging decisions issued by the Provider Reimbursement Review Board ("the PRRB" or "the Board"), a panel that adjudicates Medicare and Medicaid disbursement appeals brought by health care providers. Plaintiffs brought claims regarding their fiscal year 1998 disbursements in two group appeals that were dismissed by the PRRB after the Plaintiffs failed to follow the Board's procedures. The central (albeit not sole) dispute in this case is whether the PRRB acted appropriately when it denied Plaintiffs an opportunity to raise the same dismissed claims in their individual appeals or subsequent group appeals. After thoroughly reviewing the Parties' submissions and the attachments thereto, applicable case law and statutory authority, and the record as a whole, the Court shall grant Defendant's [31] Motion for Summary Judgment and deny Plaintiffs' [32] Motion for Summary Judgment, for the reasons that follow.

# I. BACKGROUND

*A.    Statutory Background*

Pursuant to the Medicare Prospective Payment System, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. *See* 42 U.S.C. § 1395ww(d). This case involves one such adjustment–the Disproportionate Share Hospital Adjustment ("DSH adjustment")–which provides reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." *Id.* § 1395ww(d)(5)(F)(i)(I). The amount of the DSH adjustment depends on a hospital's DSH percentage, which is calculated using Medicare and Medicaid "fractions" or "proxies." *Id.* § 1395ww(d)(5)(F)(v), (vi). These fractions are calculated using variables that a hospital may contest, such as "charity care days," *see id.* § 1395ww(d)(5)(F)(vi)(II), or "section 1115 days," *see* 42 C.F.R. § 412.106(b)(4)(ii).[1]

To receive reimbursements, a provider must file a cost report at the close of each fiscal year with its Medicare intermediary ("intermediary"). The intermediary, in turn, audits the cost report and issues a Notice of Program Reimbursement ("NPR"), indicating the intermediary's final determination as to the provider's reasonable costs of services furnished to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395h, 1395oo(a)(1)(A)(I); 42 C.F.R. §§ 413.20, 405.1803. A provider that is dissatisfied with its intermediary's final determination may file an appeal with

---

[1] "Charity care days" refer to certain categories of coverage that "are included in the definition of 'medical assistance.'" Pls.' Mot. for Summ. J. at 9. "Section 1115 days" refer to Section 1115 of the Social Security Act, 42 U.S.C. § 1315, which authorizes "the Secretary to approve State research and demonstration projects that promote the objectives of the Title XIX Medicaid program." *Id.* at 8. Each is a variable (among others) that may be used to calculate the Medicaid Proxy.

the PRRB within 180 days of receiving its NPR.[2]  *See* 42 U.S.C. § 1395oo(a)(1)(A)(2).  Such

appeals are governed by Instructions issued by the PRRB.  *See* 42 U.S.C. § 1395oo(e) (vesting

the PRRB with the "full power and authority to make rules and establish procedures not

inconsistent with" applicable statutes or regulations, "which are necessary or appropriate to carry

out" its duties) (hereinafter, "PRRB's Instructions" or "the Instructions").  The PRRB's

Instructions are at the center of the dispute in the instant action.[3]

        Pursuant to the PRRB's Instructions, a provider may file an individual appeal or may

combine with other providers to file a group appeal.  *See* PRRB Instructions, I.B.I.c, I.B.I.d.  For

individual appeals, a provider may appeal multiple issues for the same fiscal year.  *Id.* at I.B.I.c.

For group appeals, providers may raise only one issue for one fiscal year "which involves a

question of fact or an interpretation of law, regulation or CMS ruling, which is common to all

providers in the appeal."  *Id.* at I.B.I.d.  A provider that initially files an individual appeal may,

pursuant to the Board's Instructions, request a transfer of that individual issue to an appropriate

group appeal.  *Id.* at I.C.VI.  In practice, the PRRB also allows providers to do the reverse; that

is, providers may withdraw issues from group appeals and transfer them to their individual

appeals.  *See Rhode Island Hosp. v. Leavitt*, No. 06-260, 2007 WL 294026 at * 1 (D.R.I. Jan. 26,

2007).  Although providers generally have the option of joining group appeals, the Instructions

require providers under common ownership or control to file group appeals if they have an issue

─────────────────────

        [2]  The PRRB is comprised of five members serving staggered three-year terms who are
appointed by the Secretary and who are knowledgeable "in the field of payment of providers of
services." 42 U.S.C. § 1395oo(h).

        [3]  The PRRB's Instructions are attached as Exhibit 1 to Defendant's Motion for Summary
Judgment.  The Court shall cite directly to the Instructions throughout this memorandum opinion.

3

in common.  *See* PRRB Instructions, I.B.I.d (referring to such appeals as "mandatory").

For either an individual or a group appeal, a provider must submit a preliminary position

paper to the Intermediary describing the issues for appeal, and a letter to the Board certifying that

it has met its preliminary position paper due date.  *Id.* at II.B.  The Instructions allow a provider

to add additional issues to an individual appeal (even after submission of its preliminary position

paper) as long as the PRRB's hearing has not yet commenced:

> In an individual appeal, you may add issues to the appeal prior to the
> commencement of the hearing . . . Since you are responsible for addressing all
> issues in a position paper before the hearing, you should assume that the added
> issues are part of your appeal . . . Although issues may be added to an individual
> appeal even after you have filed your position paper, the Board will look with
> disfavor on issues that are added at the last minute.[4]

*Id.* at I.C.VI.

The Instructions repeatedly emphasize the importance of meeting the due dates for filing

preliminary position papers and repeatedly warn providers that failure to timely submit the papers

will result in dismissal of their appeals.  *See, e.g. id.* at II.B.I. ("[i]f you fail to meet the

preliminary position paper due date and fail to supply the Board with the required

documentation, the Board will dismiss your appeal for failure to follow Board procedure"); *id.* at

I.C.XIV ("[d]ue dates can only be changed or eliminated by written confirmation of the Board.

Because your are the moving party, if you do not meet a due date, the Board will dismiss your

appeal"); *id.* at I.C.VIII ("[t]he Board may dismiss the group appeal if the group representative

misses . . . any of its deadlines"); *id.* at I.B.I.a ("[t]he Board wants to stress that it follows the

practice of other appeal avenues by not reminding the parties of their responsibilities to manage

---

[4] Additional issues cannot be added to group appeals "because a group appeal has only
one issue."  PRRB Instructions, I.C.VI.

their own appeals.  The parties themselves, once informed of Board procedures and due dates, are responsible for complying with all Board requirements").

A provider may ask the PRRB to reinstate an appeal that has been dismissed for failure to comply with the Board's procedures.  *Id.* at I.C.XIII.  The Instructions require the provider to "explain in detail the reasons why [it] failed to comply.  In general, this means the reasons [it] missed a position paper due date . . . ."  *Id.* at I.C.XIII.b.  The provider's request for reinstatement must also specify the issues the provider wants reinstated, and must provide the documentation or information that the provider failed to timely submit.  *Id.*  Following the submission of that information, "[t]he Board will [] consider [the provider's] reinstatement request."  *Id.*

B.     *Factual Background*

The three Plaintiffs in this action are Baptist Memorial Hospital - Golden Triangle ("Golden Triangle"), Baptist Memorial Hospital - St. Joseph Hospital ("St. Joseph"), and Baptist Memorial Hospital - DeSoto Hospital ("DeSoto") (collectively, "the providers").  Each of the providers initiated an individual appeal of its NPR for fiscal year 1998.[5]  *See* Pls.' Stmt. ¶¶ 6, 22, 34.  On April 11, 2002, St. Joseph asked the Board to establish a group appeal titled "BMHCC 1998 Medicaid Eligible Day Group Appeal" (hereinafter "2002 Eligible Days Group Appeal").

_____

[5] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 56.1 when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case).  Although discretionary in the text of the Local Civil Rule 56.1, in resolving the present summary judgment motion, this Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 56.1.  Thus, in most instances the Court shall cite to Plaintiffs' Statement of Material Facts ("Pls.' Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt.") unless a statement is contradicted by the opposing Party.  The Court shall also cite directly to the Administrative Record ("A.R."), where appropriate, to provide additional information not covered in either of the Parties' Statements.

*Id.* ¶ 37.  According to the request, the common issue concerned the intermediary's calculation of "Medicaid eligible days services to patients eligible for Medicaid as well as patients eligible for general assistance."  *See* A.R. 496 (St. Joseph First Request Letter).  On the same day, St. Joseph also asked the Board to establish a group appeal titled "BMHCC 1998 Medicare DSH SSI Proxy Group Appeal" (hereinafter "2002 SSI Proxy Group Appeal").  Pls.' Stmt. ¶ 38.  The common issue associated with this appeal concerned the intermediary's withholding of "matching data from which the SSI proxy has been derived."  *Id.*, Ex. 14 at 1 (St. Joseph Second Request Letter).  As a result of St. Joseph's requests, two group appeals were formed – the 2002 Eligible Days Group Appeal and the 2002 SSI Proxy Group Appeal (collectively, the "2002 Group Appeals").

The other providers asked to join the 2002 Group Appeals.  On March 5, 2003, Golden Triangle asked the PRRB to transfer the "DSH Medicaid Eligible Days issue" from its individual appeal to the 2002 Eligible Days Group Appeal, Pls.' Stmt. ¶ 7; A.R. 408-09 (Golden Triangle First Request Letter), and the "SSI Proxy issue" to the 2002 SSI Proxy Group Appeal, *see* Pls.' Stmt., Ex. 1 at 1-2 (Golden Triangle Second Request Letter).  Similarly, on April 17, 2002, DeSoto asked the Board to transfer the "Medicaid Eligible Days" issue to the 2002 Eligible Days Group Appeal, *id.* ¶ 23; A.R. 677-78 (DeSoto First Request Letter), and the "SSI Proxy issue" to the 2002 SSI Proxy Group Appeal, *id.*, Ex. 9 at 1-2 (DeSoto Second Request Letter).

On July 30, 2003, the Board dismissed the 2002 Eligible Days Group Appeal and the 2002 SSI Proxy Group Appeal because "the preliminary position paper[s] [were] not filed with the Intermediary and . . . a confirming letter regarding the filing of the preliminary position paper[s] [were] not filed with the PRRB."  Pls.' Stmt. ¶¶ 12, 28, 44.  The Parties do not dispute that the providers did not seek reinstatement of the appeals pursuant to PRRB Instruction

6

I.C.XIII.b (setting forth the procedure by which providers may seek reinstatement of appeals that have been dismissed for failure to comply with deadlines set by the Board). *See* Def.'s Mot. for Summ. J. at 9; Pls.' Renewed Mot. for Summ. J. at 16.

On January 23, 2004, St. Joseph and Golden Triangle asked the Board to create a group appeal titled "BMHCC 1998 Medicare DSH Medicaid Proxy Group Appeal" (hereinafter "2004 Eligible Days Group Appeal"). Pls.' Stmt. ¶ 13. The common issue for the appeal, according to the request, was almost identical to the issue described in the 2002 Eligible Days Group Appeal Request. *See* A.R. 420 (Providers' Request to Create 2004 Eligible Days Group Appeal) (whether the intermediary "failed to include . . . as Medicaid-Eligible days services to patients for Medicaid, as well as patients eligible for general assistance." On the same day, St. Joseph and Golden Triangle also asked the Board to create a group titled "BMHCC 1998 Medicare DSH SSI Proxy Group Appeal" (hereinafter, "2004 SSI Proxy Group Appeal"). Pls.' Stmt. ¶ 14 & Ex. 4 (Providers' Request to Create 2004 SSI Proxy Group Appeal). The request described the same SSI Proxy issue that had previously been raised in the 2002 SSI Proxy Group Appeal. *Id.* Neither of the providers' requests referenced the Board's dismissal of their 2002 Group Appeals. On January 12, 2005, the providers (now including DeSoto) again asked the Board to transfer the Eligible Days Issue to the 2004 Eligible Days Group Appeal and the SSI Proxy issue to the 2004 SSI Group Appeal. Def.'s Stmt. ¶ 14, 42. The PRRB created the two group appeals – the 2004 Eligible Days Group Appeal and the 2004 SSI Proxy Group Appeal (collectively, the "2004 Group Appeals").

On April 6, 2005, the intermediary challenged the Board's jurisdiction over the providers in the 2004 Group Appeals, arguing that "the providers affected by the dismissal of the [2002

Group Appeals] should not be granted a new opportunity to appeal this issue in a subsequent appeal." Def.'s Stmt. ¶ 16; A.R. 17-20 (PRRB Decision dated May 5, 2006), A.R. 193 (Intermediary's Jurisdictional Challenge). On March 14, 2006, the Board dismissed the providers from the 2004 Eligible Days Group Appeal, A.R. 13-16 (PRRB Decision dated March 14, 2006), and on May 5, 2006, dismissed the providers from the 2004 SSI Proxy Group Appeal, A.R. 17-20. In each decision, the Board explained that the dismissal of the 2002 Group Appeals precluded the providers from again raising the same issues in subsequent group appeals. *See* A.R. 15, 20 (concluding that the "providers cannot now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group").

## 1.    The First Challenged Decision

On April 17, 2006, Golden Triangle and St. Joseph (but not DeSoto) sought reconsideration of the Board's March 14, 2006 decision (dismissing the providers from the 2004 Eligible Days Group Appeal).[6] Def.'s Stmt. ¶ 22. The providers argued that "they have the right to add an issue to a pending individual appeal, without regard to whether the issue had been appealed as part of a group appeal," and that the 2004 Eligible Days Group Appeal raised different issues than were raised in the 2002 Eligible Days Group Appeal. A.R. 92-94 (Letter from Providers dated April 17, 2006). On June 14, 2006, the Board declined to reconsider its March 14 decision primarily because the hospitals "[could not] rely on adding the same issue again to their individual appeal[s] to get a second opportunity to join a group." Def.'s Stmt. ¶ 24; A.R. 33 (PRRB Decision dated June 14, 2006). The June 14, 2006 decision denying Golden

---

[6] Plaintiffs did not challenge the PRRB's May 5, 2006 decision dismissing Plaintiffs from the 2004 SSI Proxy Group Appeal. *See* Pls.' Renewed Mot. for Summ. J. at 8.

Triangle and St. Joseph's reconsideration request is the first decision challenged by Plaintiffs in the present action.

2.    The Second Challenged Decision

On July 18, 2006, notwithstanding the Board's previous dismissals of the 2002 and 2004 Group Appeals, St. Joseph asked the Board to transfer the Eligible Days Issue and the SSI Proxy Issue back to its individual appeals. Pls.' Stmt. ¶¶ 63-64; AR 36-39 (St. Joseph Request dated July 18, 2006). The Board "inadvertently granted" the request because "the previous letters and documentation pertaining to the Board's denial of jurisdiction . . . [were] filed in the group appeal files and [were] overlooked." Def.'s Stmt. ¶ 25; A.R. 52 (PRRB Decision dated September 5, 2006). The intermediary again challenged the PRRB's jurisdiction over St. Joseph's Eligible Days Issue and the SSI Proxy Issue based on the prior dismissals of the 2002 and 2004 Group Appeals. Def.'s Stmt. ¶ 26; A.R. 52. On September 5, 2006, the Board again rejected St. Joseph's attempts to appeal those issues:

> The Provider is directed to stop wasting the Board's time with its multiple requests to add or transfer these issues to any appeal for this fiscal year end. This is the Board's <u>final decision</u> regarding these issues for this Provider for this fiscal year end. No further requests will be considered. If any such requests are filed in the future, they will be summarily dismissed. If the Provider is dissatisfied with the decision, its recourse is appeal.

A.R. 53. The PRRB's September 5, 2006 decision is the second decision challenged by Plaintiffs in the present action.

3.    The Third Challenged Decision

On May 3, 2007, St. Joseph asked the Board's permission to add the Eligible Days Issue and SSI Proxy Issue to its individual appeal (as opposed to transferring the issues from the

9

previously dismissed group appeals). Pls.' Suppl. Mot. for Summ. J., Ex. 1 at 1-5 (St. Joseph

Request dated May 3, 2007). St. Joseph also sought to add an issue involving section 1115 days,

a variable used to calculate the Medicaid Proxy. *Id.* On May 16, 2007, the PRRB issued a

decision denying the requests. *Id.*, Ex. 2 at 1-3 (PRRB Decision dated May 16, 2007). The

Board explained that

> [i]n [previous] letters, the Board advised the Provider that [it] could not have a
> second opportunity to appeal those issues and the request to add the issues was
> dismissed. In addition, the Provider was asked to cease requesting to add these
> issues to the appeal. The Board's decision on this matter remains unchanged.

*Id.* at 2. The PRRB also denied St. Joseph's request to add the § 1115 waiver days issue to its

appeal because "the Board had already issued a final determination for the Baptist Memorial

Hospital system providers," and St. Joseph failed to join that appeal even though it was

mandatory. *Id.* (citing 42 C.F.R. § 405.1841(b) (describing mandatory group appeals for

providers under common ownership)). *Id.* The May 16, 2007 decision by the PRRB is the third

decision challenged by Plaintiffs in the present action.

### C.    *Procedural Background*

Plaintiffs brought the instant action on August 9, 2006, and filed an Amended Complaint

on October 10, 2006. Plaintiffs moved for Summary Judgment on April 6, 2007, and filed a

"Supplemental Memorandum" on June 8, 2007.[7] Defendant filed a Motion for Summary

---

[7] Plaintiffs' Motion notes that the lack of discovery in this case "has severely hampered
the [Plaintiffs'] ability to cite jurisdictional decisions supporting its positions . . ." Pls.' Mot. for
Summ. J. at 23. As the Court previously explained to Plaintiffs, in cases brought under the
Administrative Procedure Act ("APA"), "the focal point for judicial review should be the
administrative record already in existence, not some new record made initially in the reviewing
court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (internal quotation
omitted). Because the Court previously found–and continues to find–that Plaintiffs have not
made "a strong showing of bad faith or improper behavior or [that] the record is so bare that it

Judgment on July 13, 2007.  Plaintiffs filed a Second Amended Complaint on July 30, 2007.  In

response, Defendant filed a "Renewed" Motion for Summary Judgment on August 6, 2007,

incorporating by reference the arguments contained in its Motion for Summary Judgment.

Plaintiffs thereafter filed a "Renewed" Motion for Summary Judgment (and a consolidated

Opposition to Defendant's Motion) on August 17, 2007, incorporating by reference the

arguments contained in Plaintiffs' Motion for Summary Judgment and Supplemental

Memorandum.  Defendant filed a Reply on September 14, 2007.  At the request of the Court, the

Parties also submitted additional briefing to explain, with specific references to the 810-page

Administrative Record, which issues each Party believed were raised in the 2002 Group Appeals

and 2004 Group Appeals.  *See* Minute Order dated January 29, 2008.

## II.  LEGAL STANDARD

*A.    Summary Judgment*

A party is entitled to summary judgment if "there is no genuine issue as to any material

fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

*Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the

moving party "bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any' which it believes demonstrate the

absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In response, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by

---

prevents effective judicial review," the Court reaffirms its decision that discovery in this case is
unwarranted.  *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

B.     *Medicare Reimbursement Disputes*

12

The Parties agree that 42 U.S.C. § 1395oo(f)(1) provides the applicable standard of review and expressly incorporates the review standard of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq. See* Pls.' Mot. for Summ. J. at 23; Def.'s Mot. for Summ. J. at 18. Pursuant to the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted); *see also Cellco P'ship v. Fed. Commc'ns Comm'n*, 357 F.3d 88, 93-94 (D.C. Cir. 2004) (noting "arbitrary and capricious" review is "highly deferential . . . presum[ing] the validity of agency action . . . [which] must [be] affirm[ed] unless the Commission failed to consider relevant factors or made a clear error in judgment."). Moreover, the Court "must affirm if a rational basis for the agency's decision exists." *Bolden v. Blue Cross & Blue Shield Assoc*, 848 F.2d 201, 205 (D.C. Cir. 1988). The degree of deference a court should pay an agency's construction is, however, affected by "the thoroughness, validity, and consistency of an agency's reasoning." *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981).

Courts must also "give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506-07 (1994) (citations in

original omitted).  This deference is particularly appropriate in contexts that involve a "complex

and highly technical regulatory program, such as Medicare, which requires significant expertise

and entail[s] the exercise of judgment grounded in policy concerns."  *Id.* at 512 (citation and

internal quotation marks omitted); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225,

1229 (D.C. Cir. 1994) ("in framing the scope of review, the court takes special note of the

tremendous complexity of the Medicare statute.  That complexity adds to the deference which is

due to the Secretary's decision.").  Thus, a court does not have the "task . . . to decide which

among several competing interpretations best serves the regulatory purpose," but instead, "the

agency's interpretation must be given controlling weight unless it is plainly erroneous or

inconsistent with the regulation."[8]  *Thomas Jefferson Univ.*, 512 U.S. at 512.

### III.  DISCUSSION

Plaintiffs' claims require the Court to address three principal issues: (1) whether the

PRRB's decision that the issues raised in the 2002 Group Appeals could not be raised in other

appeals was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

law; (2) whether the PRRB's decision to dismiss Plaintiffs' claims from the 2004 Group Appeals

was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law

because, according to Plaintiffs, those appeals raised issues that were not included in the 2002

---

[8] Although Defendant's Motion includes a reference to *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984), Chevron deference "is principally concerned with whether an agency has authority to act under a statute, and whether . . . the agency's construction of the statute 'is based on a permissible construction of the statute.'" *Oconus DOD Employee Rotation Action Grp., et al. v. Cohen*, 140 F. Supp. 2d 37, 45 n.7 (D.D.C. 2001), *aff'd,* 38 Fed. Appx. 2 (per curiam) (quoting *Chevron*, 467 U.S. at 842-843)).  The issues in the present action concern the decisions reached by the PRRB in light of its published Instructions and the facts in the administrative record, which are appropriately reviewed under the arbitrary and capricious standard of the APA.

Group Appeals; and (3) whether the PRRB's refusal to permit DeSoto to pursue the Eligible

Days Issue and SSI Proxy Issue in an individual or group appeal was arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law because, according to Plaintiffs,

DeSoto never joined the 2002 Group Appeals. The Court shall address each of these issues in

turn.

      *A.*     *Dismissal of 2002 Group Appeals Precluding the Providers from Raising the*
              *Same Claims in Other Appeals*

       Plaintiffs do not dispute that they failed to file their preliminary position papers in the

2002 Group Appeals and that the PRRB's Instructions permit the dismissal of appeals for failure

to comply with the Board's procedures. *See* Pls.' Mot. for Summ. J. at 18. Courts have routinely

upheld the authority of the PRRB to dismiss appeals based on missed position paper filing

deadlines. *See, e.g.*, *Novacare v. Thompson*, 357 F. Supp.2d 268, 272 (D.D.C. 2005) (describing

the position paper deadlines as "'reasonable and necessary to the smooth functioning of the

agency's appellate process, and therefore [compliance therewith] cannot be considered arbitrary

and capricious or an abuse of discretion'") (quoting *UHI, Inc. v. Thompson*, 250 F.3d 993, 996-

97 (6th Cir. 2001)). Plaintiffs also do not dispute that they failed to seek reinstatement of the

2002 Group Appeals as permitted by the Board's Instructions. *See* Pls.' Mot. for Summ. J. at 18

n.3 ("[i]t is undisputed that the Hospitals did not appeal the dismissal of [the 2002 Group

Appeals]"). Plaintiffs explain that one reason they did not pursue reinstatement was that they

were unlikely to succeed in that process. *See* Pls.' Renewed Mot. for Summ. J. at 16 (indicating

that it is "eminently clear that the Hospitals were unlikely to have succeeded in an appeal of such

terminations").

Despite the foregoing, Plaintiffs argue that even if the PRRB dismisses a group appeal for failure to comply with the Board's procedures, the providers in that group appeal may avoid the consequences of that failure by simply re-filing the same claims in their individual appeals or in subsequent group appeals. *See* Pls.' Mot. for Summ. J. at 26 ("[t]here is no authority . . . for the position of the PRRB that a provider's right to appeal an issue in an individual appeal is extinguished if . . . the issue is transferred to a group appeal which ultimately is terminated"). As support for this argument, Plaintiffs' rely on PRRB Instruction I.C.VI, which allows providers to "add issues to [an individual] appeal prior to the commencement of the hearing." Pls.' Mot. for Summ. J. at 28. According to Plaintiffs, because "[n]either Congress nor the Secretary has imposed any restriction or limitation on the right of a provider to add one or more issues to a pending appeal," it is permissible for providers to add claims to their appeals even if the same claims have previously been dismissed from an appeal. *Id.* at 15. The Court finds Plaintiffs' argument devoid of merit.

The PRRB Instructions repeatedly warn providers that failure to comply with its deadlines will result in dismissal of the providers' appeals. *See*, *e.g.*, PRRB Instructions, II.B.I. ("If you fail to meet the preliminary position paper due date and fail to supply the Board with the required documentation, the Board will dismiss your appeal for failure to follow Board procedure"); *Id.* at I.C.XIV ("[d]ue dates can only be changed or eliminated by written confirmation of the Board. Because you are the moving party, if you do not meet a due date, the Board will dismiss your appeal"); *Id.* at I.C.VIII ("[t]he Board may dismiss the group appeal if the group representative misses . . . any of its deadlines"). A proper reading of the PRRB's Instructions requires the various provisions to be read together in context. *See, e.g.*, *Richards v.*

16

*United States*, 369 U.S. 1, 11 (1962) (explaining that it is fundamental that "a section of a statute should not be read in isolation from the context of the whole Act . . ."); *Colorado River Cutthroat Trout, et al. v. Kempthorne, et al.*, 448 F. Supp. 2d 170, 176 (D.D.C. 2006) (reading regulations "in the context of the other [] implementing regulations"). By artificially isolating Instruction I.C.VI (pertaining to the addition of claims to individual appeals), Plaintiffs have eviscerated the meaning (and consequences) of Instructions II.BI, I.C.XIV, and I.C.VIII (pertaining to dismissals for failure to comply with filing deadlines).

If Plaintiffs' interpretation were accepted, providers could add any claims to their individual appeals, including those that were previously denied *on the merits*, as PRRB Instruction I.C.VI places no explicit limit on adding such claims to individual appeals. Providers could also circumvent the reinstatement process set forth in PRRB Instruction I.C.XIII.b (as Plaintiffs have attempted to do here), which requires providers to "explain in detail the reasons" why the provider failed to meet their submission deadlines. Plaintiffs' interpretation would also allow providers to ignore the Board's deadlines and would promote exactly that which the deadlines are designed to prevent. As the Tenth Circuit has explained, "[s]trict procedural requirements like this one help manage a docket both by encouraging timely filing and by allowing the adjudicator to ignore late or improperly presented claims. But to a significant extent, these advantages are lost if a deadline is applied inconsistently or subjected to second-guessing by higher courts." *High Country Home Health, Inc. v. Thompson, et al.*, 359 F.3d 1307, 1312 (10th Cir. 2004). Given that the PRRB's docket consists of thousands of claims brought each year, allowing Providers to simply re-file previously-dismissed claims directly undermines the time limits in the PRRB's Instructions. *See Id.* ("the Board is burdened by an immense

caseload, consisting of more than 11,000 claims each year.  Especially in such circumstances, procedural rules requiring timely filings are indispensable devices for keeping the machinery of the reimbursement appeals process running smoothly").  The Court agrees with Defendant that the most sensible reading of the Instructions is that providers may not simply re-file previously-dismissed claims in their individual appeals.  *See* Def.'s Mot. for Summ. J. at 25.  Moreover, as the Court is bound to give deference to the PRRB's interpretation of its own instructions, *see Thomas Jefferson Univ.*, 512 U.S. at 512, the Court expressly finds that the Board's interpretation is entirely plausible, and at a minimum, certainly permissible.

Plaintiffs argue that even if providers generally cannot re-file issues that have previously been dismissed in group appeals, the PRRB in this case should have dismissed their group appeals because they impermissibly contained multiple issues.  *See* Pls.' Renewed Mot. for Summ. J. at 10 ("the Board should have dissolved [the 2002 Group Appeals] and instructed the Provider[s] to pursue these issues through individual appeal[s]").  According to Plaintiffs, the 2002 Eligible Days Group Appeal "violated the Board's policy of a single common issue . . . [for] group appeal[s]," and the Board should have dismissed the appeal on that basis, which would have allowed Plaintiffs to pursue those claims in their individual appeals.  *Id.  See also* Pls.' Mot. for Summ. J. at 27 ("it is questionable whether, substantively, the Medicare Proxy issue appropriately may be pursued in a group appeal"); *Id.* at 35 ("the PRRB's Instruction says that items such as the settlement data are provider specific and therefore cannot be addressed through a group appeal").  The Court finds this argument to be nothing more than *post hoc* rationalization in the hope that Plaintiffs' violation of one PRRB Instruction will save them from the consequences of violating a different PRRB Instruction.  The Court finds such logic

18

decidedly unpersuasive.

To be sure, the Board's Instructions specify that group appeals may only constitute one issue for one fiscal year, and that the issue must "involve[] a question of fact or an interpretation of law, regulation or CMS ruling, which is common to all of [the] providers in the appeal." PRRB Instructions, I..B.I.d.  There may also be instances where the Board has denied requests to create group appeals where it has recognized that they do not meet the criteria for a group appeal. *See* Pls.' Mot. for Summ. J., Ex. 1 at 1 (PRRB Letter to Harborview Medical Center) (denying a request to form a group appeal).  Nevertheless, Plaintiffs are solely responsible for asking the Board to create their 2002 Group Appeals, and each provider framed its request as asking for the transfer of a single "issue."  *See, e.g.*, A.R. 496 (Request of St. Joseph to Create 2002 Eligible Days Group Appeal) (explaining that the "common issue" is the intermediary's inclusion of eligible days services); A.R. 496 (Request of DeSoto to Join 2002 Eligible Days Group Appeal) (explaining the "common issue" in the same terms); A.R. 408 (Request of Golden Triangle to Join 2002 Eligible Days Group Appeal) (referencing the Eligible days "issue" in the same terms). Plaintiffs fail to recognize that they could have clarified the "issue" presented in each of the 2002 Group Appeals if they had complied with the PRRB's Instructions and submitted their position papers.  *See High Country Home Health*, 359 F.3d at 1313 ("[t]he Board's two-stage process helps ensure that the parties clearly identify the precise nature of their dispute, and gives the Board the benefit of adversarial testing to expose flaws in superficially sound arguments on either side of the controversy").

Moreover, Plaintiffs are unable to identify any authority that requires the Board to substantively review the issues associated with a group appeal *prior* to dismissing the appeal for

failing to follow the Board's procedures.  On the contrary, the PRRB's Instructions suggest just

the opposite, as they repeatedly indicate that providers' appeals will be dismissed for failure to

timely file position papers, without qualification.  *See* PRRB Instructions, I.C.VIII ("[t]he Board

may dismiss the group appeal if the group representative misses . . . any of its deadlines").  The

Court agrees with Defendant that "[i]t is not the Board's responsibility to opine on the issues

underlying procedurally defaulted cases, nor is that an efficient use of its time."  *See* Def.'s Mot.

for Summ. J. at 29.

      For these reasons, the Court holds that the PRRB's decision that the providers could not

re-file or transfer claims that were previously dismissed in their 2002 Group Appeals was not

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or

unsupported by the evidence.

      *B.*     *New Issues in the 2004 Group Appeals*

      Plaintiffs argue that even if they cannot add previously dismissed claims to their

individual appeals, the issues raised in the 2004 Eligible Days Group Appeal are different than

those raised in the 2002 Eligible Days Group Appeal:

> even if the Court holds that the Hospitals forfeited their right to appeal those DSH
> Adjustment components that were presented in the two group appeals that were
> dismissed, the Court should hold that the Hospitals retain their right to appeal
> other DSH Adjustment components that were not included in such dismissed
> group appeals.

Pls.' Mot. for Summ. J. at 31-35.[9]  The Court is unpersuaded.

---

    [9] Plaintiffs concede that the 2002 SSI Proxy Group Appeal and the 2004 SSI Proxy Group
Appeal raised the same substantive issues.  *See* Pls.' Suppl. Response to Court's Order at 2 n.2
("The Hospitals do not contend that substantively different issues were presented in [the 2002
and 2004 SSI Proxy Group Appeals]").

The providers' letters to the Board asking to create the 2002 Eligible Days Group Appeal and the 2004 Eligible Days Group Appeal describe the "issue" associated with the group appeals in almost identical terms. The April 11, 2002 letter to the Board described the common issue for appeal in the 2002 Eligible Days Group Appeal as the intermediary's "fail[ure] to include as Medicaid-eligible days services to patients eligible for Medicaid as well as patients eligible for general assistance." A.R. 496. The January 23, 2004 letter to the Board described the common issue for appeal in the 2004 Eligible Days Group Appeal as the intermediary's "fail[ure] to include as Medicaid-Eligible Days services to patients for Medicaid, as well as patients eligible for general assistance." A.R. 420. Except for different capitalization, punctuation, and the addition of the word "eligible," the providers describe the 2002 and 2004 Eligible Day Groups Appeals in identical terms.

Plaintiffs argue that even though their preliminary requests appear similar, Plaintiffs would have raised issues in the 2004 Eligible Days Appeal that would not have been raised in the 2002 Eligible Days Appeal. *See* Pls.' Suppl. Response to Court's Order at 3-4. That argument, however, is belied by the Administrative Record. For example, two issues that Plaintiffs claim were only present in the 2004 Eligible Days Group Appeal—charity care days and section 1115 days—were included as issues to be raised in the 2002 Eligible Days Group Appeal in a letter sent to the PRRB on April 23, 2003. *Compare* Pls.' Mot. for Summ. J. at 32 (claiming that charity care days and section 1115 days would not have been raised in the 2002 Eligible Days Group Appeal) *with* A.R. 416-17 (St. Joseph's letter dated April 24, 2003 identifying charity care days and section 1115 waiver days as issues in the 2002 Eligible Days Group Appeal ). In fact, even after filing the instant action, Plaintiffs still do not appear to have determined which precise

21

issues they sought to pursue in the 2004 Eligible Days Group Appeal that would not have been raised in their 2002 Eligible Days Group Appeal. *Compare* Pls.' Mot. for Summ. J. at 32 (identifying charity care days, Section 1115 waiver days, and Medi-Medi days as the issues that would not have been raised in the 2002 Eligible Days Group Appeal) *with* Pls.' Suppl. Response to Court's Order at 3 (referring to expanded waiver days and "Stated Funded days").

The inconsistency in Plaintiffs' argument only underscores the source of Plaintiffs' problem, which is Plaintiffs' failure to comply with the Board's procedures by submitting their positions papers for the 2002 Eligible Days Group Appeal. Had Plaintiffs not violated the Board's procedures, the Court could have compared the issues raised in Plaintiffs' position papers submitted for the 2002 Eligible Days Group Appeal with the position papers submitted for the 2004 Eligible Days Group Appeal. Because Plaintiffs failed to submit the former, Plaintiffs' reliance on the latter as support for its argument is somewhat misplaced, as the only common filing associated with the two group appeals–the preliminary requests for creation of the groups–describe the issues raised in those groups in almost identical terms.

On this record, the Court cannot find that the PRRB's decision to dismiss Plaintiffs from the 2004 Eligible Days Group Appeal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by the evidence, notwithstanding Plaintiffs' argument that they were raising new issues that were not raised in the 2002 Eligible Days Group Appeal.

C.    *DeSoto's Appeals*

The third issue raised by Plaintiffs' claims concerns whether DeSoto joined the 2002 Group Appeals. On April 16, 2002, DeSoto sent letters to the Board asking to transfer its appeal

of the Eligible Days Issue and the SSI Proxy Issue to the 2002 Eligible Days Group Appeal and

the 2002 SSI Proxy Group Appeal, respectively. *See* Pls.' Mot. for Summ. J., Ex. 9 (DeSoto

Letters dated April 17, 2002). DeSoto appointed Amrish Mathur of Quality Reimbursement

Services to represent DeSoto in the 2002 Group Appeals. *Id.* On May 21, 2002, the PRRB

acknowledged the group appeals in a letter sent to Mr. Mathur. *See* Pls.' Mot. for Summ. J., Ex.

10. On April 24, 2003, Mr. Mathur sent a letter to the PRRB that listed the providers in the 2002

Group Appeals, but failed to include DeSoto's name. A.R. 459-460 (April 24, 2003 Letter).

Plaintiffs argue that DeSoto did not join the 2002 Group Appeals because Mr. Mathur, its

appointed representative, failed to include DeSoto's name in his April 24, 2003 letter to the

Board. According to Plaintiffs, the PRRB clearly "erred in refusing to permit [DeSoto] to pursue

[an] appeal of these issues in its individual appeal or in another group appeal." Pls.' Mot. for

Summ. J. at 26. The Court finds that the Administrative Record belies Plaintiffs' argument.[10]

Even though DeSoto's representative failed to include DeSoto's name in his April 23,

2003 letter to the Board, all other relevant entities (including DeSoto) treated DeSoto as a

---

[10] Plaintiffs fail to identify the "refusal" they are referencing in relation to DeSoto. The three PRRB decisions challenged by Plaintiffs are dated June 14, 2006; September 5, 2006; and May 16, 2007, respectively. *See* Pls.' Renewed Mot. for Summ. J. at 2. None of these decisions were brought (in whole or in part) by DeSoto. Although Defendant's Motion for Summary Judgment identified that defect in Plaintiffs' argument, *see* Def.'s Mot. for Summ. J. at 21, Plaintiffs failed to directly respond. Instead, Plaintiffs alluded to "the PRRB's rationale" in the three challenged decisions, *see* Pls.' Renewed Mot. for Summ. J. at 6, and argued that Defendant was raising a statute of limitations defense that had not been included as an affirmative defense in Defendant's answer. *Id.* at 5. Plaintiffs' response misses the mark. The issue is not whether DeSoto *could* bring a claim, but rather, whether DeSoto *has* brought a claim. Plaintiffs have not asked the Court to review any "refusal" to allow DeSoto to raise the claims dismissed in the 2002 Group Appeals, and thus have not properly stated a claim with respect to DeSoto. Nevertheless, as both Parties have briefed the issues associated with DeSoto, and as Plaintiffs' arguments as to DeSoto also fail on the merits, the Court will proceed to address Plaintiffs' claims assuming, *arguendo*, that Plaintiffs' have stated a proper claim as to DeSoto.

member of the 2002 Group Appeals.[11]  For example, DeSoto's individual appeal was closed on

August 2, 2002, following its request to transfer issues to the 2002 Group Appeals.  *See* A.R. 169

(PRRB March 14, 2006 Decision) ("On April 17, 2002, [DeSoto] joined the group appeal . . .

The provider's individual appeal was closed on August 2, 2002").  There is no evidence in the

record that DeSoto inquired as to why its individual appeal would have been closed had it not

joined the group appeals.  The intermediary's jurisdictional challenge to the 2004 Group Appeals

also identified DeSoto as a member of those groups.  *See* A.R. 193 ("Golden Triangle, DeSoto

and St. Joseph providers were originally included in the [2002 Eligible Days Group Appeal]").

The PRRB also identified DeSoto as one of the members of the 2002 Group Appeals.  *See* A.R.

167 ("DeSoto . . . added the Medicaid eligible days issue to [its] individual appeal[] and

transferred the issue to the group appeal.").  Plaintiffs fail to identify any correspondence in the

record from anyone other than DeSoto's own representative that would show that DeSoto was

not included in the 2002 Group Appeals.  And, even though Plaintiffs claim that the schedule of

providers is "the definitive, final and binding list of providers in a group appeal," *see* Pls.'

Renewed Mot. for Summ. J. at 7, Plaintiffs cite no authority for that proposition.

On this record, the Court cannot find that the PRRB's decisions related to DeSoto were

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

_____

[11] Plaintiffs also note that DeSoto's request to joint the 2002 Group Appeals did not
include a group number, implying that the absence of a group number prevented the Board from
adding DeSoto to the group appeals.  DeSoto's request was made on April 17, 2002, and the
Board did not assign a group number to the appeal until May 21, 2002, so it would have been
impossible for DeSoto to identify a group number in its request.  Additionally, St. Joseph asked
the Board to transfer the Eligible Days issue from its individual appeal to the 2002 Eligible Days
Group Appeal on April 16, 2002, and its request also failed to include a group number.  *See* A.R.
496 (St. Joseph Letter dated April 16, 2002). Plaintiffs do not suggest that St. Joseph failed to
join the group appeals because it did not include a group number in its correspondence.

#### D.    Remaining Issues Regarding Board's Decisions

Two minor issues remain.  First, the PRRB's May 16, 2007 decision declined St.

Joseph's request to add a section 1115 issue to its appeal because it had failed to join a

mandatory group appeal.  *See* Pls.' Suppl. to Mot. for Summ. J., Ex. 2 at 1-3 (PRRB Decision

dated May 16, 2007).  Plaintiffs argue that this refusal was improper because, "upon information

and belief . . . [St. Joseph] was acquired by the Baptist Memorial Hospital system during fiscal

year 1998 and may not have been eligible to participate in the group appeal referenced by the

PRRB."  Pls.' Suppl. to Mot. for Summ. J. at 6.  At this stage in the proceedings, Plaintiffs must

do more than argue on information and belief, they must come forward with sufficient evidence

to show that a genuine issue of material fact exists to support their claims.  *See Williams v.*

*Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996) ("[m]ere allegations or denials of the adverse

party's pleading are not enough to prevent the issuance of summary judgment.).  Not only do

Plaintiffs fail to cite any factual support from the record, but they also fail to cite any legal

authority proving this argument's legal merit.  Moreover, Defendant identified the lack of factual

and legal support for Plaintiffs' argument in its own Motion, *see* Def.'s Mot. for Summ. J. at 27,

and Plaintiffs failed to respond.  A Party that fails to refute an opposing party's argument on

Summary Judgment may be found to have conceded the point.  *See Speaks v. D.C.*, Civ. A. No.

03-1963, 2006 U.S. Dist. LEXIS 16776 at *12 n.1 (D.D.C. Apr. 6, 2006) ("Defendant's summary

judgment motion seized upon these deficiencies in the record, yet Plaintiffs' opposition papers

are silent on the issue, which arguably provides an independent basis for treating Defendant's

argument as conceded.").

The second remaining issue concerns *Rhode Island Hospital v. Leavitt*, No. 06-260, 2007

WL 294026 at *1 (D.R.I. Jan. 26, 2007).  Plaintiffs' implore the Court to find some relevance in

that case in reaching a decision in the instant action.  *See* Pls.' Suppl. to Mot. for Summ. J. at 7-9.

In *Rhode Island Hospital*, the plaintiffs had filed group appeals that were dismissed by the PRRB

for failure to comply with the Board's procedures.  *Rhode Island Hosp.*, 2007 WL 294026 at *1.

Unlike this case, the plaintiffs had apparently transferred their individual issues from the group

appeals to their individual appeals prior to the PRRB's dismissal of the group appeals.  *Id.*  In

any event, the parties in that case settled, and as much as Plaintiffs may desire a similar result

here, that case simply has no bearing on the issues presently before the Court.  *See High Country*

*Home Health*, 359 F.3d at 1315 ("[t]he mere fact that the Secretary has settled other cases does

not make it arbitrary and capricious for him not to settle this one").

Accordingly, the Court finds that the PRRB's June 14, 2006; September 5, 2006; and

May 16, 2007 decisions were not arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's [31] Motion for

Summary Judgment and deny Plaintiffs' [32] Motion for Summary Judgment.  This case shall be

dismissed in its entirety.  An appropriate Order accompanies this memorandum opinion.


Date:    February 21, 2008


                                    _/s/_____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge